# EXHIBIT 2

IN THE SUPREME COURT OF THE STATE OF NEW YORK,
COUNTY OF NEW YORK

| | |
|---|---|
| UBS SECURITIES LLC and UBS AG, LONDON BRANCH, | ) ) ) |
| Plaintiffs | ) ) |
| -against- | ) ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND SPECIAL OPPORTUNITIES HOLDING COMPANY, HIGHLAND CDO OPPORTUNITY MASTER FUND, L.P., HIGHLAND FINANCIAL PARTNERS, L.P., HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P., HIGHLAND CRUSADER OFFSHORE PARTNERS, L.P., HIGHLAND CREDIT OPPORTUNITIES CDO, L.P. AND STRAND ADVISORS, INC., | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Index No. 650097/2009
(I.A.S Part 60, Friedman, J.)

**Expert Report of Louis G. Dudney, CPA, CFF**

**UPDATED 4/18/2013**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     QUALIFICATIONS ..................................................................................................... 2

III.    EXECUTIVE SUMMARY ........................................................................................... 3

IV.     BACKGROUND ........................................................................................................ 10

V.      SUMMARY OF OPINIONS ...................................................................................... 34

VI.     ANALYSIS OF OPINIONS ....................................................................................... 35

        A.  DAMAGES ANALYSIS. ................................................................................ 35

        B.  ALTER EGO ANALYSIS ............................................................................... 39

        C.  CONSTRUCTIVELY FRAUDULENT TRANSFERS MADE BY SOHC/HFP AND
            BY CDO FUND .............................................................................................. 58

            1. SOLVENCY ANALYSIS. ......................................................................... 60

            2. CONSTRUCTIVELY FRAUDULENT TRANSACTIONS ................................ 76

VII.    CONCLUSION ........................................................................................................... 81

VIII.   DOCUMENTS AND INFORMATION CONSIDERED ................................................. 81

IX.     ALIXPARTNERS COMPENSATION ........................................................................ 81

X.      ADDITIONAL ANALYSIS AND DEMONSTRATIVE AIDS ..................................... 81

**UPDATED 4/18/2013**

## I.        Introduction

On May 11, 2011, UBS Securities, LLC ("UBSS") and UBS AG, London Branch ("UBS London"), (collectively "UBS" or "Plaintiffs") filed an amended complaint (the "Second Amended Complaint") against Highland Capital Management, L.P. ("HCM"), Highland Special Opportunities Holding Company ("SOHC"), Highland CDO Opportunity Master Fund, L.P. ("CDO Fund"), Highland Financial Partners, L.P. ("HFP"), Highland Credit Strategies Master Fund, L.P. ("Credit Strategies"), Highland Crusader Offshore Partners, L.P. ("Crusader Fund"), Highland Credit Opportunities CDO, L.P. ("Credit Opportunities Fund"), and Strand Advisors, Inc. ("Strand"), (collectively the "Defendants") seeking damages related to fraud, breach of contract, fraudulent conveyance and tortious interference. Plaintiffs have also pled for a finding of alter ego with respect to certain entities.

I have been retained by counsel for UBS to analyze certain allegations set forth in the Second Amended Complaint, offer related opinions and to provide expert testimony regarding my analysis. Specifically, I have been asked to analyze damages arising from the allegations in the Second Amended Complaint, to examine the indicia of alter ego with respect to SOHC, CDO Fund, HFP and HCM, to examine the solvency of HFP, SOHC and CDO Fund during the time period of the Restructured Transaction (defined below) and to evaluate transactions with respect to these entities to determine whether any transactions may qualify as constructively fraudulent transfers under New York Debtor & Creditor law.

## II.     Qualifications

I am a Managing Director with AlixPartners, LLP ("AlixPartners"), a financial and operational consulting firm.   My experience covers broad types of operational, financial, valuation, litigation, bankruptcy and management consulting engagements, including damages analysis, analysis of financial and corporate transactions and relationships, valuation dispute resolution, solvency analysis, and related financial analysis.

I have consulted with companies in a number of industries including, but not limited to, financial services, real estate, retail, computer design, entertainment, telecommunications, manufacturing, construction, energy, and consumer products.   In performing engagements in these industries, I have analyzed economic, accounting, operational and financial issues and testified in federal civil, criminal, and bankruptcy courts as well as state courts, American Arbitration Association hearings, international arbitrations, and state regulatory proceedings as an expert witness.

Prior to joining AlixPartners, I was a Partner in the Financial Advisory Services Group of PricewaterhouseCoopers.   I hold a Bachelor of Business Administration with a major in accounting from The College of William & Mary, am a Certified Public Accountant, and am a Certified in Financial Forensics credential holder.   I am a member of the Illinois Society of Certified Public Accountants, the American Institute of Certified Public Accountants, the American Bankruptcy Institute, and the Licensing Executives Society.

Exhibit 1 contains my curriculum vitae and a listing of testimony that I have provided in the last four years.

The opinions presented in this report are based on my analysis of the available information and my experience, education, and expertise as a financial consultant.

As part of performing my analysis, I utilized a team of professionals who worked under my direction and control.   The opinions expressed herein are subject to change based upon any additional discovery related to this case or information that I may receive after the date of this report.   I will update this report, as appropriate, based on any additional information provided.

### III. Executive Summary

I have been retained in this matter to: (1) analyze damages arising from the allegations in the Second Amended Complaint; (2) examine the indicia of alter ego with respect to SOHC, CDO Fund, HFP and HCM; (3) examine the solvency of HFP, SOHC and CDO Fund during the time period of the Restructured Transaction (defined below); and, (4) evaluate transactions with respect to these entities to determine whether any transactions may qualify as constructively fraudulent transfers under New York Debtor & Creditor law. The following is a summary of my conclusions based on the work performed to date as described in detail in the following sections of this report.

#### A. *The Plaintiffs have suffered damages of $599.2 million to $750.1 million, including prejudgment interest, as of the Breach Date*

Starting in April 2007, UBS entered into a series of agreements with certain of the Defendants (the Synthetic Warehouse Agreement dated April 12, 2007, the Proposed Collateralized Debt Obligations Transaction letter agreement dated April 20, 2007, and the Warehouse Agreement dated May 22, 2007 (collectively, the "Original Transaction")), whereby UBS would provide financing in order for HCM, as servicer, to select certain CLOs and CDS positions to be included in a warehouse facility. The warehouse facility contemplated in the Original Transaction was commonly referred to by the parties as the "Knox Warehouse."[1] UBS, as financing provider, held the assets contained in the Knox Warehouse on its books. In March 2008, UBS, HCM, SOHC and CDO Fund entered into a series of restructured agreements regarding the Knox Warehouse, comprised of a letter regarding the Engagement of UBS Securities as Structuring and Placement Agent in Connection with Proposed Collateralized Debt Obligations Transaction, dated March 14, 2008, a Cash Warehouse Agreement dated March 14, 2008 and a Synthetic Warehouse Agreement, dated March 14, 2008 (collectively, the "Restructured Transaction"). On December 3, 2008, UBS delivered to HCM, as servicer for SOHC and CDO Fund, a Termination Letter that served to provide notice of a termination date with respect to the Restructured Transaction.[2]

---

[1] Deposition of Todd Travers dated April 3, 2012, p. 77.
[2] Letter to Highland Capital Management, L.P. dated December 3, 2008 at UBS-00000021.

The measure of damages I have calculated represents UBS's aggregate loss position with respect to the Knox Warehouse as of the Breach Date. To calculate these damages, I compared the market value of the Knox Warehouse positions at the time of the breach to their cost basis to determine the total mark to market losses. These losses were then adjusted, both positively and negatively, to reflect items such as the carry balance as of the Breach Date, unpaid financing fees, the benefit to the Plaintiffs of no longer having to provide below market financing, and for the cash and securities posted as collateral. I conservatively utilized both HCM's own November 30, 2008 marks and UBS's December 3, 2008 marks in determining the mark to market loss as of the Breach Date. Utilizing HCM's marks resulted in the low end of my damages calculation ($599.2 million) and utilizing UBS's marks resulted in the high end of the damages range ($750.1 million), including prejudgment interest.

## B. *I observed indicia of alter ego at the Highland Entities*

I analyzed the indicia of alter ego related to James Dondero, HCM, SOHC, CDO Fund, HFP and HFP's other subsidiaries (together with their affiliates referred to as the "Highland Entities"). To perform my analysis of the indicia of alter ego at the Highland Entities, I (1) reviewed the organizational structure and corporate relationships of the relevant Highland Entities to gain an understanding of the ownership and control structure of the organization; and, (2) analyzed selected financial, transactional and other related information for various financial and operational dealings between the relevant Highland Entities to determine whether these entities engaged in transactions which demonstrate indicia of alter ego.

Highland's Relevant Organizational Structure

HCM and the related Highland Entities form a complex structure.[3] With respect to HCM, Mr. Dondero owned approximately 70% of the company, and also served as President.[4] Through these positions, Mr. Dondero was able to unilaterally make decisions on behalf of HCM.[5] Moreover, as explained below, through his controlling stake in HCM, and/or his positions within SOHC, CDO Fund and HFP, Mr. Dondero was able to make decisions on behalf of these entities, as well as additional Defendants and Highland Entities.

---

[3] See examples of the organizational charts at Plaintiffs Exhibit 134 and H_1759160.
[4] Deposition of James Dondero dated February 28, 2012, pp. 14-15; HCM Firm Biographies Presentation at H_0198162-H_0198223.
[5] Deposition of Todd Travers dated April 3, 2012 at pp. 47-50.

With respect to HFP, Mr. Dondero served as chairman of the Board of Directors.[6,7]  Mr. Dondero and HCM were responsible for almost all of the decisions and day-to-day operations of HFP, including monitoring the operating performance of the company, obtaining warehouse and other financings, entering into agreements and providing accounting services.[8]  Mr. Dondero also served as the sole Director of SOHC and as President of the ultimate general partner of CDO Fund.[9]  HCM and Mr. Dondero were also responsible for the day-to-day operations of SOHC and CDO Fund.[10]

Analysis of Selected Financial Transactions to Identify Indicia of Alter Ego

  1.  *Indicia of alter ego related to HFP's financial transactions and other interactions with its subsidiaries*

HFP's subsidiaries include SOHC, CDO HoldCo, Highland Financial Corp., HFP Asset Funding II and HFP Asset Funding III.  I observed indicia of alter ego between: (1) HFP and SOHC; and, (2) HFP and CDO HoldCo, Highland Financial Corp., HFP Asset Funding II and HFP Asset Funding III (HFP's "Other Subsidiaries").   As detailed in this report, these observations included: (1) HFP's domination and control over SOHC and HFP's Other Subsidiaries; (2) the financial dependence of SOHC and HFP's Other Subsidiaries on their parent; and, (3) a lack of separateness between SOHC, HFP's Other Subsidiaries and HFP.

  2.  *Indicia of alter ego related to HFP's and its subsidiaries' financial transactions and other interactions with HCM*

Similar to HFP's interactions with SOHC and its Other Subsidiaries, I noted indicia of alter ego in reviewing HFP's financial transactions and other interactions with HCM, including: (1) HFP's and its subsidiaries' financial dependence on HCM; and, (2) a lack of separateness between HFP and HCM.

---

[6] Amended and Restated Management Agreement dated April 17, 2007 at H 000119-H 000141 (Plaintiffs Exhibit 145).

[7] See Chart 12 below.

[8] Amended and Restated Management Agreement dated April 17, 2007 at H 000119-H000141 (Plaintiffs Exhibit 145).

[9] Mr. Dondero is the President of Strand, which is the general partner of HCM, which is the sole member of Highland CDO Opportunity GP, LLC, which is the general partner of Highland CDO Opportunity Fund GP, L.P., which is the general partner of CDO Fund.  Amended and Restated Management Agreement at H_001304-H_001316.

[10] Amended and Restated Management Agreement at H_001304-H_001316; H 000119-H 000141 (Plaintiffs Exhibit 145).

3.   *Indicia of alter ego related to CDO Fund's financial transactions and interactions with HCM*

CDO Fund's financial transactions and other interactions with HCM also evidenced indicia of alter ego, including: (1) CDO Fund's financial dependence on HCM; and, (2) a lack of separateness between CDO Fund and HCM.   Specifically, I noted examples of CDO Fund's undercapitalization and its inability to operate as a stand-alone entity.

4.   *Indicia of alter ego related to James Dondero's and HCM's financial transactions and other interactions between each other and with other Highland Entities*

Based on my analysis and review of financial records and related information, I observed a number of instances in which Mr. Dondero exercised his ability to dominate and control HCM, SOHC, CDO Fund and HFP, amongst other Highland Entities.   For instance, as it relates to the flow of funds and assets into, out of and within the Highland Entities, I observed that Mr. Dondero and HCM exhibited control over such transfers, some of which were not at arm's length or executed in accordance with corporate formalities.

5.   *I observed indicia of alter ego related to HFP's interactions with other Highland Entities in connection with the HFP Notes*

Upon review of the trade blotters and note issuance and termination documents, I noted that the final recovery rate on the HFP Notes ultimately differed for each different note holder.

C.   *I identified constructively fraudulent transfers.*

1.   *SOHC and HFP on a combined basis ("SOHC/HFP") was insolvent no later than: (a) December 31, 2008 assuming the HFP Notes are recharacterized as equity, or (b) October 31, 2008 assuming the HFP Notes are deemed to be debt, and CDO Fund was insolvent no later than October 31, 2008.*

To determine the present fair salable value of each entity's assets, less the amount that will be required to pay its probable liabilities, at various points in time for solvency purposes, I utilized a balance sheet approach under a going concern premise.   In addition to performing the balance sheet approach for each of the entities in question, I also reviewed other tests to

determine whether the subject entities had unreasonably small capital or were unable to pay their debts as they come due.

a)       SOHC/HFP solvency analysis

In analyzing SOHC/HFP's solvency, I assessed the impact of a $371 million note issuance that HFP undertook in the September to October 2008 timeframe (the "HFP Notes" as described in more detail below). I analyzed the HFP Notes under two scenarios: one where the HFP Notes are treated as debt and another where the HFP Notes are recharacterized as equity. The treatment of the HFP Notes as debt or equity influences the date upon which I determine when SOHC/HFP became insolvent. Based on this analysis, as shown in Table 1 below, I have concluded that SOHC/HFP: (1) became insolvent no later than December 31, 2008, assuming the HFP Notes are treated as equity; and, (2) was insolvent no later than October 31, 2008 assuming the HFP Notes are treated as debt. As demonstrated by HFP's cash forecasts projecting negative cash balances and its need to borrow from related parties to meet margin calls, data exists which evidences SOHC/HFP's inability to pay debts and/or its inadequate capitalization in periods prior to October 2008.

**Table 1**

| SOHC/HFP Adjusted Net Equity | | |
|---|---|---|
| Date | Treating the HFP Notes as Debt | Treating the HFP Notes as Equity |
| August 31, 2008 | $      181,309,685 | $      181,309,685 |
| September 30, 2008 | 85,907,901 | 402,288,444 |
| October 31, 2008 | (140,546,895) | 234,307,402 |
| November 30, 2008 | (210,293,741) | 167,656,045 |
| December 31, 2008 | $    (428,268,542) | $    (48,290,944) |

b)       CDO Fund solvency analysis

I assessed CDO Fund's solvency by comparing the present fair salable value of its assets, as demonstrated by Highland's own contemporaneous fair value determinations, with CDO Fund's probable liabilities. Based on my analysis of HCM's reconciled net asset value ("NAV") files, CDO Fund became insolvent no later than October 31, 2008. As evidenced by CDO Fund's insufficient cash reserves at the time of the September 17, 2008 and October 21, 2008 collateral calls, data exists which evidences the inadequate capitalization of CDO Fund in

periods prior to October 31, 2008.  Table 2 below provides a summary of CDO Fund's NAV beginning in September 2008.

**Table 2**

| Date | CDO Fund Adjusted Net Equity |
|------|------------------------------|
| September 30, 2008 | $ 260,728,947 |
| October 31, 2008 | (22,707,467) |
| November 30, 2008 | (229,108,241) |
| December 31, 2008 | $ (346,108,266) |

1. *SOHC/HFP engaged in constructively fraudulent transactions and CDO Fund engaged in potential constructively fraudulent transactions*

   a)  SOHC/HFP constructively fraudulent transfers

As discussed above, the Trier of Fact's determination as to whether the HFP Notes should be recharacterized as equity or should represent debt affects the date that SOHC/HFP was insolvent.  As a result, I examined transactions following both the October 31, 2008 insolvency date and the alternative December 31, 2008 insolvency date.

If the HFP Notes are recharacterized as an equity investment, then the HFP Notes termination should be evaluated in the context of an equity distribution or dividend.  In that case, based on certain assumptions, SOHC/HFP consummated 127 constructively fraudulent transfers totaling $203.0 million after December 31, 2008.  If the Trier of Fact determines that the HFP Notes are debt instruments, then the HFP Notes termination should be evaluated in the context of a debt repayment.  In that scenario, based on certain assumptions, SOHC/HFP consummated 130 fraudulent transfers totaling $215.8 million after October 31, 2008.  It is my understanding that if the Highland Entities in Table 12 of this report are determined to be insiders by the Court, then such transfers would by definition not be for fair consideration under prevailing New York case law.

   b)  CDO Fund potential constructively fraudulent transfers

Based on the solvency analysis discussed above, CDO Fund was insolvent by no later than October 31, 2008.  Subsequent to this date, CDO Fund made 15 asset and cash transfers totaling $22.8 million which I have identified as potential constructively fraudulent transfers.

c)      Summary of constructively fraudulent transfer analysis

In summary, depending on whether the Trier of Fact determines that the HFP Notes issuance is an equity investment in HFP or a debt issuance by HFP, I have identified between $225.7 and $238.6 million of potential fraudulent transfers from SOHC/HFP and CDO Fund, as outlined in Table 3:

**Table 3**

|  | HFP Notes Recharacterized as Equity | | HFP Notes Deemed to be Debt | |
| --- | --- | --- | --- | --- |
|  | Number of Fraudulent Transfers | Amount of Fraudulent Transfers | Number of Fraudulent Transfers | Amount of Fraudulent Transfers |
| **SOHC/HFP** | | | | |
|    Cash Transfers | 3 | $    7,329,858 | 6 | $   20,196,828 |
|    Asset Transfers | 124 | 195,644,337 | 124 | $195,644,337 |
| **SOHC/HFP Total** | **127** | **202,974,195** | **130** | **215,841,165** |
| **CDO Fund** | | | | |
|    Cash Transfers | 2 | 2,552,980 | 2 | 2,552,980 |
|    Asset Transfers | 13 | 20,215,278 | 13 | 20,215,278 |
| CDO Fund Total | **15** | **22,768,258** | **15** | **22,768,258** |
| **Total Fraudulent Transfers** | **142** | **$ 225,742,453** | **145** | **$ 238,609,423** |

## IV.  Background

### A.  The Parties

#### 1.  The Highland Entities

Founded in 1993, HCM is a SEC-registered investment adviser based in Dallas, Texas. HCM, together with its affiliates, claimed that it had approximately $40 billion under management during the relevant 2008 period and that it has $20 billion under management today.[11]  HCM markets itself as one of the largest and most experienced global alternative credit managers.  The firm specializes in credit strategies, such as credit hedge funds, long-only funds and separate accounts, distressed control private equity and collateralized loan obligations.  The firm was co-founded by James Dondero and Mark Okada.  Mr. Dondero is President and majority owner of HCM, while Mr. Okada is Chief Investment Officer and a minority owner of HCM.[12]

Founded on October 31, 2005, CDO Fund was an exempted, limited partnership organized under the laws of Bermuda.[13]  CDO Fund was a leveraged fund that primarily invested in collateralized loan obligations and related securities.[14]  HCM managed CDO Fund pursuant to a September 1, 2006 Amended and Restated Investment Management Agreement.[15]  Pursuant to this agreement, HCM was responsible for, amongst other activities, supervising CDO Fund's investment portfolio, determining what investments would be purchased, retained or sold and determining what contracts and other investment-related transactions would be entered into.  It is my understanding that CDO Fund no longer has operations and is in a wind down state as an entity.[16]

---

[11] Email dated Friday October 17, 2008 at pp. LTP-0305-LTP-0306.  HCM and its related entities currently claim to have approximately $20 billion under management.  See: http://www.hcmlp.com/About-Us.aspx accessed March 6, 2013.

[12] http://www.hcmlp.com/About-Us/Team/Partners.aspx accessed March 6, 2013 and Deposition of Mark Okada, dated March 2, 2012 at pp. 9-10.

[13] CDO Fund audited financial statements dated December 31, 2007 at H_0113231.

[14] Ibid and Deposition of Todd Travers, former Portfolio Manager at HCM and CEO and President of HFP, dated April 3, 2012, p. 26.

[15] Amended and Restated Management Agreement at H_001304-H_001316.

[16] Plaintiff's Deposition Exhibit 339.

Credit Strategies was a Bermuda company incorporated on August 19, 2005 that was principally engaged in facilitating the joint execution and financing of portfolio transactions and joint custody of portfolio positions of its partners.[17] HCM announced that it was going to shut down Credit Strategies in October 2008.[18]

Crusader Fund was a Bermuda exempted, limited partnership that was established on July 10, 2000 and was managed by HCM. Its objective was to maximize returns by investing in undervalued senior secured loans and other securities of financially troubled firms.[19] HCM announced that it was going to shut down Crusader Fund in October 2008.[20]

Credit Opportunities Fund is a Delaware limited partnership based in Dallas, Texas. It is principally engaged in delivering risk-adjusted returns to its investors through financing vehicles including bank loans, high yield debt, credit default swaps and debt and equity securities issued by collateralized debt obligation funds.[21]

HFP is a privately held limited partnership partially owned by HCM, Crusader Fund, CDO Fund and others.[22] HFP's wholly owned subsidiaries in 2008 included SOHC, Highland CDO Holding Company ("CDO HoldCo"), HFP Asset Funding II and HFP Asset Funding III. HFP also held a 45% equity stake in Highland Financial Real Estate Corp. and a 25% equity stake in Highland Financial Corp during this time period.[23] HCM acts as investment manager to HFP, pursuant to the April 17, 2007 Amended and Restated Management Agreement.[24] This agreement grants HCM the broad authority to oversee substantially all operations of HFP including, but not limited to, the following:

- managing the assets of HFP;

---

[17] Amended and Restated Certificate of Limited Partnership dated December 19, 2006 at H_0365613.

[18] Email dated October 17, 2008 at LTP-0305.

[19] Highland Crusader Offshore Partners, L.P. Notes to Consolidated Financial Statements dated December 31, 2008 at H_0229524.

[20] Email dated October 17, 2008 at LTP-0305.

[21] Highland Credit Opportunities CDO, L.P. Third Amended and Restated Limited Partnership Agreement as of December 31, 2007 (H_055278-H_0055325).

[22] H_1760206 [Note: This is an undated document.]

[23] Written Resolutions of the Sole Director of HFP Asset Funding III at H_0071535-H_0071540; HFP Condensed Consolidated Financial Statements (Unaudited) dated June 30, 2008 at D-00735; Deposition of Philip Braner dated December 7, 2011, pp. 807-808; HFP Organizational Chart at H_1759160..

[24] Amended and Restated Management Agreement dated April 17, 2007 at H 000119.

- serving as consultant to HFP with respect to sponsoring and capitalizing subsidiaries, making acquisitions, dispositions and borrowings and conducting operations;

- investigation, analysis, selection and execution of acquisition, disposition and hedging opportunities (including accumulating assets for HFP's subsidiaries and making short-term investments of excess cash);

- conducting negotiations with sellers and purchasers related to prospective acquisitions and dispositions of assets;

- coordinating and managing any operations of any joint-venture or co-purchased interests held by HFP or its subsidiaries;

- administering and servicing the day-to-day operations of HFP and its subsidiaries;

- monitoring the operating performance of the assets;

- providing executive and administrative personnel, office space and services until HFP employed sufficient staff to conduct day to day operations; and,

- advising HFP and each subsidiary as to its capital structure and capital raising.

SOHC is a Cayman Islands Limited Company that is a wholly owned subsidiary of HFP. During the relevant time period, SOHC held investment interests in certain non-rated debt and distressed securities.[25]  Like HFP, SOHC was managed by HCM pursuant to the April 17, 2007 Amended and Restated Management Agreement.[26]  HCM would consult on SOHC's purchase and sale of assets, perform periodic reviews of the performance of assets and act as a liaison between SOHC and third parties with respect to the purchase, hedging, financing and disposition of assets.  It is my understanding that SOHC no longer has significant operations.[27]

Strand is a Delaware corporation and is the general partner of HCM.[28]  James Dondero is the President and sole director of Strand.[29]

---

[25] HFP Condensed Consolidated Financial Statements (Unaudited) dated June 30, 2008 at D-00735.

[26] Amended and Restated Management Agreement dated April 17, 2007 at H 000119.

[27] Deposition of Philip Braner dated December 7, 2011, p. 586.

[28] Second Amended Complaint, paragraph 23.

[29] Consent of the Sole Director of Strand Advisors, Inc. dated May 9, 2008 at H_0055003-H_0055004 (Plaintiffs Exhibit 135).

2.    UBS[30]

Plaintiffs UBS London and UBSS are subsidiaries/divisions of UBS AG, a Swiss financial services company that offers a combination of wealth management, asset management and investment banking services on a global and regional basis.  UBS London has its principal operations in London, United Kingdom.  UBSS is a Delaware limited liability company with its principal operations in Stamford, Connecticut and New York, New York.

B.    Collateralized Loan Obligations and Credit Default Swap Securities[31]

The term collateralized loan obligation ("CLO") refers to a group of commercial or corporate loans that are pooled together in a special purpose vehicle.  This pool of loans is financed by securitizing the special purpose vehicle and selling interests in the pool to investors.  Effectively, a buyer gains a share of the underlying pool of loans through the purchase of an interest in the CLO.  The buyer is then entitled to receive principal and interest payments as if they held portions of the underlying loans in the pools themselves.

Within a given CLO, there are various tranches or levels that are sold to investors.  The most junior or subordinated tranches are known as the first loss position.  In the event of a default on certain loans held in a CLO pool, or less than 100% recovery on those loans, the junior positions will recover only after the more senior positions have first been paid in full.[32]  The senior positions do not incur any losses unless the overall recovery is so low that the junior positions receive no recovery.  In exchange for taking a subordinated position, the junior securities generally pay out a higher interest rate to compensate for the increased recovery risk.

Credit default swaps ("CDS") are similar in theory to insurance policies written to guarantee the performance of a referenced security.  A party may either purchase or sell a guarantee of payment on a security.[33]  For example, CDS contracts can, as is the case in this matter, guarantee the payments of certain tranches of CLOs.  If a CLO defaults and fails to make

---

[30] Second Amended Complaint, paragraphs 20 and 21.
[31] "Collateralized Loan Obligations (CLO's) – A Primer" by Andrea Jobst, London School of Economics and Political Science, Financial Markets Group.
[32] "Collateralized Loan Obligations (CLO's) – A Primer" by Andrea Jobst, London School of Economics and Political Science, Financial Markets Group.
[33] "Collateralized Loan Obligations (CLO's) – A Primer" by Andrea Jobst, London School of Economics and Political Science, Financial Markets Group.

its contractual payments, and a CDS contract is in place on that CLO, the protection seller (such as the Knox Warehouse as discussed below) will be obligated to make the interest and principal payments to the protection buyer, in the amount that would otherwise be made with respect to the CLO had the default not occurred. In exchange for selling protection, the protection buyer generally pays the protection seller a periodic payment. The amount of the payment is generally expressed as an interest rate on the notional amount being insured. In some cases, a protection buyer may also pay a protection seller an up-front fee as well.

C.    The Original Transaction

Starting in April 2007, UBS entered into a series of agreements with certain of the Defendants (the Synthetic Warehouse Agreement dated April 12, 2007, the Proposed Collateralized Debt Obligations Transaction letter agreement dated April 20, 2007, and the Warehouse Agreement dated May 22, 2007), whereby UBS would provide financing in order for HCM, as servicer, to select certain CLOs and CDS positions to be included in a warehouse facility. The warehouse facility contemplated in the Original Transaction was commonly referred to by the parties as the Knox Warehouse.[34] UBS, as financing provider, held the assets contained in the Knox Warehouse on its books.[35] The general purpose of the Original Transaction was to: (1) pool CLO and CDS assets acquired by HCM, but financed by UBS, into a special purpose vehicle; and, (2) then to issue securities to investors collateralized by that pool of assets.[36] The underlying pool of assets collateralizing the securities was not comprised of corporate loan obligations, but rather of CLO positions and CDS positions on CLOs.[37] The planned securitization of the Knox Warehouse was referred to as a "CLO Squared."

The CLOs acquired for the Knox Warehouse consisted primarily of junior, subordinated CLO tranches. Similarly, in the case of the CDS positions, the Knox Warehouse sold protection on primarily junior, subordinated CLO positions.[38] In fact, on average, approximately 85% by dollar value of the tranches issued for the relevant deals were senior to the CLO tranches in

---

[34] Deposition of Todd Travers dated April 3, 2012, p. 77.
[35] Deposition of Keith Grimaldi dated March 6, 2012 at pp. 47-48.
[36] Synthetic Warehouse Agreement dated April 12, 2007, the Proposed Collateralized Debt Obligations Transaction letter agreement dated April 20, 2007, and the Warehouse Agreement dated May 22, 2007.
[37] Deposition of Philip Braner dated December 6, 2011, p. 233.
[38] As such, if the underlying CLOs were to default, under the terms of the CDS positions the Knox Warehouse would have been required to make scheduled interest and principal payments to the holders of those CLOs.

which the Knox Warehouse was investing.  This means that the tranches of securities in the Knox Warehouse were riskier than other, more senior tranches of those CLOs.

### D.     The Failure of the Original Transaction

The terms of the Original Transaction required that in the event that the parties were unable to securitize the special financing vehicle as contemplated by August 15, 2007, the Knox Warehouse would expire automatically.  Under the transaction documents, in such a situation, CDO Fund was responsible for bearing 51% of any mark to market losses on the securities held in the Knox Warehouse, while SOHC was responsible for the remaining 49%.  Thus, in the event that securitization did not occur and the CLO or CDS positions held in the Knox Warehouse declined in value, CDO Fund and SOHC had to pay UBS the amount of such a decline.  CDO Fund and SOHC's total loss exposure on the CLO securities was capped at a combined maximum of $50 million.[39]  On the CDS positions, there was no cap on CDO Fund or SOHC's total loss exposure.[40]

Because of the deterioration in the market for securitized assets, a securitized offering did not occur by August 15, 2007 and the Knox Warehouse expired on its terms.[41]  The losses incurred under the Knox Warehouse totaled approximately $86 million as of the termination date.[42]

### E.     The Restructured Transaction

Following the expiration of the Original Transaction in August 2007, UBS was not compensated by CDO Fund and SOHC for the approximately $86 million in mark to market losses incurred on the securities held in the Knox Warehouse.[43]  Further, losses in the Knox Warehouse continued to mount as the market continued to decline.  By February 2008, according

---

[39] Warehouse Agreement dated May 22, 2007 at PWC-HCM00005385.

[40] Synthetic Warehouse Agreement dated April 12, 2007 at PWC-HCM00005428- PWC-HCM00005429.

[41] Deposition of Keith Grimaldi, dated March 6, 2012, p. 58 and Engagement of UBS Securities as Structuring and Placement Agent in Connection with Proposed Collateralized Debt Obligations Transaction (Plaintiffs Exhibit 1).

[42] Email chain dated August 2007, "RE: TRAMS2148186610[1] Highland Warehousing agreement" at UBS-000426215.

[43] Email chain dated August 2007, "RE: TRAMS2148186610[1] Highland Warehousing agreement" at UBS-000426215.

to Highland's own analysis, the value of the assets in the Knox Warehouse had declined such that the mark to market losses were in excess of $180 million.[44]

In March 2008, UBS, HCM, SOHC and CDO Fund entered into a series of restructured agreements regarding the Knox Warehouse, comprised of a letter regarding the Engagement of UBS Securities as Structuring and Placement Agent in Connection with Proposed Collateralized Debt Obligations Transaction, dated March 14, 2008, a Cash Warehouse Agreement dated March 14, 2008 and a Synthetic Warehouse Agreement, dated March 14, 2008.

Similar to the Original Transaction, the purpose of the Restructured Transaction was to issue securities collateralized by the assets held in the Knox Warehouse. Both UBS and the Fund Counterparties expressly recognized, however, that the market conditions as of March 2008 made it "not currently feasible... to sell the Securities and to close the Transaction."[45] As part of the Restructured Transaction, SOHC and CDO Fund agreed to be responsible for the liability associated with *any losses* on the mark to market value of the assets held in the Knox Warehouse in the event that the security issuance did not occur. As part of the Restructured Transaction, there was no cap on CDO Fund or SOHC's total loss exposure for either the CLO or CDS positions.[46]

In addition, the Restructured Transaction called for CDO Fund and SOHC to post collateral at the onset of the agreement, consisting of $20 million in cash and additional securities with a market value of approximately $33 million.[47] When this collateral was ultimately posted, however, some portion of the securities was provided by entities other than CDO Fund and SOHC.[48] Finally, the Restructured Transaction contained language that entitled UBS to make collateral calls on SOHC and CDO Fund in the event that the value of the

---

[44] Knox Warehouse monthly valuation as of February 29, 2008 at H_0770331.

[45] Restructured Engagement Letter, § 4(d)(xiii), Plaintiffs Exhibit 1; see also January,15, 2008 Email from Keith Grimaldi, former UBS Head of Secondary CDO Trading, to Philip Braner, HCM Director of Business Development, UBS-000318500 (confirming that under the Restructured Warehouse Agreements the parties would "continue on a best efforts basis to work towards a securitization when possible"); Todd Travers, former HCM Partner, Senior Portfolio Manager, and Head of Structured Products, Dep. Tr. 81:13–82:7 (agreed that "given the market conditions, it would not have been feasible to close the CLO [squared] transaction that was contemplated by the agreements").)

[46] Synthetic Warehouse Agreement dated March 14, 2008 at UBS-00000596 (Plaintiffs Exhibit 3) and Cash Warehouse Agreement dated March 14, 2008 (Plaintiffs Exhibit 2).

[47] April 7, 2008 email from Philip Braner to Todd Travers at H_0992168 (Plaintiffs Exhibit 262).

[48] Deposition of Philip Braner dated December 6, 2011, at p. 158; May 12, 2008 Email among Braner, Bridges, & State St., at H_0896509.

collateral and the assets contained in the Knox Warehouse continued to decline in value. Specifically, for each incremental $100 million increase in mark to market losses, CDO Fund and SOHC were required to provide an additional $10 million in collateral to UBS.[49]

F.    Condition of Highland Entities in Fall 2008

The broad financial markets continued to deteriorate after the parties entered into the Restructured Transaction.  This deterioration also impacted the Highland Entities.  For example, according to Todd Travers, former CEO and President of HFP, there were concerns about HFP's liquidity going back to at least April 7, 2008.[50]  In the summer of 2008, HFP did a private placement to raise capital.[51]  The majority of the participants in this private placement were other of the Highland Entities.[52]  According to Mr. Travers, by the end of August 2008 "red flags were waving" that HFP was facing serious risk of insolvency.[53]  Mr. Dondero stated that there was a "significant question" by November 18, 2008 whether or not HFP could continue as a going concern as HFP was experiencing significant liquidity problems.[54]

Likewise, according to former HCM Portfolio Manager, Paul Roos, CDO Fund received margin calls throughout 2008 with the margin calls increasing as the year progressed.[55]  CDO Fund was in "desperate need of cash" in order to satisfy those margin calls.[56]  According to Mr. Roos, by early September 2008, as asset prices were continuing to decline and margin calls to CDO Fund were increasing, CDO Fund was essentially performing "triage" on margin calls as they came in.[57]  CDO Fund portfolio manager Gibran Mahmud likewise agreed that CDO Fund was functioning day to day in September and October 2008 trying to meet margin calls and obligations that were coming due.[58]  Indeed, on September 17, 2008 alone, CDO Fund was facing the possibility of $25 million in margin calls.[59]  According to internal documents, by November 30, 2008 as a result of these margin calls, partnership interests in CDO Fund had "a

---

[49] Synthetic Warehouse Agreement dated March 14, 2008 at UBS-00000596.
[50] Deposition of Todd Travers dated April 3, 2012, at pp. 108-110.
[51] August 5, 2008 HFP Board of Directors Teleconference at D-00638 (Plaintiffs Exhibit 254).
[52] August 5, 2008 HFP Board of Directors Teleconference at D-00638 (Plaintiffs Exhibit 254).
[53] Deposition of Todd Travers dated April 3, 2012, at pp. 124-125.
[54] Deposition of James Dondero dated June 12, 2012, at pp. 706-707.
[55] Deposition of Paul Roos dated May 1, 2012, at pp. 51-52.
[56] Deposition of Paul Roos dated May 1, 2012, at pp. 51-52.
[57] Deposition of Paul Roos dated May 1, 2012, at pp. 98-99.
[58] Deposition of Gibran Mahmud dated July 19, 2012, at p. 101.
[59] H_0888835 (Plaintiffs Exhibit 275).

$0 NAV with no anticipated recovery,"[60] and as of December 31, 2008, CDO Fund had advised its investors that the amount of CDO Fund's liabilities exceeded its assets to such a degree that no assets remained available to satisfy any unpaid redemptions or to distribute to investors and that CDO Fund would engage in an orderly liquidation.[61]

G.    SOHC and CDO Fund's Inability to Meet Collateral Calls

Beginning most notably in September 2008, the value of the CLO and CDS positions contained in the Knox Warehouse dropped substantially. Chart 1 below provides a summary of the mark to market value of the positions in the Knox Warehouse in 2008, based on HCM's marks as well as UBS's.

Chart 1[62]



| Mark to Market Losses (Knox Warehouse Financing less Knox Warehouse Securities Value): | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ($millions) | Feb-08 | Mar-08 | Apr-08 | May-08 | Jun-08 | Jul-08 | Aug-08 | Sep-08 | Oct-08 | Nov-08 |
| HCM Marks | $ (182.4) | $ (203.6) | $ (189.7) | $ (177.9) | $ (175.4) | $ (200.6) | $ (191.6) | $ (294.2) | $ (433.1) | $ (510.4) |
| UBS Marks | | $ (212.5) | $ (224.1) | $ (213.4) | $ (212.5) | $ (234.2) | $ (233.6) | $ (368.5) | $ (431.8) | $ (622.0) |

As shown in the chart above, the monthly valuation of the Knox Warehouse is similar whether the UBS or HCM marks are utilized. In October 2008, the last month that HCM

---

[60] H_0794534 (Plaintiffs Exhibit 300).
[61] H_0791914-15 (Plaintiffs Exhibit 339); Deposition of Gibran Mahmud dated July 19, 2012, at pp. 191-194.
[62] Knox Warehouse financing equals the notional value of the CDS positions and the cost basis of CLO positions in the Knox Warehouse.

provided individual marks on the assets in the Knox Warehouse, the valuations are almost identical.[63]

As a result of the declining market values of the Knox Warehouse securities and pursuant to its contractual right, UBS made a formal collateral call for $10 million on September 17, 2008.[64] This collateral call was met by posting $10 million in cash.[65] According to internal Highland documents, HFP paid the entire amount, including the approximately $5 million owed by CDO Fund.[66] Specifically, HFP's subsidiary, CDO Holdco, transferred approximately $15.0 million to HFP who then sent the money to SOHC on September 18, 2008.[67] Following another month of substantial declines in market values, UBS made a second collateral call for an additional $10 million on October 21, 2008.[68] In response, SOHC and CDO Fund caused eligible securities valued at $10 million to be posted.

On November 7, 2008, after the value of the collateral and Knox Warehouse securities declined an additional $100 million, UBS delivered a third collateral call for $10 million.[69] UBS was offered certain assets to meet this collateral call, including assets that did not belong to SOHC, but to HFP Asset Funding II.[70] UBS declined these assets as I understand it was allowed to do under the transaction documents and SOHC and CDO Fund did not satisfy the collateral call. On December 3, 2008, UBS delivered to HCM, as servicer for SOHC and CDO Fund, a Termination Letter that served to provide notice of a termination date with respect to the Restructured Transaction.[71] On December 19, 2008, UBS delivered a Cash Warehouse Demand letter and a Synthetic Warehouse Demand letter seeking payment for the mark to market losses associated with the Knox Warehouse.[72] On February 24, 2009, after SOHC and CDO Fund failed to make the demanded payment pursuant to the terms of the Restructured Transaction,

---

[63] By November 2008, HCM had ceased analyzing the individual marks on the assets in the Knox Warehouse, and rather performed only an estimate of the value of the warehouse positions as a whole.
[64] Formal Notice of Collateral Call dated September 17, 2008 at UBS-000331474.
[65] September 18, 2008 E-mail Exchange Confirming Deposit at H_0888758.
[66] H_0146274 (Plaintiffs Exhibit 465).
[67] Plaintiffs Exhibit 38 at H_0888779.
[68] Collateral Call dated October 21, 2008 at UBS-000338945.
[69] Letter to Mr. Travers dated November 7, 2008 at UBS-000336406.
[70] Deposition of Philip Braner dated August 21, 2012, at pp. 950-952.
[71] Letter to Highland Capital Management, L.P. dated December 3, 2008 at UBS-00000021.
[72] Letter to Highland Capital Management, L.P. dated December 19, 2008 at UBS-00000026 and Letter to Highland Capital Management, L.P. dated December 19, 2008 at UBS-00000029.

UBS commenced this litigation against the Defendants seeking damages resulting from the Defendants' failure to satisfy its obligations under the Restructured Transaction.[73]

### H. The HFP Notes Issuance and Termination

In addition to the Restructured Transaction, another transaction relevant to my analysis is HFP's issuance and termination of notes that took place between September 2008 and March 2009. The HFP Notes Issuance was an idea conceived by Mr. Dondero.[74] According to Mr. Braner the decision to do the HFP Notes Issuance was made at the beginning of September 2008.[75] The issuance of the HFP notes was accomplished by the Highland Entities through a series of transactions:

- From September 15 through September 18, 2008, CDO HoldCo, a subsidiary of HFP, transferred certain assets to Credit Strategies and Crusader Fund in exchange for cash of approximately $34.7 million.[76] See Chart 2 below detailing these transactions.

---

[73] Second Amended Complaint, paragraphs 106-110.
[74] Deposition of James Dondero dated Feb. 28, 2012 at p. 190.
[75] Deposition of Philip Braner (Highland 30(b)(6) witness) dated Nov. 20, 2012, p. 54.
[76] Plaintiffs Exhibit 161; Deposition of Philip Braner (Highland 30(b)(6) witness) dated Nov. 20, 2012, pp. 49-54; Crusader Fund Trade Blotter (H_0307225); Credit Strategies Trade Blotter (H_0305356); CDO Holding Company General Leger (2012-01-25.xlsx).

**Chart 2**



Asset Sales Prior to Original HFP Notes Issuance

- Next, on September 26, 2008, HFP obtained assets with a carrying value of $321.0 million from Credit Strategies, Crusader Fund, CDO Fund and other Highland Entities. See Chart 3 below detailing these transactions. The $321.0 million of assets were transferred to HFP Asset Funding II and HFP Asset Funding III, newly formed wholly-owned subsidiaries of HFP.

Chart 3[77]



Original HFP Notes Issuance –
Assets Transferred to HFP

- Also on September 26, 2008, in exchange for those assets, HFP issued what it deemed to be $316.0 million worth of 10% "senior secured" notes due November 15, 2018 ("Original HFP Notes").[78] According to HFP Board Minutes the $5 million difference between the value of the assets being transferred and the notes being issued was due to the fact that, previously, HFP had "to advance approximately $5 million of cash to [CDO Fund]" to pay UBS's collateral call related to the Knox Warehouse and "that this obligation would be repaid through receipt of assets from the CDO Fund with a value greater than the note from the Partnership in an amount equal to the funds previously

---

[77] Note Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083) at Schedule A.
[78] While the notes are referred to as "secured" in certain of the transaction related documents, I understand that no filings were made to perfect a security interest for the benefit of the Highland Entities.

advanced."[79]  The HFP Notes were issued to the Highland Entities as shown in Chart 4 below.[80]

**Chart 4**



[79] September 24, 2008 HFP Board of Directors meeting minutes at H_008442-H_008443 (Plaintiffs Exhibit 80) and Note Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083) at Schedule A.
[80] Note Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083).

**UPDATED 4/18/2013**
Page 23

- Chart 5 below shows the aggregate of the asset transfers and notes issued as part of the Original HFP Notes Issuance on September 26, 2008.

**Chart 5**



- On October 7, 2008, HFP decided to transfer assets from CDO HoldCo to Crusader Fund in exchange for cash. HFP then planned to reacquire those assets by issuing additional notes to Crusader Fund.[81] Accordingly, from October 8 through 10, 2008, HFP's wholly owned subsidiary CDO HoldCo sold approximately $55.5 million of assets to Crusader Fund in exchange for cash as shown in Chart 6 below.[82]

**Chart 6**



---

[81] October 7, 2008 HFP Board of Directors meeting minutes (H_008446-H_008448).
[82] H_0743030.xls; October 7, 2008 HFP Board of Directors meeting minutes (H_008446-H_008448).

- As shown in Chart 7 below, on October 10, 2008 HFP thereafter issued an additional $55.5 million in notes to repurchase these same assets back from Crusader Fund, and amended the Original HFP Notes to reflect the additional $55.5 million in notes transferred to Crusader Fund.[83]

**Chart 7**



[83] Amendment No. 1 to Note Purchase Agreement, H_0644653-H_0644663.

- Chart 8 below shows the aggregate of the additional asset transfers and notes issued from October 8 through October 10, 2008.

**Chart 8**



- As shown in Table 4, after including the additional $55.5 million issued to Crusader Fund, the stated value of the notes totaled $371.5 million (collectively with the "Original HFP Notes", the "HFP Notes").[84,85]  Table 4 below summarizes the transactions that occurred as part of the HFP Notes issuance.

---

[84] October 14, 2008 HFP Board of Directors meeting minutes (H_008449-H_008450).

Table 4[86]

| Counterparty | Description of Assets Exchanged | Par/Face of Assets Exchanged | Average Mark | Market Value of Assets Exchanged | Principal Amount of Notes to be Purchased |
|---|---|---|---|---|---|
| Original HFP Notes Issuance | | | | | |
| CDO Fund | CLOs | $ 99,558,000 | 53.07 | $ 52,834,564 * | $ 47,734,564 |
| Credit Opportunities Fund | CLOs | 13,750,000 | 48.12 | 6,616,429 | 6,616,429 |
| Credit Strategies | CLOs | 58,095,000 | 58.71 | 34,106,429 | 34,106,429 |
| Crusader Fund | CLOs | 101,725,000 | 58.29 | 59,295,955 | 59,295,955 |
| Highland Crusader Holding Corporation | Life Settlement Contracts | 590,743,862 | 23.47 | 138,625,041 | 138,625,041 |
| Highland Credit Opportunities Holding Corporation | Life Settlement Contracts | 160,285,000 | 18.46 | 29,592,263 | 29,592,263 |
| **Original HFP Notes Issuance** | | **$ 1,024,156,862** | **31.35** | **$ 321,070,681 *** | **$ 315,970,681** |
| Additional HFP Notes Issuance | | | | | |
| **Crusader Fund** | CLOs | **$ 143,930,000** | **38.55** | **$ 55,488,000** | **$ 55,488,000** |
| **Total HFP Notes Issuance** | | **$ 1,168,086,862** | **32.24** | **$ 376,558,681** | **$ 371,458,681** |
| * CDO Fund transferred assets with a higher market value than the notes purchased in exchange for HFP's forgiveness of a previous loan to CDO Fund. | | | | | |

Following the issuance of the HFP Notes, CDO Fund disposed of its share of the notes through a series of transactions.

- On October 2, 2008, CDO Fund transferred $4.0 million of the HFP Notes to Crusader Fund in exchange for assets.[87]

- On October 20, 2008, CDO Fund assigned approximately $22.3 million of the HFP Notes to HCM to pay off a liability that CDO Fund owed to HCM for certain loans that were made to CDO Fund throughout September and October 2008.[88]

- Finally, on November 24, 2008, CDO Fund and Citibank, N.A. entered into an agreement in which CDO Fund pledged the remaining $21.4 million of its HFP Notes to Citibank, N.A.[89]

Thus, at the time of the HFP Notes termination (described below), CDO Fund no longer held any of the HFP Notes.

---

[85] Notes Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083) and Amended and Restated Note Purchase Agreement as of December 22, 2008 (H_0928489-H_0928539); Amendment No. 1 to Note Purchase Agreement dated October 10, 2008 (H_0644653-H_0644663).
[86] The market value amounts in the table represent the amounts as listed in the Notes Purchase Agreements. I noted de minimus difference between these amounts and the amounts listed in the relevant trade blotters.
[87] March 16, 2009 HFP Board of Directors meeting minutes at H_008491.
[88] H_0347695-H_0347698 (Plaintiffs Exhibit 340).
[89] Citi00443-Citi00453.

In December 2008, after being put on notice of the Knox Warehouse termination, HCM employees including Mr. Dondero contemplated retiring the HFP notes.[90] On January 16, 2009, HFP's Board of Directors discussed a memorandum prepared by management that described HFP's options with regard to the HFP Notes. The memorandum indicated that not all of the note holders would receive the same recovery for the extinguishment of the HFP Notes (which is also shown in Table 5 below).[91]

**Table 5**[92,93]

| Counterparty | Description of Assets Exchanged | Original Notes Issuance | Less Paydown | Notes Extinguished | Market Value of Assets Exchanged |
|---|---|---|---|---|---|
| Citibank, N.A. | CLOs and Cash | $ 21,397,477 | $ (67,222) | $ 21,330,255 | $ 17,481,808 |
| Highland Credit Opportunities CDO Ltd. | CLOs and Cash | 6,616,429 | (20,786) | 6,595,643 | 3,545,522 |
| Credit Strategies | CLOs and Cash | 34,106,429 | (107,148) | 33,999,281 | 20,044,219 |
| Crusader Fund | CLOs and Cash | 59,295,955 | (186,283) | 59,109,672 | 43,405,815 |
| Highland Crusader Holding Corporation | Life Settlement Contracts | 198,113,041 | (622,389) | 197,490,652 | 108,961,751 |
| Highland Credit Opportunities Holding Corporation | Life Settlement Contracts | 29,592,263 | (92,967) | 29,499,296 | 22,237,466 |
| HCM | CLOs and Cash | 22,337,087 | (70,174) | 22,266,913 | 17,778,566 |
| Total | | $ 371,458,681 | $ (1,166,970) | $ 370,291,711 | $ 233,455,147 |

On March 20, 2009, an agreement to terminate the HFP Notes in exchange for the return of certain assets was signed by HFP and the holders of the HFP Notes.[94] As noted in Table 5 above, at the time of the HFP Notes termination, the assets were worth significantly less than they were worth as of the issuance of the HFP Notes.[95] Chart 9 shows the assets that were transferred from HFP's subsidiaries to the various note holders in exchange for the extinguishment of the HFP Notes.

---

[90] Email from Philip Braner to Todd Travers and James Dondero dated December 29, 2008 at H_0781548 and Deposition of Todd Travers dated April 3, 2012, pp. 228-229.
[91] HFP Board of Directors meeting minutes dated January 16, 2009 at H_008464.
[92] Notes extinguished are presented at face value. Market values of assets exchanged are presented as contemporaneously valued as of January 1, 2009.
[93] Note that Highland Credit Opportunities CDO Ltd. appears to be labeled Highland Credit Opportunities CDO Holding Ltd. in the trade blotter.
[94] Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM00026158-PWC-HCM00026174).
[95] "HFP Note Settlement.xls" at H_0164048.

**Chart 9[96]**



*The majority of the assets were transferred by HFP Asset Funding II. However, CDO HoldCo transferred some of the assets in exchange for the extinguishment of the HFP Notes.

---

[96] Notes extinguished are presented at face value. Market values of assets exchanged are presented as contemporaneously valued as of January 1, 2009.

Chart 10 below shows the notes that were extinguished as part of the HFP Notes termination.

Chart 10[97]



[97] Notes extinguished are presented at face value. Market values of assets exchanged are presented as contemporaneously valued as of January 1, 2009.

UPDATED 4/18/2013
Page 31

Chart 11 below shows the aggregate of the notes extinguished and assets transferred as part of the HFP Notes termination.

**Chart 11**[98]



---

[98] Notes extinguished are presented at face value. Market values of assets exchanged are presented as contemporaneously valued as of January 1, 2009.

The left side of Table 6 below ("Stated Value of Assets Received at Issuance") shows the assets transferred at the issuance of the HFP Notes on a by-entity and by-counterparty basis as positive amounts flowing into HFP's subsidiaries. The right side of Table 6 ("Stated Value of Assets Transferred at Termination") shows the assets flowing from HFP's subsidiaries pursuant to the termination of the HFP Notes on a by-entity and by-counterparty basis as negative values. Notably, assets at termination flowed out of Highland Financial Real Estate and CDO HoldCo, two HFP subsidiaries which did not receive assets as part of the HFP Notes issuance.

**Table 6**[99]

| | Stated Value of Assets Received at Issuance | | | Stated Value of Assets Transferred at Termination | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Counterparty | Asset Funding II | Asset Funding III | Total | Asset Funding II | Asset Funding III | Highland Financial Real Estate | CDO HoldCo | Cash** | Total |
| Citibank, N.A. | $ - | $ - | $ - | $ (11,661,132) | $ - | $ - | $ (2,320,676) | $ (3,500,000) | $ (17,481,808) |
| CDO Fund* | 47,734,564 | - | 47,734,564 | - | - | - | - | - | - |
| Highland Credit Opportunities CDO Ltd. | 6,616,429 | - | 6,616,429 | (1,269,850) | - | - | (2,036,350) | (239,321) | (3,545,522) |
| Credit Strategies | 34,106,429 | - | 34,106,429 | (9,347,234) | - | (5,856,240) | (920,660) | (3,920,085) | (20,044,219) |
| Crusader Fund | 55,488,000 | 138,625,042 | 194,113,041 | (34,012,844) | - | - | (6,222,519) | (3,170,452) | (43,405,815) |
| Highland Crusader Holding Corporation | - | - | - | - | (108,961,751) | - | - | - | (108,961,751) |
| Highland Credit Opportunities Holding Corporation | - | 29,592,263 | 29,592,263 | - | (22,237,466) | - | - | - | (22,237,466) |
| HCM | - | - | - | - | - | (17,778,566) | - | - | (17,778,566) |
| Total | $203,241,377 | $168,217,305 | $371,458,681 | $ (56,291,061) | $ (131,199,217) | $ (23,634,806) | $(11,500,205) | $(10,829,858) | $ (233,455,147) |

Footnotes:
* CDO Fund transferred all of its HFP Notes to Citibank, N.A., HCM and Crusader Fund through a series of transactions. As such, CDO Fund did not receive any assets at termination.
** It is unclear which subsidiary transferred the cash at termination.

---

[99] Notes extinguished are presented at face value. Market values of assets exchanged are presented as contemporaneously valued as of January 1, 2009.

V.      **Summary of Opinions**

A.      *The Plaintiffs have suffered damages of $599.2 million to $750.1 million, including prejudgment interest, as of the Breach Date.*

B.      *I observed indicia of alter ego at the Highland Entities.*

C.      *I identified constructively fraudulent transfers.*

     1.      *SOHC/HFP was insolvent no later than: (a) December 31, 2008 assuming the HFP Notes are recharacterized as equity, or (b) October 31, 2008 assuming the HFP Notes are deemed to be debt, and CDO Fund was insolvent no later than October 31, 2008.*

     2.      *SOHC/HFP engaged in constructively fraudulent transactions and CDO Fund engaged in potential constructively fraudulent transactions.*

## VI.    Analysis of Opinions

### A.    *The Plaintiffs have suffered damages of $599.2 million to $750.1 million, including prejudgment interest, as of the Breach Date.*

Under the Restructured Transaction SOHC and CDO Fund bore the risk of mark to market losses to the extent that securities in the Knox Warehouse declined in value.  After the Restructured Transaction was terminated on December 3, 2008, it is my understanding that these two entities were required to pay UBS for any losses that were incurred.[100]  However, no such payments were made.[101]  I calculated the losses incurred as part of the Knox Warehouse as of the Breach Date in order to determine the amounts owed by the Defendants.

To calculate the damages incurred by the Plaintiffs as of the Breach Date, I did the following: (1) compared the market value of the Knox Warehouse positions to their cost basis to determine the total mark to market losses, conservatively using both HCM's November 30, 2008 mark estimation and UBS's December 3, 2008 marks; (2) reduced damages by the carry balance as of the Breach Date; (3) increased damages by the unpaid financing fees owed to UBS; (4) reduced damages by the benefit UBS received by no longer extending below market credit; and, (5) reduced the damages for the cash and securities posted as collateral based on their value as of the Breach Date.  The measure of damages I have calculated represents UBS's aggregate loss position with respect to the Knox Warehouse as of the Breach Date.

To calculate the mark to market losses, I first examined the market value of the Knox Warehouse positions as of the Breach Date.  In doing so, I looked at both UBS's marks and Highland's marks.  For UBS's marks, I looked at what was contemporaneously recorded in UBS's books and records as of the Breach Date consistent with UBS's normal process of determining the market value of its investments.[102]  Additionally, for five CDS positions (totaling $45 million in notional value) in which Lehman Brothers was the counterparty, I relied on documentation that details the value of the positions at the time of Lehman's default and the

---

[100] Letter to Highland Capital Management, L.P. dated December 19, 2008 at UBS-00000026 and Letter to Highland Capital Management, L.P. dated December 19, 2008 at UBS-00000029.
[101] Second Amended Complaint, paragraphs 103-105.
[102] Based on discussions with UBS personnel, it is my understanding that these prices were recorded in the normal course of business by UBS personnel.  I further understand that certain of these prices are tested on a periodic basis by UBS' Independent Price Verification staff.

corresponding recovery rate on Lehman bankruptcy claims in order to quantify the loss associated with those securities.[103]  As shown in the table below, the UBS marks as of the Breach Date yield mark to market losses of $599.0 million.  Alternatively, Highland's marks as of November 30, 2008, yield mark to market losses of $494.4 million.[104,105]

**Table 7**

| Knox Warehouse Loss Analysis as of Breach Date | | | | |
|---|---|---|---|---|
| | Highland 11/30/2008 Marks | | UBS 12/3/2008 Marks | |
| Mark to Market Losses - Cash Assets | $ | 106,157,101 | $ | 128,848,101 |
| Mark to Market Losses - Synthetic Assets | | 388,284,750 | | 470,118,984 |
| Total Mark to Market Losses | | 494,441,851 | | 598,967,085 |

Both the UBS marks as of December 3, 2008, with a weighted average price of approximately 24.15 (cents on the dollar consistent with mark pricing conventions), and the Highland marks as of November 30, 2008, with a weighted average price of 37.00, appear conservative for damages purposes.  This is because both of those marks are significantly higher than various other comparable marks that were available contemporaneous with the Breach Date. Specifically, in order to determine the amount owed by SOHC and CDO Fund as stated in the Restructured Agreement, UBS conducted an auction to obtain third-party bids on the positions in the Knox Warehouse on December 16, 2008.[106]  During this auction, 15 different third-party firms submitted a total of 187 bids, with 98 of the 117 Knox Warehouse securities receiving at least one bid.[107]  The December 16, 2008 auction conducted by UBS associated with the

---

[103] Lehman claim amount spreadsheet, UBS-000475421; Original Transfer of Claim Agreement between UBS and Lagan Partners, LLC dated September 25, 2009; Original Transfer of Claim Agreement between UBS and SPCP Group, LLC dated September 29, 2009; Original Transfer of Claim Agreement between UBS and King Street Capital Master Fund, LTD. dated October 2, 2009 and Original Transfer of Claim Agreement between UBS and King Street Capital, L.P. dated October 2, 2009.

[104] In November 2008, unlike UBS, HCM did not value the Knox Warehouse positions on a more frequent than monthly basis, but rather valued the positions only at the end of each month.  Thus, HCM's marks on November 30, 2008 were those that are closest in time to the Breach Date.  Knox Warehouse valuation as of November 30, 2008 at H_0088012.

[105] HCM had a process in place to value the Knox Warehouse that it utilized for purposes of managing its business and for fair value reporting.  This process had been reviewed and deemed reasonable by Highland's auditors, PricewaterhouseCoopers.  Highland Financial Partners, L.P., PricewaterhouseCoopers LLP Report to the Audit Committee of the Board of Directors dated August 5, 2008 at D-00567.

[106] Synthetic Warehouse Agreement dated March 14, 2008 at UBS-00000588 and Cash Warehouse Agreement dated March 14, 2008, Plaintiffs Exhibit 2 at pp. 6 and Exhibit A-5.

[107] Multiple partial bids by the same firm have been counted as one bid.  While the total number of tickets for CDS and CLO positions total 120, in three instances, the positions are on the same CUSIP (e.g., 04963WAH9) and bids were sought for both positions as one.

termination of the Knox Warehouse (13 days after the Breach Date) resulted in a weighted average security price of the Knox Warehouse securities of approximately 8.72.[108],[109]

This supports the fact that using either the UBS December 3, 2008 marks or Highland November 30, 2008 price estimation is conservative relative to market prices that might have been available for the Knox Warehouse securities at or around the Breach Date.

After calculating the mark to market losses, I adjusted those losses to properly account for other relevant items in my damages analysis.

*First*, I adjusted for carry value. Carry value represents the cash balance of income received by UBS as a result of holding the CLO and CDS positions in the Knox Warehouse. I have reviewed the income received on the positions in the Knox Warehouse and as of December 3, 2008, the carry balance in the Knox Warehouse was approximately $36.3 million. The income received served to reduce the damages associated with the Knox Warehouse.

*Second*, I adjusted for financing charges. The Knox Warehouse incurs financing charges related to the Knox Warehouse's leveraged nature. The financing charges are added to the mark to market losses for purposes of determining the net liability. As of December 3, 2008, the unpaid financing fees totaled approximately $10.4 million.[110] The unpaid financing fees served to increase the damages associated with the Knox Warehouse.

*Third*, I adjusted for the fact that UBS was no longer extending below market credit. As a result of the Knox Warehouse termination, UBS was no longer required to provide financing at 0.05% for synthetic assets and LIBOR plus 0.35% for cash assets. I have calculated the savings to UBS of no longer having to provide this below market financing by calculating the spread between the Knox Warehouse financing rates and UBS's incremental cost of capital of approximately 3.25%, as evidenced by a contemporaneous debt issuance, for the remaining life of the contract had the termination not occurred. The capital savings totaled approximately $6.2

---

[108] December 16, 2008 Auction Pricing at UBS-000476340-UBS-000476420.
[109] Using the results of the December 16, 2008 auction, UBS calculated damages of approximately $687 million.
[110] See UBS_000164902. This document has been adjusted to calculate financing costs through December 3, 2008 rather than December 16, 2008.

million as of the Breach Date.  This capital savings served to reduce the damages associated with the Knox Warehouse.

Fourth, I adjusted to take into account the collateral that was posted by SOHC, CDO Fund and HFP as part of the Restructured Transaction.  Following the Breach Date, UBS retained this collateral as an offset to the damages stemming from the Defendants' failure to compensate UBS for the mark to market losses on the Knox Warehouse assets.  As of December 3, 2008, based on UBS's marks, the total value of the posted collateral, including cash and securities, was approximately $47.3 million.[111]  The collateral value served to reduce the damages associated with the Knox Warehouse.

Finally, I have applied prejudgment interest from December 3, 2008 through the date of this report at a rate of 9% per annum, compounded annually pursuant to CPLR § 5004.

In total, the mark to market losses, coupled with the five adjustments described above, yielded total damages from the Knox Warehouse of approximately $599.2 million using HCM's own marks and approximately $750.1 million using UBS's marks.  The results of this analysis are summarized in Table 8 below and can be found in detail at Exhibits 2 and 3.[112]

**Table 8**

| Knox Warehouse Loss Analysis as of Breach Date | | | |
|---|---|---|---|
| | Highland 11/30/2008 Marks | | UBS 12/3/2008 Marks |
| Mark to Market Losses - Cash Assets | $ | 106,157,101 | $ 128,848,101 |
| Mark to Market Losses - Synthetic Assets | | 388,284,750 | 470,118,984 |
| Total Mark to Market Losses | | 494,441,851 | 598,967,085 |
| Carry | | ( 36,326,615 ) | ( 36,326,615 ) |
| Unpaid Finance Fees | | 10,404,127 | 10,404,127 |
| UBS Financing Savings | | ( 6,203,807 ) | ( 6,203,807 ) |
| Collateral Value | | ( 47,251,279 ) | ( 47,251,279 ) |
| Total Damages | $ | 415,064,277 | $ 519,589,511 |
| Prejudgment Interest Through March 8, 2013 | | 184,122,874 | 230,490,359 |
| **Total Damages Including Prejudgment Interest** | **$** | **599,187,152** | **$  750,079,870** |

---

[111] Email dated December 3, 2008, UBS-000480926 and UBS-000164837.

[112] UBS entered into certain short positions prior to the Breach Date, that were held in a secondary book outside of the Knox Warehouse (Deposition of Keith Grimaldi dated March 6, 2012 at pp. 152-154).  To date, I have seen no evidence that these short positions in other trading books should be an offset against damages as of the Breach Date.

### B. *I observed indicia of alter ego at the Highland Entities.*

According to New York courts, alter ego exists "when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation..., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."[113] I understand that New York courts have recognized a variety of indicia suggesting alter ego between two or more entities/persons, including:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like,
>
> (2) inadequate capitalization,
>
> (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes,
>
> (4) overlap in ownership, officers, directors, and personnel,
>
> (5) common office space, address and telephone numbers of corporate entities,
>
> (6) the amount of business discretion displayed by the allegedly dominated corporation,
>
> (7) whether the related corporations deal with the dominated corporation at arms['] length,
>
> (8) whether the corporations are treated as independent profit centers,
>
> (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and
>
> (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.[114]

---

[113] Wm. Passalacqua Bldrs., Inc. v Resnick Devs. S., Inc.
[114] Wm. Passalacqua Bldrs., Inc. v Resnick Devs. S., Inc.

As Table 9 below displays, for purposes of my analysis, I have grouped the above alter ego indicia into the following three categories: (1) domination and control; (2) financial dependence of subsidiary on parent or owner; and, (3) lack of separateness.

**Table 9**

| Alter Ego Indicia | Alter Ego Indicia by Category | | |
| --- | --- | --- | --- |
| | Domination and Control | Financial Dependence | Lack of Separateness |
| 1. The absence of the formalities and paraphernalia that are part and parcel of the corporate existence, issuance of stock, election of directors, keeping of corporate records and the like | | | X |
| 2. Inadequate capitalization | | X | X |
| 3. Whether funds are put in and taken out of the corporation for personal rather than corporate purposes | X | | X |
| 4. Overlap in ownership, officers, directors, and personnel | X | | X |
| 5. Common office space, address and telephone numbers of corporate entities | | | X |
| 6. The amount of business discretion displayed by the allegedly dominated corporation | X | | X |
| 7. Whether the related corporations deal with the dominated corporation at arms' length | X | | X |
| 8. Whether the corporations are treated as independent profit centers | | | X |
| 9. The payment or guarantee of debts of the dominated corporation by other corporations in the group | | X | X |
| 10. Whether the corporation in question had property that was used by other of the corporations as if it were its own | X | | X |

To perform my analysis of the indicia of alter ego at the Highland Entities, I (1) reviewed the organizational structure and corporate relationships of the relevant Highland Entities to gain an understanding of the ownership and control structure of the organization; and, (2) analyzed selected financial, transactional and other related information for various financial and operational dealings between the relevant Highland Entities to determine whether these entities engaged in transactions which demonstrate indicia of alter ego.

<u>Highland's Relevant Organizational Structure</u>

HCM and the related Highland Entities form a complex structure.[115]  HCM and its President and majority owner, Mr. Dondero, sit at the top of this organization chart.  From this position, Mr. Dondero controlled the nine Highland Entities detailed in Chart 12 during the relevant time period.

Chart 12 provides a partial organization chart for the Highland Entities.  Chart 12 evidences that during the relevant time period, Mr. Dondero held positions in HCM, SOHC, CDO Fund and HFP (amongst other Highland Entities) that allowed him to control the actions of those entities.

---

[115] See examples of the organizational charts at Plaintiffs Exhibit 134 and H_1759160.

**Chart 12**



With respect to HCM, Mr. Dondero owned approximately 70% of the company, and also served as President.[116]  Through these positions, Mr. Dondero was able to unilaterally make decisions on behalf of HCM.[117]  Moreover, as explained below, through his controlling stake in HCM, and/or his positions within SOHC, CDO Fund and HFP, Mr. Dondero was able to control these entities.

With respect to HFP, Mr. Dondero served as chairman of the Board of Directors.[118] Moreover, pursuant to a management agreement between HFP and HCM, by and through his position as President of HCM, Mr. Dondero and HCM were responsible for almost all of the decisions and day-to-day operations of HFP, including monitoring the operating performance of

---

[116] Deposition of James Dondero dated February 28, 2012, pp. 14-15; HCM Firm Biographies Presentation at H_0198162-H_0198223.
[117] Deposition of Todd Travers dated April 3, 2012 at pp. 47-50.
[118] HFP Form S-1 dated May 1, 2007, at p. 73; See Chart 12 above.

the company, obtaining warehouse and other financings, entering into agreements and providing accounting services.[119]

Mr. Dondero also served as the sole Director of SOHC and as President of the ultimate general partner of CDO Fund.[120]  Pursuant to management agreements between HCM and those entities, HCM, and therefore Mr. Dondero, were responsible for the day-to-day operations of SOHC and CDO Fund.[121]

<u>Analysis of Selected Financial Transactions to Identify Indicia of Alter Ego</u>

As part of my examination of alter ego, I next analyzed selected financial records, transactions and related information and observed indicia of alter ego at certain of the Highland Entities as discussed in detail below.  To conduct my analysis, I: (1) reviewed various documents (including, but not limited to, corporate agreements, Board of Directors meeting minutes, management presentations, trade blotters, bank statements, cash transaction files, general ledgers, audited and unaudited financial statements, PricewaterhouseCoopers' work product, cash forecasts, email and other correspondence); (2) analyzed and traced multiple transactions by the various Defendants during the relevant time period; and, (3) reviewed deposition testimony related to the financial transactions and other interactions amongst HCM, HFP, SOHC, HFP's Other Subsidiaries, CDO Fund and other Highland Entities and personnel.

---

[119]Amended and Restated Management Agreement dated April 17, 2007 at H 000119-H000141 (Plaintiffs Exhibit 145).
[120] Written Resolutions of the Sole Director of SOHC at H_1760424-H_1760425; Amended and Restated Management Agreement at H_001304-H_001316.
[121] Amended and Restated Management Agreement at H_001304-H_001316; H 000119-H 000141 (Plaintiffs Exhibit 145).

1. *I observed indicia of alter ego related to HFP's financial transactions and other interactions with its subsidiaries*

As described above, HFP's subsidiaries include SOHC, CDO HoldCo, Highland Financial Corp., HFP Asset Funding II and HFP Asset Funding III. SOHC held investment interests in certain non-rated debt and distressed securities. Highland Financial Corp., a partially owned subsidiary, is an originator of loans, primarily to middle market companies. CDO HoldCo consisted largely of its equity interests in certain securitizations and wholly owned subsidiaries which held, among other things, warehouse facilities. HFP Asset Funding II and HFP Asset Funding III were created to hold the assets purchased in connection with the HFP Notes issuance.[122] As described below and based on my analysis, I observed indicia of alter ego between: (a) HFP and SOHC; and, (b) HFP and certain of its Other Subsidiaries.

a) *HFP's financial transactions and interactions with SOHC*

I analyzed selected financial transactions between, and related financial records of, HFP and SOHC. Based on this analysis, I observed numerous examples of indicia of alter ego specific to HFP's interactions with SOHC. These observations included examples of: (1) HFP's domination and control over SOHC, largely as it relates to the use of SOHC funds; (2) financial dependence by SOHC on its parent, HFP; and, (3) a lack of separateness between SOHC and HFP.

- HFP often made the decision for SOHC to dividend money for the ultimate benefit of other Highland Entities. For instance, in June 2008, SOHC purported to make a dividend payment of $10.5 million to HFP, which was then immediately transferred to CDO HoldCo.[123] SOHC recorded this transfer as an "equity distribution."[124] However, based on my review of the bank statements, I noted that the cash transfer was made directly from SOHC to CDO HoldCo.[125] I have not identified any analysis that was done to

---

[122] Deposition of Philip Braner, dated December 6, 2011, pp. 381-382.

[123] HFP Cash Transactions file at H_0082715; SOHC Bank Statement at H_0056394.

[124] SOHC General Ledger at H_0740240.

[125] This transaction is consistent with testimony of Highland Entities personnel. Mr. Stoops testified that instances occurred where a wholly owned subsidiary of HFP would dividend money up to HFP, and HFP would then put the cash into a different wholly owned subsidiary in order to satisfy one of that subsidiary's debts. He also added that similar transactions would occur to satisfy obligations that resulted from investment losses. (Deposition of Clifford Stoops dated November 30, 2011, pp. 143, 156) Mr. Braner added that formal documentation did not exist for "every single one of those transactions" involving dividends to HFP and subsequent transfers to certain of its other subsidiaries. (Deposition of Philip Braner dated December 7, 2011, p. 804)

determine the appropriateness of this transfer as it relates to SOHC's projected cash needs or obligations to its creditors.

- One of HFP's Other Subsidiaries, Highland Financial Corp., posted securities as collateral on SOHC's behalf. As part of the restructured Knox Warehouse Agreement, UBS required CDO Fund and SOHC to post: (1) $20.0 million in cash; and, (2) securities with a market value of approximately $33.0 million as collateral.[126,127] Three of the assets, valued at approximately $14.3 million, were pledged in March 2008 on behalf of SOHC by Highland Financial Corp., of which HFP owns a 25% stake.[128,129] According to HFP's Accounting Department analysis of this transaction, Highland Financial Corp. "act[ed] in the capacity of a *de facto* Principal when it pledge[d] its assets on behalf of SOHC." "HFC [was] not a party to the custodial agreement…on the transferred assets, which include[d] SOHC, CDO Fund, StateStreet, and UBS." "Because of the related party relationship between the two entities, no transaction occur[ed] between SOHC and HFC when [March 2008] the assets [were] pledge[d] as collateral to UBS."[130,131]

- In the fall of 2008, there were multiple cash collateral calls at SOHC that SOHC could not meet with cash on hand. I observed that, during this period, SOHC often would raise cash by either selling assets or by receiving funds directly from HFP to meet these collateral calls.[132]

  - o For example, on September 17, 2008, UBS issued a $10.0 million collateral call to SOHC and CDO Fund.[133] Based on my analysis of the transactional documents, I determined that, on the next day, HFP transferred $15.8 million in cash to SOHC which was described in the cash transaction files and bank statements as a "contribution to SOHC", of which approximately $15.0 million came from CDO HoldCo.[134,135] SOHC thereafter transferred $10.0 million in

---

[126] April 7, 2008 email from Philip Braner to Todd Travers at H_0992168 (Plaintiffs Exhibit 262).

[127] Synthetic Warehouse Agreement dated March 14, 2008, §12 (UBS-00000595).

[128] April 7, 2008 email from Philip Braner to Todd Travers at H_0992168 (Plaintiffs Exhibit 262).

[129] Deposition of Philip Braner dated December 6, 2011, p. 169; 12/31/2008 Knox Warehouse Liability at H_0088449; Synthetic Warehouse Agreement dated March 14, 2008 at UBS-00000662 (Plaintiffs Exhibit 3).

[130] HFP Accounting Memorandum dated January 23, 2009 at NEXBANK CONFIDENTIAL – 000071.

[131] Mr. Braner testified that SOHC borrowed these assets from Highland Financial Corp. to post as collateral and that Highland Financial Corp. would retain any cash flows related to these assets, although I have seen no evidence that there was a formal agreement in place. (Deposition of Philip Braner dated December 6, 2011, pp. 152, 159). I also noted in Highland Financial Corp.'s books and records that the assets were transferred to UBS in December, 2008 when UBS seized the collateral and that an intercompany payable was then booked on SOHC's general ledger in December 2008. (H_0740240; Trade Blotter – HFP Subs (2008-Q12009).xlsx; NEXBANK CONFIDENTIAL – 000071).

[132] Scott Kavanaugh, a former outside director of HFP testified that he drew no distinction between margin calls to an HFP subsidiary and margins calls to HFP (Deposition of Scott Kavanaugh dated March 20, 2012, p. 210).

[133] HFP Accounting Memorandum dated February 18, 2009 at H_0301888; UBS-000331475-UBS-000331476.

[134] SOHC Cash Transaction file at H_0087985; SOHC Bank Statement at H_0056435; HFP Cash Transaction file at H_0082969; HFP Bank Statement at H_1759037.

[135] Mr. Braner testified at deposition that he would make decisions on both sides of transactions between HFP and/or its subsidiaries. Mr. Braner testified that when doing this he did not separately analyze each entity's interest because those interests, in his view, were synonymous (Deposition of Philip Braner dated December 6, 2011, pp. 325-330).

cash to fulfill its $4.9 million and CDO Fund's $5.1 million collateral requirement to UBS.[136,137]

As part of this transaction, SOHC booked an intercompany receivable from CDO Fund. On September 26, 2008, CDO Fund transferred $5.1 million in assets in excess of the HFP Notes that were issued to it "which was intended to serve as repayment of the funds advanced [on behalf of CDO fund] on September 18, 2008 by SOHC..."[138] These assets though were actually transferred to HFP Asset Funding II, a wholly owned subsidiary of HFP, not to SOHC, the entity that had posted the $5.1 million in cash collateral on CDO Fund's behalf.[139] Lastly, it appears that in December 2008, when an outstanding collateral call from the Knox Warehouse existed, SOHC "pushed up" its $5.1 million receivable due from CDO Fund to HFP.[140]

o   On October 21, 2008, UBS issued a collateral call to SOHC and CDO Fund for $10.0 million. "Neither CDO Fund nor SOHC had sufficient cash reserves to pay the collateral demand."[141] UBS accepted assets that were worth $10.0 million at the time they were pledged to meet the requirements of the collateral call. These assets were originally posted from HFP Asset Funding II. Subsequently, HFP's accounting department determined "that these assets failed purchase accounting treatment when they were originally transferred to [HFP Asset Funding II] from the CDO Fund; therefore, the assets were owned by the CDO Fund and pledged as collateral to UBS by the CDO Fund on behalf of SOHC."[142]

According to internal HFP correspondence, SOHC created a $4.9 million payable to CDO Fund when the assets that had been pledged on behalf of SOHC were seized by UBS.[143] That same payable was "pushed up" to HFP from SOHC.[144]

o   UBS issued a third collateral call on November 7, 2008.[145] My review of the activities related to this collateral call revealed that Highland, as it had done with previous collateral calls, offered UBS certain assets that were not owned by SOHC (or CDO Fund), but at the time were believed to be owned by HFP Asset Funding II.[146]

---

[136] SOHC Cash Transaction file at H_0087985; SOHC Bank Statement at H_0056435.

[137] HFP Accounting Memorandum dated February 18, 2009 at H_0301888; UBS-000331475-UBS-000331476.

[138] H_0888557.

[139] H_0888557; HFP Asset Funding II trade blotter at H_0740497.

[140] H_0884468.

[141] HFP Accounting Memorandum dated February 18, 2009 at H_0301888; UBS-000338945-UBS-000338947.

[142] HFP Accounting Memorandum dated February 18, 2009 at H_0301888.

[143] H_0884468.

[144] H_0884468.

[145] UBS-000336406-UBS-000336407.

[146] Deposition of Philip Braner dated August 21, 2012, pp. 950-951. Email dated November 11, 2008 at H_0646808 (Plaintiffs Exhibit 419) and Email dated November 17, 2008 at H_0885274 (Plaintiffs Exhibit 416).

    o  My financial analysis revealed that, on September 30, 2008, SOHC had an outstanding $310,000 collateral call from Barclays yet only had $173,000 in cash. In order for SOHC to meet the collateral call, HFP transferred $140,000 to SOHC.[147]

- On December 10, 2008, as part of a single set of instructions to Bank of New York Mellon, SOHC transferred $3.7 million to HFP, which was then transferred to CDO HoldCo and ultimately to James Dondero.[148]  At the time, SOHC owed $4.9 million to UBS for the November 7, 2008 collateral call issued pursuant to the Restructured Transaction, which collateral call was never paid.  I have not identified any analysis that was done to determine the appropriateness of the transfer as it related to SOHC's projected cash needs, either as they relate to UBS or otherwise.

- As part of my review of HFP's and SOHC's financial transactions and related documents, I reviewed documents related to HFP's financial audit by its external auditor, PricewaterhouseCoopers.  PricewaterhouseCoopers noted in August 2007 that SOHC was funding HFP's cash needs, stating "[t]he sales activity in SOHC is driven by cash needs at [the] HFP level for the closing of new CDOs….Until HFP secures additional funding (which is expected late Q3 or Q4), SOHC has the potential to continue selling securities to fund HFP's cash needs."[149]

- Similarly, a separate PricewaterhouseCoopers report from August 2007 cited HFP's continued reliance on SOHC for liquidity, noting that "[a]s management continues to liquidate SOHC in order to fund HFP's cash needs, we expect fluctuations consistent with that strategy during Q2 2007."[150]

- My analysis and review of HFP's financial records and other financial-related information revealed that HFP treated a loan to SOHC as debt of its own.  In December 2007, the HFP Board of Directors resolved that SOHC would borrow $30.0 million from HCM in exchange for an unsecured promissory note.[151]  As part of HFP's capital raise in July 2008, HCM accepted $30.0 million of shares in HFP as satisfaction of the SOHC note.[152]  I noted that the treatment of this loan is consistent with the testimony of Mr. Travers, who agreed at his deposition that "HFP and SOHC were treated interchangeably for purposes of borrowing money or repaying debts."[153]

---

[147] H_0222145-H_0222146 (Plaintiffs Exhibit 43).

[148] H_0884704 (Plaintiffs 49); SOHC Bank Statement at H_0056349; SOHC General Ledger at H_0740240.

[149] HFP Q2 2007 Workstep - Inquiry with SOHC Investment Gatekeeper (PWC-HCM00017088).

[150] Q2 2007 SOHC Analytics at PWC-HCM00038318-PWC-HCM00038321.

[151] December 18, 2007 HFP Board of Directors meeting minutes atH_008369-H_008376; I noted that SOHC had no Board of Directors that met separately and apart from HFP (Deposition of Clifford Stoops dated November 30, 2011, pp. 440-441).

[152] August 5, 2008 HFP Board of Directors Teleconference at D-00638 (Plaintiffs Exhibit 254); Deposition of Todd Travers dated April 3, 2012, pp. 146-147, 167-170.

[153] Deposition of Todd Travers dated April 3, 2012, pp. 181-182.

- Further, I analyzed a May 2008 Liquidity Analysis presented to the Board of Directors of HFP and noted that this liquidity analysis presented HFP's liquidity and cash needs on a consolidated basis, incorporating SOHC's liquidity and cash needs into HFP's own. The cash needs of SOHC (or its Other Subsidiaries) on a stand-alone basis were not presented.[154]

      b)    *HFP's financial transactions and other interactions with its Other Subsidiaries*

In addition to my observations regarding HFP's interactions with SOHC, my analysis of HFP's financial transactions revealed numerous examples of indicia of alter ego specific to HFP's interactions with its Other Subsidiaries: CDO HoldCo, Highland Financial Corp., HFP Asset Funding II and HFP Asset Funding III. These observations included examples of: (1) HFP's domination and control over its subsidiaries; (2) the financial dependence of HFP's subsidiaries (in addition to SOHC as described above) on HFP; and, (3) a lack of separateness between HFP and its subsidiaries.

- Based on my analysis of trade blotters and other documents, the HFP Notes were terminated in early 2009. I determined that, as part of this termination, HFP caused its subsidiaries to transfer certain assets to the holders of the HFP Notes in exchange for the extinguishment of the notes. These assets were transferred from HFP Asset Funding II, HFP Asset Funding III, CDO HoldCo and Highland Financial Real Estate Corporation. However, I then compared the information found in the financial transactional documents to the actual agreements and noted that CDO HoldCo and Highland Financial Real Estate Corporation were not parties to and were not signatories to the March 20, 2009 termination agreement nor did they participate in the original September 26, 2008 and October 10, 2008 note issuances.[155]

- Based on my analysis of HFP's financial transactions, I observed instances where CDO HoldCo, a wholly owned subsidiary of HFP, required cash contributions from HFP in order to make various disbursements.

---

[154] H_0312654-H_0312665 (Plaintiffs Exhibit 18). I also noted that Mr. Travers testified that at times HFP subsidiaries pooled their cash together to pay off obligations of all subsidiaries. (Deposition of Todd Travers dated April 3, 2012, p. 192) Similarly, Mr. Travers testified that consolidated cash forecasts were prepared "to provide visibility from a cash flow standpoint for [HFP]." (Deposition of Todd Travers dated April 3, 2012 at pp. 113-116)

[155] Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM0026158-PWC-HCM00026174); Notes Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083) and Amended and Restated Note Purchase Agreement as of December 22, 2008 (H_0928489-H_0928539); Amendment No. 1 to Note Purchase Agreement dated October 10, 2008 (H_0644653-H_0644663).

o For example, HFP raised $40.0 million in a capital raise on June 25, 2008 from related Highland Entities. HFP immediately transferred that $40.0 million to CDO HoldCo on June 25 and June 26, 2008.[156]

o As discussed in the previous section, on June 26, 2008, SOHC also sent $10.5 million to HFP, which was immediately transferred to CDO HoldCo.[157] See previous section for additional discussion.

o Then in June 2008, CDO HoldCo used the $50.5 million (the sum of the June 25 and June 26, 2008 transfers in the bullets above) from HFP as part of two cash disbursements totaling $56.4 million which were described as "Highland Miscellaneous" and "Consolidated Sub.: 15200 - Invest. In CDO Construction."[158]

- On December 10, 2008 (at a time when the Restructured Transaction had been terminated and SOHC and CDO Fund had a substantial liability related to the mark to market losses experienced by that facility), as part of a single set of instructions to Bank of New York Mellon, SOHC transferred $3.7 million to HFP, which was then transferred to CDO HoldCo and ultimately to James Dondero.[159]

- Consistent with the findings of my financial transaction analysis, Mr. Braner testified at his deposition that "I believe Highland Financial Partners did receive dividends from other subsidiaries to make investments in Highland CDO Holding Company to pay the margin calls related to the Barclays facility."[160]

---

[156] HFP Cash Transactions file (H_0082715); CDO Holding Company General Leger ("2012-01-25.xlsx").
[157] H_0082715; H_0056394.
[158] HFP Subsidiaries General Ledger ("2012-01-25.xls").
[159] H_0884704 (Plaintiffs 49); SOHC Bank Statement at H_0056349; SOHC General Ledger at H_0740240.
[160] Deposition of Philip Braner dated December 7, 2011, pp. 551-552.

**2.** *I observed indicia of alter ego related to HFP's, and its subsidiaries', financial transactions and other interactions with HCM*

I analyzed the financial transactions between, and related financial records of, HFP and its subsidiaries and HCM. Based on this analysis, I observed numerous examples of indicia of alter ego specific to HFP's and its subsidiaries' interactions with HCM evidenced by transactions that occurred between these entities. Similar to HFP's interactions with SOHC and its Other Subsidiaries, I observed examples of: (1) HFP's and its subsidiaries' financial dependence on HCM; and, (2) a lack of separateness between HFP and its subsidiaries and HCM.

These indicia of alter ego can be evidenced by, among other things, the undercapitalization of a subsidiary. As Mr. Travers explained, HFP was undercapitalized and having a hard time meeting its cash obligations before it conducted a June/July 2008 capital raise.[161] Notwithstanding this capital raise, based on my review of HFP's and HCM's financial records and other related information, I noted that there were multiple occasions in which HCM provided financial support for HFP to address its capitalization issues. For example:

- My analysis revealed various ways in which HCM was supporting HFP's capital needs, including: (1) by providing a $30.0 million unsecured loan to SOHC for liquidity; (2) directly funding various HFP commitments; and, (3) purchasing illiquid assets from HFP "at HFP's carrying value in a market where virtually every asset class and type had been substantially marked down."[162]

- Through my review and analysis of the financial records and related information, I noted that, on September 25, 2008, the HFP Board of Directors asked HCM to commit direct financing to HFP to bridge any cash shortfalls prior to the receipt of certain November CDO equity flows. Mr. Dondero committed that HCM "would cover up to $12 million of margin calls due on September 26 or otherwise purchase or cause funds that it managed to purchase up to $12 million of assets from [HFP] over the next thirty days as necessary."[163]

- The financial dependence of HFP on HCM evidenced above is consistent with other information that I have reviewed. For instance, on September 26, 2008, Mr. Travers told the independent directors of HFP that "We believe that by itself, HFP has very little room to offer Barclays in exchange for renegotiating for additional liquidity. However, by combining this conversation with the HCM and Hedge fund dialog in a broader horse-

---

[161] Deposition of Todd Travers dated April 3, 2012, pp. 152-153.
[162] H_0656110 (Plaintiffs Exhibit 256).
[163] September 25, 2008 HFP Board of Directors meeting minutes (H_008444-008445).

trading arrangement, we believe we can obtain attractive terms for HFP for immediate liquidity relief….HCM itself has been a direct liquidity provider to HFP, as have certain of the Hedge funds in the form of purchasing illiquid asset[s] in the absence of freely available bids elsewhere.  That is why the components of the debt offering/asset swap include transactions with certain of HCM's affiliates."[164]  In addition, Mr. Stoops agreed that if cash was needed after investment losses were suffered by HFP or one of its subsidiaries, one method used to obtain that cash was to shift cash from a different HCM-related entity to the HFP-related entity.[165]

- Based on my analysis of the financial transactions, I identified that in September 2008, HCM purportedly made a $13.9 million short-term loan to SOHC in exchange for a note.[166]  This amount was roughly the same as HFP's projected consolidated cash shortfall at the time.[167]  According to Mr. Travers, Mr. Dondero decided to have HCM loan $13.9 million to HFP/SOHC in September 2008, in order to meet a margin call from a third-party institution.[168]  However, through my review of the cash transaction files and bank statements, I determined that the $13.9 million was transferred to HFP rather than SOHC, though the note payable to HCM was transferred from HFP to SOHC.[169]

- HFP's Board of Directors approved a capital raise in the summer of 2008.  It was originally contemplated in June 2008 that the majority of the funds would come from entities not related to HCM, though ultimately this was not possible.[170]  After reviewing the cash transaction files and CDO Fund NAV files, I determined that CDO Fund invested $15.0 million in HFP as part of this capital raise.[171]  Mr. Travers testified that it was Mr. Dondero's decision for CDO Fund to invest in HFP during the HFP capital raise in the summer of 2008.[172]  At this time, Mr. Dondero served as both President of the ultimate general partner of CDO Fund and Chairman of the Board of Directors of HFP.[173]

- With respect to the HFP Notes termination agreement dated March 20, 2009, Mr. Dondero testified that HCM made up a deficit of $15.0 to $22.0 million "to keep HFP alive."[174]  This testimony is consistent with my review of the flow of assets related to the HFP Notes termination.

---

[164] H_1798252 (Plaintiffs Exhibit 470).

[165] Deposition of Clifford Stoops dated November 30, 2011, pp. 198-199.

[166] HFP Subsidiaries General Ledger ("2012-01-25.xlsx").

[167] Deposition of Todd Travers dated April 3, 2012, pp. 178-179; H_0804830-H_0804834 (Plaintiffs Exhibit 222).

[168] Deposition of Todd Travers dated April 3, 2012, p. 177; H_0804830-H_0804834 (Plaintiffs Exhibit 222).

[169] HFP Bank Statement at H_1759036; SOHC Bank Statement at H_0056433; HFP Subsidiaries General Ledger ("2012-01-25.xlsx").

[170] Deposition of Todd Travers dated April 3, 2012, pp. 142-143.

[171] HFP Cash Transaction Files at H_0082715; CDO Fund NAV file dated May 31, 2008 at H_0104496; CDO Fund NAV file dated July 31, 2008 at H_0105649.

[172] Deposition of Todd Travers dated April 3, 2012, p. 149.

[173] HFP Form S-1 Dated May 1, 2007 at p. 73.

[174] Deposition of James Dondero dated June 12, 2012, pp. 588-590.

- Based on my review of the financial transaction documents, I noted that the Termination, Settlement and Release Agreement dated March 20, 2009 was signed by Mr. Dondero on behalf of HFP as well as all of the Highland Entities that were parties to the agreement.[175]

---

[175] Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM0026158-PWC-HCM00026174).

**UPDATED 4/18/2013**
Page 51

**3.** *I observed indicia of alter ego related to CDO Fund's financial transactions and other interactions with HCM*

I analyzed the financial transactions between, and related financial records of, CDO Fund and HCM. Based on this analysis, I observed numerous examples of indicia of alter ego specific to CDO Fund's interactions with HCM evidenced by transactions that occurred between the two entities. These observations included examples of: (1) CDO Fund's financial dependence on HCM; and, (2) a lack of separateness between CDO Fund and HCM.

Specifically, in performing my transaction analysis, I noted examples of CDO Fund's undercapitalization and its inability to operate as a stand-alone entity. I observed examples of loans from HCM to CDO Fund, which suggests CDO Fund was financially dependent on HCM. For example:

- On September 16, 2008, HCM loaned CDO Fund $3.5 million, on an interest free basis, to satisfy CDO Fund's obligation to Goldman Sachs.[176]

- On September 19, 2008, HCM gave CDO Fund an interest-free loan of $6.0 million.[177]

- Less than a week later, on September 25, 2008, HCM executed a $6.8 million interest-free promissory note with CDO Fund. However, the cash transaction file for CDO Fund shows that on September 25, 2008, "HCM-Crusader" initiated a cash "[t]ransfer from Crusader" for $6.8 million..[178]

- In October 2008, four additional promissory notes of $4.1 million, $2.0 million, $1.9 million and $3.0 million were executed to loan money from HCM to CDO Fund.[179]

As more fully described above, CDO Fund also needed cash and assets transferred from HFP, another subsidiary of HCM, in order to meet collateral calls it received in September 2008 (see "HFP's financial transactions and interactions with SOHC above). In summary:

- On September 17, 2008, UBS issued a $10.0 million collateral call to SOHC and CDO Fund.[180]

---

[176] H_0857756-59 (Plaintiffs Exhibit 274); H_0646794 (Plaintiffs Exhibit 341).

[177] ST-0001986 (Plaintiffs Exhibit 107); H_0646793 (Plaintiffs Exhibit 341); CDO Fund Cash Transactions file (H_0155953).

[178] ST0006086-ST0006089 (Plaintiffs Exhibit 112); H_0646795 (Plaintiffs Exhibit 341); CDO Fund Cash Transaction file at H_0155953.

[179] H_0646796-H_0646799 (Plaintiffs Exhibit 341).

[180] HFP Accounting Memorandum dated February 18, 2009 at H_0301888; UBS-000331475-UBS-000331476.

- On September 18, 2008, HFP transferred $15.8 million in cash to SOHC to fund collateral calls.[181]

- SOHC then transferred $10.0 million to State Street on September 18, 2008[182] (of which, $5.1 million was to fund CDO Fund's portion of the collateral call and $4.9 million was to fund SOHC's portion of the collateral call).[183]

- My review of the detailed transaction registers and other financial records did not identify any significant internal or third-party analyses regarding CDO Fund's participation in the HFP Notes issuance. Similarly, Mr. Travers admitted that, if CDO Fund had an independent decision-maker (which would have conducted the same type of analysis on HFP that an independent third-party would have), CDO Fund likely would not have participated in the HFP note issuance.[184] Likewise, Paul Roos, former Portfolio Manager at HCM, could not recall anyone ever performing an analysis as to whether the HFP Notes issuance was a good investment from the prospective of the CDO Fund.[185]

---

[181] SOHC Cash Transaction file at H_0087985; SOHC Bank Statement at H_0056435.
[182] SOHC Cash Transaction file at H_0087985; SOHC Bank Statement at H_0056435.
[183] HFP Accounting Memorandum dated February 18, 2009 at H_0301888; UBS-000331475-UBS-000331476.
[184] Deposition of Todd Travers dated April 3, 2012, p. 160.
[185] Deposition of Paul Roos dated May 1, 2012, pp. 75-76.

4. *I observed indicia of alter ego related to James Dondero's and HCM's financial transactions and other interactions between each other and with other Highland Entities*

Based on my analysis and review of financial records and related information, I observed a number of instances in which Mr. Dondero exercised his ability to dominate and control HCM, SOHC, CDO Fund and HFP, amongst other Highland Entities. For instance, as it relates to the flow of funds and assets into, out of and within the Highland Entities, I observed that Mr. Dondero and HCM exhibited control over such transfers, some of which were not at arm's length or executed in accordance with corporate formalities.

- Chris Halpin (HCM's Controller) testified that Mr. Dondero had the authority to and in fact did authorize loans to himself on behalf of HCM.

  > Q: *Who would authorize a loan to Jim Dondero on behalf of HCM, L.P.?*

  > A: *Jim Dondero.*[186]

  For example, my analysis of the detailed transactional documents revealed that CDO HoldCo made a $3.7 million payment on December 10, 2008 to Mr. Dondero to allegedly repay a short-term loan from Mr. Dondero with funds that were: (1) transferred from SOHC to HFP (following the termination of the Restructured Transaction); (2) then transferred from HFP to CDO HoldCo; (3) then transferred from CDO HoldCo to Mr. Dondero.[187] I have not seen any evidence of a loan agreement with CDO HoldCo for this transaction. I also observed that on the same day Mr. Dondero made two payments totaling $3.6 million to HCM.[188] At this time, Mr. Dondero was sole director of SOHC and CDO HoldCo, Chairman of the Board of HFP and President of HCM. Additionally, Mr. Okada testified that Mr. Dondero was able to choose for HCM to pay back his own personal loans or portions thereof.[189]

- Mr. Dondero received funds from HCM to his personal account when he was getting personal capital calls. For example, my analysis of transactional records evidenced that HFP wired $1.9 million to Mr. Dondero's personal account in February 2009 in order to meet a personal margin call.[190] Through my review of the transactional documents and other financial records related to the HFP Notes issuance, I noted that Mr. Dondero signed the Note Purchase Agreement dated September 26, 2008 on behalf of eight of the Highland Entities that were parties to the agreement, including:

---

[186] Deposition of Chris Halpin dated June 6, 2012, p. 240.
[187] H_0884704 (Plaintiffs 49); SOHC Bank Statement at H_0056349; SOHC General Ledger at H_0740240.
[188] Excerpt of Defendants' Response to Interrogatories at H_1796231.
[189] Deposition of Mark Okada dated March 2, 2012, p. 156.
[190] H_0513751-H_0513752 (Plaintiffs Exhibit 54) and Deposition of James Dondero dated February 28, 2012, pp. 235-238.

- o HFP Asset Funding II, LTD. (as "Director");

- o HFP Asset Funding III, LTD. (as "Director");

- o Highland CDO Opportunity Master Fund, L.P. (as "President" of its ultimate general partner);

- o Highland Credit Strategies Master Fund, L.P. (as "President" of its ultimate general partner);

- o Highland Credit Opportunities CDO L.P. (as "President" of its ultimate general partner);

- o Highland Crusader Offshore Partners, L.P. (as "President" of its ultimate general partner);

- o Highland Crusader Holding Corporation (as "President"); and,

- o Highland Credit Opportunities Holding Corporation (as "President").[191]

- Similarly, the Termination, Settlement and Release Agreement dated March 20, 2009 was signed by Mr. Dondero ten times on behalf of HFP as well as every other of the Highland Entities that were parties to the agreement, including:

- o HFP (as "Chairman of the Board of Directors");

- o HFP Asset Funding II, LTD. (as "Director");

- o HFP Asset Funding III, LTD. (as "Director");

- o Highland CDO Opportunity Master Fund, L.P. (as "President" of its ultimate general partner);

- o Highland Credit Strategies Master Fund, L.P. (as "President" of its ultimate general partner);

- o Highland Credit Opportunities CDO, LTD. (as "President");

- o Highland Crusader Offshore Partners, L.P. (as "President" of its ultimate general partner);

- o Highland Crusader Holding Corporation (as "President");

- o Highland Capital Management L.P. (as "President" of its ultimate general partner); and,

- o Highland RT Corporation, as Agent for the Noteholders (as "President").[192]

---

[191] Note Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083).

- Recovery rates differed between the various Highland Entities that held these notes, providing at least one indication that the transaction was not at arm's length. For example, HCM received assets that represented a much smaller percentage of the assets it had given in exchange for the HFP Notes as compared to the other Highland Entities.[193]

- HCM made a number of multi-million dollar interest-free loans to CDO Fund in September and October 2008.[194] I noted several of these loans in my review of the documents produced in this case, which are discussed in detail above.

- HCM also made a number of multi-million dollar interest-free loans to Crusader Fund and Credit Opportunities Fund in August and September 2008.[195]

---

[192] Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM0026158-PWC-HCM00026174). Despite the fact that Mr. Dondero signed on behalf of RT Corporation as President, Mr. Dondero noted in his deposition that he didn't have "an awareness of what RT Corporation is." (Deposition of James Dondero dated June 12, 2012 at pp. 584-585)

[193] March 16, 2009 HFP Board of Directors meeting minutes at H_008495.

[194] H_0646792-H_0646799 (Plaintiffs Exhibit 341).

[195] ST-0001077-ST-0001080 (Plaintiffs Exhibit 448); ST-0001069-ST-0001072 (Plaintiffs Exhibit 450); ST-0001446-ST0001049 (Plaintiffs Exhibit 451); ST-0001093-ST-0001097 (Plaintiffs Exhibit 452).

### 5. *I observed indicia of alter ego related to HFP's interactions with other Highland Entities in connection with the HFP Notes*

CDO Fund and Citibank, N.A. entered into a swap agreement on October 10, 2008 wherein CDO Fund secured its obligation by posting collateral to Citibank, N.A., including the HFP Notes. In connection with the termination of the HFP Notes, Citibank, N.A. filed a complaint alleging that the assets transferred in exchange for the notes purchased by CDO Fund, in which Citibank, N.A. had an interest, had declined significantly more in value than the total asset pool that was exchanged for the notes. Citibank, N.A. alleged that this was inconsistent with §8.2 of the original Note Purchase Agreement dated September 26, 2008.[196] Upon review of the trade blotters and note issuance and termination documents, I noted that the assets transferred to Highland Crusader Holding Corporation and Highland Credit Opportunities Holding Corporation as part of the HFP Notes termination (the life settlement contracts) did not decline in value nearly as much as the CLO assets. The final recovery rate on the HFP Notes ultimately differed for each different note holder.[197,198]

---

[196] Verified Complaint in Citibank, N.A. v. Highland Financial Partners, L.P. (CITI00089-CITI00096).

[197] Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM00026158-PWC-HCM00026174), H_0740505; H_0086327; H_0882864; H_0740497; H_0740522; H_0310500; H_0305356; H_0307225; H_0740383.

[198] Highland Entities' personnel acknowledged that they were not aware of their duty to creditors. Specifically, Mr. Braner testified that "…my view of fiduciary responsibility runs to the owners of the Company." (Deposition of Philip Braner dated December 6, 2011, pp. 260-261) Similarly, Mr. Stoops agreed that he had "… no idea whether or not as the interim chief financial officer of Highland Financial Partners you owed any fiduciary duty to creditors…" (Deposition of Clifford Stoops dated November 30, 2011, pp. 240-245) Additionally, Gene McQuown stated that he did not believe that he "owed a fiduciary duty to anyone other than investors of HFP" during his time as outside director of HFP (Deposition of Gene McQuown date March 14, 2012, pp. 22-23).

## C.    *I identified constructively fraudulent transfers.*

New York Debtor & Creditor law describes three circumstances where transactions are considered to be constructively fraudulent.

- *First*, Section 273 of the New York Debtor & Creditor law defines fraudulent transactions as "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."[199]

- *Second,* Section 274 of the New York Debtor & Creditor law states "Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent…"[200]

- *Third,* Section 275 of the New York Debtor & Creditor law states:  "Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent…"[201]

New York Debtor & Creditor law defines fair consideration as:

    a) "When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

    b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."[202]

To conduct my analysis, I examined certain cash transfers, asset transfers and debt assignments made by SOHC/HFP and by CDO Fund.  Based on the observed indicia of alter ego

---

[199] New York Debtor & Credit law, Article 10, Section 273.
[200] New York Debtor & Credit law, Article 10, Section 274.
[201] New York Debtor & Credit law, Article 10, Section 275.
[202] New York Debtor & Credit law, Article 10, Section 272.

exhibited between HFP and SOHC described above, I have assumed that HFP and SOHC are alter egos of one another for purposes of examining solvency and fraudulent conveyances. To determine whether these transfers were constructively fraudulent as defined by New York Debtor & Creditor law, I performed various analyses which included: (1) examining the solvency of SOHC/HFP and of CDO Fund to determine when, if ever, the entities became insolvent; (2) identifying transfers as of or after the insolvency date; and, (3) assessing whether such transfers were for less than fair consideration.

1.      **SOHC/HFP was insolvent no later than: (a) December 31, 2008 assuming the HFP Notes are recharacterized as equity, or (b) October 31, 2008 assuming the HFP Notes are deemed to be debt, and CDO Fund was insolvent no later than October 31, 2008.**

Article 10 of the New York Debtor & Creditor law defines insolvency for purposes of examining fraudulent conveyances: "a person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."[203]

Present fair salable value has been defined as "the estimated amount that may be realized if assets are sold with reasonable promptness in an arm's-length transaction under present market conditions."[204]  To determine the present fair salable value of each entity's assets, less the amount that will be required to pay its probable liabilities, at various points in time for solvency purposes, I utilized a balance sheet approach under a going concern premise.  In applying this approach, I relied on each entity's books and records and other relevant documentation, including the NAV of the subject entity as determined contemporaneously by HCM, when available.  In this instance, the present fair values assigned to SOHC/HFP's and CDO Fund's assets pursuant to SFAS No. 157 reasonably approximate present fair salable value, as defined above, as they represent "the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date."[205]  The balance sheet approach provides an appropriate measure of present fair salable value because the subject entities consist almost entirely of investment securities (and related assets), which are recorded at fair value.  PricewaterhouseCoopers noted in its "Report to the Audit Committee to the Board of Directors of HFP," that HFP "valued the vast majority of their investment securities and loans based on broker/dealer quotes; derivatives are generally valued internally and in consideration of broker quotes."[206]  I reviewed various NAV files that contained sources of the marks for CDO Fund and observed that many of the marks were from broker/dealers and other third parties, such as MarkIt, JP Morgan, Bank of America, Merrill

---

[203] New York Debtor & Credit law, Article 10, Section 271.
[204] See Bankruptcy and Insolvency Accounting, Forms and Exhibits by Grant W. Newton.
[205] HFP Condensed Consolidated Financial Statements (Unaudited) As of June 30, 2008 at D-00739.
[206] PricewaterhouseCoopers LLP Report to the Audit Committee of the Board of Directors, Results of Fiscal Year 2007 Audit dated May 30, 2008 at PWC-HCM00046642.

Lynch, Credit Suisse, UBS and Goldman Sachs.[207] I further understand that CDO Fund's investors were able to redeem shares at the NAV (subject to certain restrictions) of such shares. Lastly, HFP's auditors reviewed its fair value accounting and deemed the valuations and procedures for providing fair value reporting reasonable.[208]

In addition to performing the balance sheet approach for each of the entities in question, I also examined whether the subject entities had unreasonably small capital or were unable to pay their debts as they come due.

a) SOHC/HFP's solvency

I first assessed SOHC/HFP's solvency by comparing the present fair salable value of its assets, as demonstrated by its own contemporaneous fair value determinations, with the value of its liabilities. To assess whether the present fair salable value of SOHC/HFP's combined assets were greater or less than the amount that would be required to pay their collective probable liabilities as they become absolute and matured, I reviewed: (1) the monthly Knox Warehouse valuations prepared by HCM; (2) SOHC's and HFP's internal financial statements; (3) consolidated HFP cash forecasts; (4) deposition testimony regarding the financial condition of the entities; and, (5) other relevant documents and data produced in this case.

(1) Review of the present fair salable value of SOHC/HFP's assets

During the 2008-2009 time period, SOHC's assets were generally comprised of cash, trading securities, derivatives and amounts due from brokers related to trade settlement and trading activities. For purposes of balance sheet reporting, as part of its consolidation with HFP, I understand that SOHC generally marked its asset holdings, including the Knox Warehouse, to market on at least a monthly basis. Accordingly, for purposes of determining solvency, SOHC's balance sheet asset values represent its present fair salable value based on its contemporaneous mark to market practices. As evidence of this point, PricewaterhouseCoopers reviewed HFP's consolidated reporting of fair value. Specifically, PricewaterhouseCoopers "spent significant

---

[207] 8.31.08 CDO NAV.xls (H_0358274-H_0358337); 9.30.08 CDO NAV (H_0107461-H_0107611); 10.31.08 CDO NAV (H_0108750-H_0108863)

[208] PricewaterhouseCoopers LLP Report to the Audit Committee of the Board of Directors, Results of Fiscal Year 2007 Audit dated May 30, 2008 at PWC-HCM00046642.

time in this area to ensure the use of broker/dealer quotes was an appropriate, reasonable estimation of fair value and that derivative valuations were likewise fairly valued. Based on our procedures, which included the involvement of certain internal PwC valuation specialists, we concluded the fair values reflected in the determination of net income were within a reasonable range of estimated fair value."[209] Further, these valuations were used contemporaneously by the various Highland entities to manage their business and were included in the financial reporting to the Company's Board of Directors for purposes of evaluating the performance of and managing the business.[210] Mr. Braner testified during deposition that it was his regular practice to do everything he could to assure that the Knox warehouse valuations were accurate to the best of his understanding before circulating them.[211]

In addition to the various securities owned by SOHC, certain assets reflected on its balance sheet are notable. Specifically, during the relevant time period there was a $9.8 million asset listed as an "amount due from brokers." This $9.8 million asset represented the cash (49% of $20 million) SOHC posted as collateral required as part of the Restructured Transaction.[212] While SOHC had additional securities posted on its behalf as collateral as part of the Restructured Transaction, these additional securities were not owned by SOHC and, therefore, were not included as assets or as an offset to the Knox Warehouse liability on SOHC's financial statements. For purposes of my solvency analysis, I treated the initial securities posted as collateral on behalf of SOHC in the same manner by excluding them from SOHC's assets due to the fact that they were not owned by SOHC.

HFP primarily served as a holding company and, as such, its assets were almost entirely comprised of equity in consolidated subsidiaries. As the subsidiaries were investment entities, including and similar to SOHC as described above, the equity in consolidated subsidiaries listed on HFP's balance sheet closely approximates the fair value of HFP's investments in its subsidiaries. As noted in the "Report to the Audit Committee to the Board of Directors of HFP," HCM, on behalf of HFP, "valued the vast majority of their investment securities and loans based on broker/dealer quotes; derivatives are generally valued internally and in consideration of

---

[209] Highland Financial Partners, L.P., PricewaterhouseCoopers LLP Report to the Audit Committee of the Board of Directors dated May 30, 2008 at PWC-HCM00046642.
[210] HFP Board of Directors Package dated August 5, 2008, at D-00595.
[211] Deposition of Philip Braner dated December 7, 2011, pp. 678-679.
[212] SOHC monthly balance sheets at H_0092015.

broker quotes."[213]  HFP's auditors reviewed HFP's fair value accounting and methodology and determined that its presentation of fair value was reasonable.[214]  I have provided an overview of the subsidiaries included in HFP's "equity in consolidated subsidiaries" line item (other than SOHC) below.

CDO HoldCo is one of HFP's wholly-owned subsidiaries.  CDO HoldCo's assets were comprised of restricted cash, pledged securities and loans, derivatives, amounts due from brokers related to trade settlement and trading activities.  CDO HoldCo's pledged securities and loans were primarily the result of CDO HoldCo's consolidation of equity interests in variable interest entities related to CDO HoldCo's issuance of securitized assets.  These assets were offset by notes payable that had been issued and sold to investors and short-term borrowings.[215]  Given that the majority of CDO HoldCo's assets and liabilities were held in limited recourse consolidated subsidiaries, I have excluded the negative equity, to the extent it existed as of the various solvency dates I tested, of CDO HoldCo and its subsidiaries' negative equity from the solvency analysis of SOHC/HFP.  In addition, another asset that CDO HoldCo's subsidiaries had on their books was unamortized debt issue costs.  This asset was comprised of capitalized costs associated with loan issuances (e.g. underwriting, rating agency, legal, accounting and other fees) and was not an asset with a salable value.[216]  As such I have adjusted HFP's investment in CDO HoldCo to remove this accounting asset from my solvency analysis of SOHC/HFP.

HFP also had other subsidiaries which are relevant to my analysis.  In conjunction with the issuance of the HFP Notes, HFP Asset Funding II and HFP Asset Funding III were created for the purpose of housing the CLO and life settlement contract assets that were purchased as part of the note issuance.[217]  HFP Asset Funding II and HFP Asset Funding III were wholly-owned subsidiaries of HFP.  The net of the assets and liabilities of these two subsidiaries have been included in the analysis of SOHC/HFP, as it is reflected in the equity in consolidated

---

[213] PricewaterhouseCoopers LLP Report to the Audit Committee of the Board of Directors, Results of Fiscal Year 2007 Audit dated May 30, 2008 at PWC-HCM00046642.
[214] PricewaterhouseCoopers LLP Report to the Audit Committee of the Board of Directors, Results of Fiscal Year 2007 Audit dated May 30, 2008 at PWC-HCM00046642.
[215] HFP consolidated financial statements (unaudited) for the dated June 30, 2008 at D-00751.
[216] HFP Form S-1 dated May 1, 2007, at p. F-14.
[217] Deposition of Philip Braner dated December 6, 2011 at pp 381-382.

subsidiaries of HFP. Similar to my discussion above, I have adjusted HFP's investment in HFP Asset Funding II to remove the unamortized debt issue costs asset.

(2)     Review of SOHC/HFP's combined liabilities

SOHC's liabilities are largely comprised of: (1) warehouse liabilities, including the Knox Warehouse and another facility with Barclays; (2) notes payable; and, (3) amounts due to brokers for trade settlement and trading activities. The largest of these liabilities following the consummation of the Restructured Transaction was the Knox Warehouse. The Knox Warehouse had several components that together comprised the net liability due to UBS, and SOHC recorded this net liability on its balance sheet each month at fair value. The net liability due to UBS was made up of the following components:

*First*, the valuation of SOHC's liability for the Knox Warehouse took into account the current marks for each of the CLO and CDS positions held in the warehouse. The total current value of the CLO and CDS positions, less the initial purchase price of approximately $818 million, represented the mark to market loss. This mark to market loss was the primary liability associated with the Knox Warehouse, as SOHC was contractually obligated to pay UBS for those losses under the terms of the Restructured Transaction.[218]

*Second*, because the positions held in the Knox Warehouse were income producing positions, the Knox Warehouse received certain cash payments on its positions following their purchase in 2007. The cumulative balance of the cash received was tracked and applied against any mark to market losses for purposes of determining the net liability. This balance is known as the carry balance.[219]

*Third*, the Knox Warehouse incurred financing charges from UBS designed to compensate UBS for use of its capital. These charges were added to the mark to market losses

---

[218] Of note, as of the various valuation dates I analyzed, both HCM and UBS had provided marks on the Knox Warehouse. As shown in Chart 1 above, these marks did not differ substantially for the majority of the periods in question.

[219] A small amount of principal repayments are also included in the carry balance and have been included in my solvency analysis.

for purposes of determining the net liability.  The carry balance, less the accumulated financing charges, is collectively known as the net carrying amount.[220]

*Finally*, for purposes of financial reporting, HCM's accountants included a benefit attributable to below market financing (the "Present Value of Financing Benefit").  This component of the Knox Warehouse liability ascribed value to the fact that under the Restructured Transaction UBS provided beneficial financing rates to the Knox Warehouse Facility relative to what rates could, at that time, be achieved in the market.  For accounting purposes, this benefit was calculated by taking an assumed market financing rate and subtracting the financing rate within the Knox Warehouse to determine the beneficial financing "spread."  This spread was then: (1) multiplied by the number of months remaining in the Restructured Transaction; (2) divided by twelve (for the number of months in a year); and, (3) multiplied by the financed amount, which was the initial purchase amount of approximately $818 million.  Because the benefit in future months had not yet been achieved, the spread attributable to future months was discounted to the present value in order to determine the Present Value of Financing Benefit for monthly valuation purposes.  Because I believe that the Present Value of Financing Benefit is not appropriate to include as an asset with present fair salable value for purposes of this solvency analysis, I have removed this item from my solvency analysis of SOHC/HFP and CDO Fund.[221]

Recharacterization of the HFP Notes

The last significant portion of my analysis of SOHC/HFP's assets and liabilities relates to the HFP Notes.  Prior to the HFP Notes issuance, HFP, as a holding company, had minimal liabilities. Pursuant to the HFP Notes issuance in September and October 2008, HFP recorded $371 million of notes payable on its balance sheet.  I analyzed the HFP Notes under two scenarios: one where the HFP Notes are treated as debt and another where the notes are recharacterized as equity.

I understand Plaintiffs allege that the HFP Notes, rather than being a true secured transaction, were actually more fairly characterized as an equity investment into HFP by the related Highland Entities.  In certain circumstances, I understand that the law allows debt to be

---

[220] Knox Warehouse Agreement – Accounting Memorandum as of March 31, 2008 at H_0772393.
[221] I note that the removal of the Present Value of Financing Benefit does not affect the results with respect to my fraudulent transfer analysis for SOHC/HFP and would impact my fraudulent transfer analysis by approximately $300 thousand for CDO Fund.

recharacterized as equity. As described by various courts, "[r]echaracterization is appropriate where the circumstances show that a debt transaction was actually an equity contribution ab initio."[222] I understand that relevant case law surrounding equity recharacterization describes an eleven-factor test to determine whether a purported debt transaction should be recharacterized as an equity investment for legal recovery purposes. This test largely examines the form, substance and purpose of the underlying transaction in making this determination.

In this regard, it is important to consider, when analyzing the following eleven factors, that the subject HFP Notes transaction was by and between Highland Entities and was not at arm's length. Therefore, Mr. Dondero and HCM had the ability to influence the form of the HFP Notes regardless of their substance. I have examined the circumstances of the HFP Notes issuance with regard to the relevant eleven factors and observed the following.

> 1.     *The names given to the instruments, if any, evidencing the indebtedness;*

The HFP Note Purchase Agreement dated September 26, 2008 and the Amended and Restated Note Purchase Agreement dated November 15, 2008 refer to the HFP Notes as "Senior Secured Notes."[223]

> 2.     *The presence or absence of a fixed maturity date and schedule of payments;*

The face of the note purchase agreements call for a fixed maturity date of November 15, 2018 and call for quarterly principal and interest payments as presented in Schedule D of the HFP Note Purchase Agreement.[224] However, the stated fixed maturity date was never reached. Furthermore, the HFP Notes termination was done prior to any quarterly payment being made.[225]

---

[222] Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.), 269 F.3d 726, 747–48 (6th Cir.2001) (citing In re Cold Harbor Assocs., 204 B.R. 904, 915 (Bankr.E.D.Va.1997)).

[223] Note Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083) and Amended and Restated Note Purchase Agreement as of December 22, 2008 (H_0928489-H_0928539).

[224] Note Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083).

[225] December 29, 2008 email from Phil Braner to James Dondero and Todd Travers at H_0781548; Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM0026158-PWC-HCM00026174) and Deposition of Philip Braner dated November 20, 2012 at p. 129.

**UPDATED 4/18/2013**
Page 66

3.    *The presence or absence of a fixed rate of interest and interest payments;*

The face of each of the note purchase agreements call for a fixed interest rate of 10.00%. Additionally, quarterly principal and interest payments as presented in Schedule D of the Note Purchase Agreement dated September 26, 2008.[226]   However, HFP had the option to delay or avoid cash payments by electing to make payments-in-kind for up to five quarters.  No quarterly payments or payments-in-kind were ever made and the HFP Notes termination was contemplated prior to the first quarterly payment due date.[227]

4.    *The source of repayments;*

In *re AutoStyle Plastics, Inc.*, the court stated: "[i]f the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution."[228]   The agreement memorializing the HFP Notes is silent on what the source of repayment was expected to be.  However, I observed that, according to Mr. Travers, the source of the repayments originally contemplated was the income received from the assets that HFP purchased through the HFP Notes issuance.[229]

5.    *The adequacy or inadequacy of capitalization;*

Mr. McQuown, a former outside director of HFP, testified that HFP was undercapitalized at the time of the HFP Notes issuance.[230]   HFP Interim CFO Mr. Stoops testified that HFP did not perform any analysis to determine whether it was undercapitalized prior to the HFP Notes issuance, but agreed that it was reasonable to conclude that HFP was undercapitalized in September 2008, and its financial condition became materially worse by October 2008.[231]   Finally, former HFP CEO Mr. Travers agreed that HFP was undercapitalized from at least mid-August 2008 until it became insolvent.[232]

---

[226] Note Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083) and Amended and Restated Note Purchase Agreement as of December 22, 2008 (H_0928489-H_0928539).

[227] December 29, 2008 email from Phil Braner to James Dondero and Todd Travers at H_0781548 and Deposition of Philip Braner dated November 20, 2012 at p. 129.

[228] In re: *AutoStyle Plastics, Inc.*, 269 F.3d at 726.

[229] Deposition of Todd Travers dated April 3, 2012, pp. 215-216.

[230] Deposition of Gene McQuown dated March 14, 2012, pp. 278-281.

[231] Deposition of Clifford Stoops dated November 30, 2011, pp. 386-388.

[232] Deposition of Todd Travers dated April 3, 2012, pp. 154, 177.

6. *The identity of interest between the creditor and the stockholder;*

"If stockholders make advances in proportion to their respective stock ownership, an equity contribution is indicated. On the other hand, a sharply disproportionate ratio between a stockholder's percentage interest in stock and debt is indicative of bona fide debt."[233] I understand that limited information has been produced in discovery regarding the ownership of HFP. However, I identified an undated document showing the investors in HFP. Based on that document, third party investors have an ownership interest of 56.92% in HFP while HCM has a 20.96% interest and other related parties make up the remaining 22.12%.[234] Based on my review of the HFP Notes issuance as shown in Table 4, neither HCM nor any third parties participated in the HFP Notes issuance. As such, it appears that the Highland Entities that did participate in the HFP Notes issuance had a disproportionate percentage interest in the HFP Notes when compared to their stock ownership percentages if they did have an ownership position. However, I observed that all the participants in the HFP Notes issuance were Highland Entities.

7. *The security, if any, for the advances;*

Although the HFP Notes are referred to as "Senior Secured Notes", there is no evidence that the notes were ever actually secured by the assets that were transferred to HFP in exchange for the HFP Notes. I observed that, at least as of December 2008, there were no executed Pledge and Security Agreements, despite such documents being cited in the Amended and Restated Note Purchase Agreements. I have never seen an executed copy of any Pledge and Security Agreements associated with the HFP Notes, and instead have only seen unsigned and incomplete drafts.[235]

This is consistent with what Highland personnel have stated during depositions regarding the execution of security documents related to the HFP Notes.

---

[233] In re: *AutoStyle Plastics, Inc.*, 269 F.3d at 726.

[234] H_1760206; I examined the draft S-1 filing for HFP and the ownership details were not populated.

[235] Citi 00443; OHS 004508-OHS 004527; OHS 009727-OHS 009742; Deposition of Murray Grenville, pp. 241-244 and Plaintiff's Exhibit 202.

- Mr. Dondero during his deposition stated:

  Q: *Was there a security agreement ever executed and delivered to the issuer parties?*

  A: *I don't know. I mean, it looks to me like, you know, Todd and his team put all the notes together. He would be the person to ask on that.*[236]

- However, Mr. Todd Travers stated that he wasn't aware of whether or not this had taken place:

  Q: *Okay. It's certainly fair to say it was not executed on or about the time of the notes issuance, which occurred in -- the first one in September of 2008 and the second one in October 2008; is that fair?*

  A: *I don't know the answer to that.*

  Q: *Who would have been responsible for trying to obtain the final documentation of the security agreements?*

  A: *I would think it would be somebody within Highland's legal department.*[237]

- Mr. Braner echoed similar uncertainty about the status of the security document in his deposition:

  Q: *Do you know whether security agreements were ever duly executed and delivered?*

  A: *As I sit here today, I'm not sure.*[238]

  8.    *The corporation's ability to obtain financing from outside lending institutions;*

Mr. Dondero acknowledged that HFP did not try to obtain third-party financing because it would not have been possible to get anything done under any terms.[239]  Further, Mr. Dondero indicated that if the Highland-related entities had not loaned money to HFP (through the HFP Notes Offering), HFP could not have obtained financing from any other third-party source in

---

[236] Deposition of James Dondero dated June 11, 2012, pp. 455-456.
[237] Deposition of Todd Travers dated April 3, 2012, p. 257.
[238] Deposition of Philip Braner dated August 21, 2012, p. 1,000.
[239] Deposition of James Dondero dated June 11, 2012, p. 415.

September and October 2008.[240]  Mr. Travers, the CEO of HFP in 2008, testified that it would have been highly unlikely that any true third party would have been willing to participate in the notes issuance at the price and under the terms to which Highland's related entities agreed: "I don't think an arm's-length transaction like that could have happened in that time frame."[241]

> 9.     *The extent to which the advances were subordinated to the claims of outside creditors;*

I have observed no evidence that the advances were subordinated to the claims of outside creditors.

> 10.    *The extent to which the advances were used to acquire capital assets;*

The HFP Note Purchase Agreement stated that "[HFP] will apply the proceeds of the sale of the Notes to buy and hold certain assets for investment purposes."[242]

> 11.    *The presence or absence of a sinking fund to provide repayments.*

"The failure to establish a sinking fund for repayment is evidence that the advances were capital contributions rather than loans."[243]  I have not observed any evidence that a sinking fund was established to repay the HFP Notes.

I understand that whether the HFP Notes will be recharacterized as equity is a determination that will be made by the Trier of Fact.  As such, I have analyzed SOHC/HFP's combined solvency under two alternative scenarios: (1) treating the HFP Notes as an equity investment from certain Highland Entities; and, (2) treating the HFP Notes as a debt obligation, or liability.

### (3)     SOHC/HFP's Net Equity

Based on my application of the balance sheet test to evaluate the solvency of SOHC/HFP, Table 10 below summarizes SOHC/HFP's equity, beginning August 31, 2008, adjusted to (1) remove the Present Value of Financing Benefit; (2) remove the negative equity of CDO HoldCo

---

[240] Deposition of James Dondero dated December 11, 2012, p. 425.
[241] Deposition of Todd Travers dated April 3, 2012, pp. 212-213.
[242] Note Purchase Agreement dated September 26, 2008 (H_0056026-H_0056083).
[243] In re: *AutoStyle Plastics, Inc.*, 269 F.3d at 726.

and its subsidiaries' negative equity, to the extent it existed; (3) remove the unamortized debt issuance costs of HFP's subsidiaries; and, (4) separately characterize the HFP Notes as debt or equity depending on whether the Trier of Fact determines that the HFP Notes should be treated as equity. Based on this analysis, SOHC/HFP became insolvent no later than (1) December 31, 2008, assuming the HFP Notes are treated as equity, and (2) October 31, 2008 assuming the HFP Notes are treated as debt. See Exhibit 4.

Table 10[244]

| SOHC/HFP Adjusted Net Equity | | |
|---|---|---|
| Date | Treating the HFP Notes as Debt | Treating the HFP Notes as Equity |
| August 31, 2008 | $ 181,309,685 | $ 181,309,685 |
| September 30, 2008 | 85,907,901 | 402,288,444 |
| October 31, 2008 | (140,546,895) | 234,307,402 |
| November 30, 2008 | (210,293,741) | 167,656,045 |
| December 31, 2008 | $ (428,268,542) | $ (48,290,944) |

(4)     SOHC/HFP's ability to pay debts and/or capital adequacy

In addition to my application of the balance sheet test to SOHC/HFP, I also examined whether SOHC/HFP incurred debts beyond its ability to pay. As part of this review, I noted that in September 2008 certain HFP Board of Directors' materials included a "Snapshot of HFP Liquidity" which consisted of the cash projections of consolidated HFP.[245] Though the projections included certain cash flows related to HFP's subsidiaries other than SOHC, they nonetheless provide data related to SOHC/HFP's ability to pay its debts. Beginning with the September 2008 forecast, and for each future forecast prepared, consolidated HFP showed negative cash balances as of the end of each forecast's projection period.

- HFP's consolidated cash forecasts prepared in September 2008 projected ending cash balances ranging from negative $7.5 million to negative $52.4 million.[246]

- HFP's consolidated cash forecasts prepared in October 2008 projected ending cash balances ranging from negative $34.6 million to negative $68.2 million.[247]

---

[244] I have examined solvency at each month end consistent with Highland's practice of preparing month-end financial statements.
[245] Short Term Loan Proposal at p. H_0804833 (Plaintiffs Exhibit 222).
[246] H_0082883 and H_0082876.
[247] H_0078717 and H_0078721.

- HFP's consolidated cash forecasts prepared in November 2008 projected ending cash balances ranging from negative $51.3 million to negative $222.5 million.[248]

- The limited cash forecasts prepared in December 2008 projected that consolidated HFP would have ending cash balances of negative $159.1 million to negative $162.5 million.[249]

In addition, SOHC/HFP faced liquidity and capital adequacy issues throughout 2008, as evidenced by internal documents and testimony. Specifically, the following demonstrate SOHC/HFP's inadequate capital and lack of liquidity:

- Based on a May 2008 analysis presented to HFP's Board of Directors, HFP management concluded that "[a] capital raise of $100mm will be inadequate to fully return to normal operations" and "[a] capital raise of $200mm is adequate to continue operations as normal."[250]

- Based on a going concern analysis conducted by HFP's external auditor PricewaterhouseCoopers, for the period ending June 30, 2008, management reached the conclusion that substantial doubt existed regarding HFP's ability to continue as a going concern.[251] Mr. Braner also testified in his deposition that at least as of November 18, 2008 there was enough information to determine that HFP was not going to be able to function as a going concern.[252]

- HFP [consolidated] had a cash balance of $6.8 million in September 2008 at a time when a $20 million margin payment was required as part of a Barclays financing facility. This required HFP to borrow $13.9 million on September 12, 2008 from HCM (which was eventually recorded on the books of SOHC).[253] Mr. Travers acknowledged that HFP was undercapitalized at this point in time and that HCM provided this loan at a time when HFP would have been unable to raise similar capital from an outside party.[254] Mr. Stoops agreed that as of the time of this transaction, HFP was undercapitalized.[255]

- Another example of SOHC/HFP's inadequate capital was HCM's conversion of a $30 million loan. In December 2007, HCM loaned SOHC $30 million in exchange for an

---

[248] H_0078914 and H_0078918.
[249] H_0079021; H_0079025 and H_0079028
[250] HFP Board of Directors Liquidity Analysis & Options dated May 2008 at H_0312654.
[251] PricewaterhouseCoopers work papers dated November 21, 2008 at PWC-HCM00024300.
[252] Deposition of Philip Braner dated December 7, 2011, pp. 608-609.
[253] HFP Short Term Loan Proposal at H_0804830 (Plaintiffs Exhibit 222).
[254] Deposition of Todd Travers dated April 3, 2012, p. 177.
[255] Deposition of Clifford Stoops dated November 30, 2011, pp. 385-386.

unsecured promissory note.  In July 2008, rather than requiring repayment of the loan, HCM accepted $30 million of shares in HFP as satisfaction of the note.[256]

- In a January 2009 letter prepared by HFP's management team, HFP stated that as of December 31, 2008, that "it is likely that all future inflows of cash to HFP will be used to pay creditors and that there is no prospect of return to holders of HFP [equity] units."[257]

### (5)      SOHC/HFP's Insolvency Conclusion

As Table 10 above indicates, (1) SOHC/HFP became insolvent no later than December 31, 2008, assuming the HFP Notes should be treated as equity, and (2) was insolvent no later than October 31, 2008 assuming the HFP Notes should be treated as debt.  As demonstrated by HFP's cash forecasts projecting negative cash balances, the information described above and its need to borrow from related parties to meet margin calls, data exists which evidences SOHC/HFP's inability to pay debts and/or its inadequate capitalization in periods prior to October 2008.

### b)      CDO Fund Solvency

I assessed CDO Fund's solvency by comparing the present fair salable value of its assets, as demonstrated by Highland's own contemporaneous fair value determinations, with CDO Fund's liabilities.  In order to assess the present fair salable value of CDO Fund's assets, I reviewed: (1) the monthly Knox Warehouse valuations prepared by HCM; (2) CDO Fund's internal financial statements demonstrating the present fair value of its assets and liabilities; (3) deposition testimony regarding the financial condition of the entity at various points in time; and, (4) other relevant documents produced in this case.

### (1)      Review of the fair value of CDO Fund's assets

Generally, CDO Fund's assets were largely comprised of trading securities, accrued income on trading securities, CDO swaps, and CDS positions.  On a monthly basis, HCM prepared a NAV file for CDO Fund that included the current present fair salable value of CDO

---

[256] December 18, 2007 HFP Board of Directors meeting minutes at H_008369; August 5, 2008 HFP Board of Directors Package at D-00638 (Plaintiffs Exhibit 254); Deposition of Todd Travers dated April 3, 2012, pp. 146-147, 167-170.
[257] January 2009 Investor Communication at p. H_0444376.

Fund's assets and liabilities. HCM reconciled this file with a similar NAV file created by JPMorgan each month.[258] In addition to being reconciled with the valuations of JPMorgan, PricewaterhouseCoopers also reviewed and tested CDO Fund's fair value accounting and found the values to be reasonable.[259] In light of CDO Fund's valuation and reporting practices, for purposes of determining solvency, I have relied on CDO Fund's NAV asset valuations as they represent the present fair salable value of CDO Fund's assets, based on its contemporaneous marks.

(2)     Review of CDO Fund's liabilities

Generally, CDO Fund's liabilities consisted of: (1) amounts owed to brokers for trade settlement and trading activities; (2) a secured line of credit and secured borrowings associated with the leveraged investment positions that it held; and, (3) the Knox Warehouse liability. The discussion above about the Knox Warehouse valuation applies equally to CDO Fund. The only difference is the fact that CDO Fund held a 51% interest as opposed to SOHC's 49% interest.

(3)     CDO Fund's Net Equity

Based on my application of the balance sheet test to evaluate the solvency of CDO Fund, Table 11 below summarizes CDO Fund's equity, beginning September 30, 2008. As Table 11 illustrates, CDO Fund was insolvent no later than October 31, 2008. See Exhibit 5.

**Table 11**

| Date | CDO Fund Adjusted Net Equity |
|------|------------------------------|
| September 30, 2008 | $   260,728,947 |
| October 31, 2008 | (22,707,467) |
| November 30, 2008 | (229,108,241) |
| December 31, 2008 | $  (346,108,266) |

---

[258] See for example, Highland CDO Opportunity Master Fund NAV File dated November 30, 2008 at H_0109269, Deposition of Chris Halpin dated June 6, 2012, pp 46-54 and Hedge Fund Monthly Close Process at PWC-HCM00029254 (Plaintiffs Exhibit 332).

[259] Highland CDO Opportunity Master Fund, L.P. Financial Statements dated December 31, 2007 at H_0113231.

(4)    CDO Fund's capital adequacy

In addition to applying the balance sheet test to CDO Fund, I also examined its capital adequacy. As the market deteriorated following the Lehman bankruptcy in September 2008, CDO Fund's asset value plummeted sharply. Within days of Lehman's bankruptcy filing, CDO Fund failed to post its own collateral in connection with the first Restructured Transaction collateral call. Specifically, on September 17, 2008, UBS issued a $10 million collateral call to SOHC and CDO Fund.[260] On September 18, 2008, HFP transferred $15.8 million in cash to SOHC to fund this collateral call and others.[261] SOHC then transferred $10 million to State Street on September 18, 2008.[262] Of this $10 million, $5.1 million was purportedly to fund CDO Fund's portion of the collateral call, while $4.9 million was to fund SOHC's portion of the collateral call.[263] In reality, however, CDO Fund did not transfer anything to UBS to meet its obligations for this collateral call.[264] With respect to UBS's October 21, 2008 collateral call, "[n]either the CDO Fund nor SOHC had sufficient cash reserves to pay the collateral demand."[265] Ultimately CDO Fund pledged assets to meet this collateral call.[266] Finally, on November 7, 2008, SOHC and CDO Fund received another demand from UBS to post additional collateral of $10.0 million. Neither SOHC nor CDO Fund was able to post cash or eligible securities to satisfy the collateral call.[267]

(5)    CDO Fund's insolvency conclusion

Based on my analysis of HCM's reconciled NAV files, adjusted to remove the Present Value of Financing Benefit, CDO Fund became insolvent no later than October 31, 2008. As evidenced by CDO Fund's insufficient cash reserves at the time of the September 17, 2008 and October 21, 2008 collateral calls, data exists which evidences the inadequate capitalization of CDO Fund in periods prior to October 31, 2008.

---

[260] HFP Accounting Memorandum dated February 18, 2009 at H_0301888; UBS-000331475-UBS-000331476.
[261] SOHC Cash Transaction file at H_0087985; SOHC Bank Statement at H_0056435.
[262] SOHC Cash Transaction file at H_0087985; SOHC Bank Statement at H_0056435.
[263] HFP Accounting Memorandum dated February 18, 2009 at H_0301888; UBS-000331475-UBS-000331476.
[264] CDO Fund did transfer $5.1 million in assets in excess of the HFP Notes that were issued to it as of September 26, 2008. See H_0056060.
[265] HFP Accounting Memorandum dated February 18, 2009 at H_0301888; UBS-000331475-UBS-000331476.
[266] HFP Accounting Memorandum dated February 18, 2009 at H_0301888.
[267] HFP Accounting Memorandum dated February 18, 2009 at H_0301888.

2.      ***SOHC/HFP engaged in constructively fraudulent transactions and CDO
Fund engaged in potential constructively fraudulent transactions***

Section 273 of the New York Debtor & Creditor law states: "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."  Accordingly, any transfer of assets from an entity while insolvent and not in exchange for fair consideration is considered constructively fraudulent and can be clawed back to the entity that originally transferred the assets.  In order to test whether fair consideration was exchanged for the assets at issue in these transactions, I reviewed bank statements, general ledgers, cash transaction files, and other financial data that was provided by the Defendants.[268]

a)      SOHC/HFP constructively fraudulent transfers based on selected assumptions, related to the HFP Notes termination and SOHC/HFP's insolvency as of December 31, 2008

If the HFP Notes are recharacterized as an equity investment, then the HFP Notes termination should be evaluated in the context of an equity distribution or dividend.  Therefore, the transfers made during the HFP Notes termination would necessarily be without fair consideration as a dividend is a return of capital and is not exchanged for any consideration.  Table 12 below summarizes 127 cash and asset transfers, and their related values, all made as part of the HFP Notes termination by HFP's subsidiaries to other Highland Entities, while SOHC/HFP was insolvent.[269]  See Exhibit 6.

---

[268] Some of the financial data was incomplete, such as missing bank statements for CDO Fund and general ledgers that lacked descriptions and netted transactions in such a way that it is impossible to decipher how certain transactions were accounted for without further documentation being provided.

[269] HFP was the sole legal and beneficial owner of HFP Asset Funding II and HFP Asset Funding III which transferred the Purchase Price Assets (as defined in the agreement).  Further, for the assets transferred by other HFP subsidiaries, HFP (defined as the "Issuer") owned all right, title and interest in, and had good and marketable title to, all of the Assets (as defined in the agreement) transferred.  See Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM0026158-PWC-HCM00026174).

Table 12[270]

| Counterparty | Description of Assets Exchanged | Market Value of Assets Exchanged |
|---|---|---|
| Credit Opportunities Fund | CLOs | $ 3,545,522 |
| Highland Credit Opportunities Holding Corporation | Life Settlement Contracts | 22,237,466 |
| Credit Strategies Fund | CLOs | 16,823,287 |
| Crusader Fund | CLOs | 43,405,815 |
| Highland Crusader Holding Corporation | Life Settlement Contracts | 108,961,751 |
| HCM | CLOs | 8,000,355 |
| Total | | $ 202,974,195 |

> b) SOHC/HFP constructively fraudulent transfers, based on selected assumptions, related to the HFP Notes termination and SOHC/HFP's insolvency as of October 31, 2008

If the Trier of Fact determines that the HFP Notes are debt instruments, then the HFP Notes termination should be evaluated in the context of a debt repayment. It is my understanding that Section 272 of the New York Debtor & Creditor law, and associated New York State case law, generally provide that a repayment of a preexisting debt qualifies as fair consideration for a transfer of property unless the transferee is an insider of the transferor.[271] I understand that the Courts have recognized "insiders" in this context to include officers, directors and shareholders of an entity, as well as companies controlled by any such officers, directors or shareholders. For purposes of evaluating whether the transfers associated with this termination were constructively fraudulent, I have treated the portion of the HFP Notes termination that was between HFP and the other Highland Entities (approximately $203.0 million of the $220.5 million total transferred) as by and between insiders. I have utilized this treatment because HCM managed or held an ownership interest in all the Highland Entities at issue. Moreover, HCM held a direct ownership interest in HFP of approximately 20% while Crusader Fund and CDO Fund each held a direct ownership interest in HFP of approximately 9% and 10%, respectively.[272] In addition, Mr. Dondero, HCM President, signed the March 20, 2009 HFP

---

[270] Table 12 ($203.0 million) differs from Table 5 ($233.5 million) as Table 12 excludes transfers to third parties ($17.5 million) and includes an adjustment ($13.0 million) to the assets transferred from Highland Financial Real Estate Corporation to reflect HFP's 45% ownership interest in Highland Financial Real Estate Corporation.

[271] Northstar Development Corp. v. Gerald A. Buchheit, Jr. (In Re Northstar Development Corp.) 08-10689B; AP08-1074B bankr. (WDNY 2012) citing In Farm Stores, Inc. v. School Feeding Corp., 64 N.Y. 2d 1065, 1066-67 (1985).

[272] H_1760206.

Notes Termination, Settlement and Release Agreement on behalf of all the Highland Entities that were party thereto, including:

- HFP (as "Chairman of the Board of Directors");

- HFP Asset Funding II, LTD. (as "Director");

- HFP Asset Funding III, LTD. (as "Director");

- Highland CDO Opportunity Master Fund, L.P. (as "President" of its ultimate general partner);

- Highland Credit Strategies Master Fund, L.P. (as "President" of its ultimate general partner);

- Highland Credit Opportunities CDO, LTD. (as "President");

- Highland Crusader Offshore Partners, L.P. (as "President" of its ultimate general partner);

- Highland Crusader Holding Corporation (as "President");

- Highland Capital Management L.P. (as "President" of its ultimate general partner); and

- Highland RT Corporation, as Agent for the Noteholders (as "President").[273]

Table 12 above summarizes the 127 transfers of cash and assets and their related values made by HFP's subsidiaries to other Highland Entities, for the benefit of HFP, in exchange for the extinguishment of the HFP Notes.[274]   Based on my solvency analysis discussed above, SOHC/HFP was insolvent when SOHC/HFP made these 127 transfers from March 18, 2009 through June 2, 2009.   Moreover, as Table 12 shows, each of these transfers was made to a Highland Entity. Therefore, under the assumptions identified above, each of the 127 transfers would be constructively fraudulent transfers made by an insolvent SOHC/HFP, totaling $203.0 million.

---

[273] Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM0026158-PWC-HCM00026174).

[274] HFP was the sole legal and beneficial owner of HFP Asset Funding II and HFP Asset Funding III which transferred the Purchase Price Assets (as defined in the agreement).  Further, for the assets transferred by other HFP subsidiaries, HFP (defined as the "Issuer") owned all right, title and interest in, and had good and marketable title to, all of the Assets (as defined in the agreement) transferred.  See PWC-HCM00026163.

Additionally, I identified three other transactions that meet the criteria, including consideration as to whether the transactions were between "insiders", for constructively fraudulent transfers of cash. These three transactions occurred between November 6, 2008 and December 19, 2008 and totaled $12.9 million. Specifically, $8.0 million of cash was transferred from SOHC to HCM on November 6, 2008 and did not appear to have been exchanged for fair consideration based on the documents that I have been provided.[275] On December 10, 2008, as part of a single set of instructions to Bank of New York Mellon, SOHC transferred $3.7 million to HFP, which was then transferred to CDO HoldCo and ultimately to Mr. Dondero.[276] Given that Mr. Dondero is a director and a major shareholder in HFP, through his ownership stake in HCM, whether this transfer was to repay a debt to Mr. Dondero or to make an equity distribution, I have assumed that Mr. Dondero was an insider and thus there was not fair consideration. On December 19, 2008, HFP transferred $1.2 million to related Highland Entities to pay down the outstanding balance of the HFP Notes.[277] See Exhibit 7 for the analysis of the constructively fraudulent transfers from SOHC/HFP.[278]

c) CDO Fund potential constructively fraudulent transfers

Based on my solvency analysis discussed above, CDO Fund was insolvent no later than October 31, 2008. Subsequent to this date, CDO Fund made 15 asset and cash transfers which I have identified as potential constructively fraudulent transfers. The first 12 non-cash asset transfers (valued at approximately $17.1 million) occurred on December 12, 2008. Defendants have produced limited information with respect to these transactions, but based on the information produced to date I have observed no evidence that these 12 asset transfers were in exchange for fair consideration.[279] The last asset transfer took place on December 22, 2008

---

[275] Sufficient documentation to make a definitive determination of whether fair consideration was exchanged has not been produced. For example, certain statements for the CDO Fund operating bank accounts at Bank of New York were not produced, including December 2008. Additionally, the general ledger detail appears to contain transactions that are netted together or incomplete.

[276] H_0884704 (Plaintiffs Exhibit 49); SOHC Bank Statement at H_0056349; SOHC General Ledger at H_0740240.

[277] HFP Cash Transaction file at H_0079055; HFP November 30, Balance Sheet at H_0304999; HFP December 31, Balance Sheet at H_0304996.

[278] In the event that the Trier of Fact does not find SOHC and HFP to be the alter ego of one another, I have also examined the fraudulent transfers made by SOHC on a standalone basis. Applying the same analysis as described above, I have determined that SOHC on a standalone basis was insolvent as of March 31, 2008 (and all periods thereafter) and made 17 potential constructively fraudulent asset transfers and 16 potential constructively fraudulent cash transfers for a total of $115.0 million.

[279] CDO Trade Blotter at H_0740522. I note that the counterparty is listed as "Highland Cross" in the CDO Fund Trade Blotter. However, I have not identified information that specifies the Highland entity transferee.

when CDO Fund transferred $3.1 million in assets to HCM to repay a $3.0 million debt which was not for fair consideration based on the assumption that HCM was an insider.[280] In addition, two cash transfers (valued at approximately $2.6 million) took place after CDO Fund was insolvent. The first cash transfer was for $0.3 million and had a description of "CDO Fund - CLO Trade True Up". The other cash transfer of $2.2 million had a description of "Return of Overpayment on Pre-Funded Trades" in the cash transaction file.[281] There was no additional general ledger and bank statement information to determine if fair consideration was given for these transfers and as such these transactions represent potential constructively fraudulent transfers from CDO Fund to other Highland Entities. See Exhibit 8 for a detailed analysis of the potential constructively fraudulent transfers from CDO Fund.

d)  Summary of Constructively Fraudulent Conveyance Analysis

In summary, depending on whether the Trier of Fact determines that the HFP Notes issuance is an equity investment in HFP or a debt issuance by HFP, I have identified between $225.7 and $238.6 million of potential fraudulent transfers from SOHC/HFP and CDO Fund, as outlined in Table 13:

**Table 13[282]**

| | HFP Notes Recharacterized as Equity | | HFP Notes Deemed to be Debt | |
|---|---|---|---|---|
| | Number of Fraudulent Transfers | Amount of Fraudulent Transfers | Number of Fraudulent Transfers | Amount of Fraudulent Transfers |
| **SOHC/HFP** | | | | |
| Cash Transfers | 3 | $ 7,329,858 | 6 | $ 20,196,828 |
| Asset Transfers | 124 | 195,644,337 | 124 | $195,644,337 |
| **SOHC/HFP Total** | **127** | **202,974,195** | **130** | **215,841,165** |
| **CDO Fund** | | | | |
| Cash Transfers | 2 | 2,552,980 | 2 | 2,552,980 |
| Asset Transfers | 13 | 20,215,278 | 13 | 20,215,278 |
| CDO Fund Total | 15 | 22,768,258 | 15 | 22,768,258 |
| **Total Fraudulent Transfers** | **142** | **$ 225,742,453** | **145** | **$ 238,609,423** |

---

[280] CDO Trade Blotter at H_0740522; December 16, 2008 Email at H_0146338; CDO Fund NAV File dated December 31, 2008 at H_0111005.
[281] H_0155953.
[282] Under both scenarios presented in Table 13, $7.3 million of the "Cash Transfers" relates to the HFP Notes unwind as detailed on Exhibit A to the Termination, Settlement and Release Agreement dated March 20, 2009 (PWC-HCM0026158-PWC-HCM00026174).

## VII. Conclusion

A. The Plaintiffs have suffered damages of $599.2 million to $750.1 million, including prejudgment interest, as of the Breach Date.

B. I observed indicia of alter ego at the Highland Entities.

C. I identified constructively fraudulent transfers.

    1. SOHC/HFP was insolvent no later than: (a) December 31, 2008 assuming the HFP Notes are recharacterized as equity, or (b) October 31, 2008 assuming the HFP Notes are deemed to be debt, and CDO Fund was insolvent no later than October 31, 2008.

    2. SOHC/HFP engaged in constructively fraudulent transactions and CDO Fund engaged in potential constructively fraudulent transactions.

## VIII. Documents and Information Considered

A list of documents that I considered in conducting my analysis is attached as Exhibit 9.

## IX. AlixPartners Compensation

AlixPartners is being compensated at my normal and customary rate of $750 per hour for my time and between $325 and $550 per hour for staff working at my direction.

## X. Additional Analysis and Demonstrative Aids

I reserve the right to amend and/or supplement this report based upon any new and/or additional facts or other documents which may come to my attention, or information, including expert reports, deposition testimony and related document exhibits thereto, which may be produced.

If I am called upon to testify, I may prepare demonstrative aids, such as graphs, charts or tables.

Louis G. Dudney

March 8, 2013

INDEX NO. 650097/2009

RECEIVED NYSCEF: 06/17/2022

# EXHIBITS



# Louis Dudney, CPA, CFF
**Managing Director**
**Chicago Office**
+1 (312) 551-3269
*ldudney@alixpartners.com*

| | |
|---|---|
| **Professional Highlights** | Louis Dudney's experience covers broad types of operational, financial, valuation, litigation, bankruptcy and management consulting engagements, including damages analysis, analysis of financial and corporate transactions and relationships, valuation dispute resolution, solvency analysis, and related financial analysis.<br><br>Louis has consulted as a financial expert in litigation cases for over 20 years.  Louis Co-Leads AlixPartners Financial Advisory Services practice.  Prior to joining AlixPartners, Mr. Dudney was a partner with PricewaterhouseCoopers in its Financial Advisory Services Group. |
| **Client Experience** | Louis has consulted with companies in a number of industries including financial services, real estate, retail, computer design, entertainment, telecommunications, manufacturing, construction, energy, and consumer products.  In performing engagements in these industries, he has analyzed economic, accounting, operational and financial issues and testified in federal civil, criminal and bankruptcy courts, state courts, American Arbitration Association hearings, international proceedings and state regulatory proceedings as an expert witness. |
| **Affiliations** | Louis holds a Bachelor of Business Administration with a major in accounting from The College of William & Mary; is a Certified Public Accountant and is Certified in Financial Forensics by the American Institute of Certified Public Accountants (AICPA).  Louis is a member of the Illinois Society of Certified Public Accountants, the AICPA, the Licensing Executives Society, the American Bankruptcy Institute and the Turnaround Management Association. |



**UPDATED 4/18/2013**

# Louis G. Dudney – Testimony Experience Last 4 Years

- *S.C. Johnson & Son, Inc. v. Milton E. Morris, et al.,* State of Wisconsin, Circuit Court, Racine County.

- *Fresh Express, Incorporated v. Beazley Syndicate 2623/623, At Lloyd's and QBE International Limited*, California Superior Court, County of Monterey

- *United States v. Navarette Industries, et al.*, United States District Court, Northern District of Illinois

- *Vincent R. DePinto & DePinto Drywall & Painting v. The Sherwin-Williams Company and Pulte Homes*, Inc.  United States District Court of Illinois, Eastern Division

- *SRAM Corporation v. Formula Srl and Perigeum Development, Inc., et al.*  United States District Court, Northern District of Illinois, Eastern Division

- *Walter Gastaldi, et al., v. Sunvest Communities USA, LLC, et al.*  United States District Court, Southern District of Florida.

- *Physiotherapy Associates, Inc. v. Alan J. Grodin; Kim McCormack; Gary Woodham; COR Holdings, LLC d/b/a Centers for Orthopedic Rehabilitation, LLC; Sovereign Rehabilitation LLC.*  In the Superior Court of Fulton County, State of Georgia

- *Generics UK Limited v. Lavipharm S.A. and Lavipharm Corp. v. Mylan, Inc.*  American Arbitration Association, Administered by the International Centre for Dispute Resolution

- *Rose Hall Resort, L.P. v. The Ritz-Carlton Hotel Company of Jamaica, Limited.*  International Centre for Dispute Resolution.

- *ISB Products v. Autotech Technologies, et al.*, Circuit Court of Cook County, Illinois

- *Optimal Interiors, LLC v. The HON Company,* United States District Court for the Southern District of Iowa, Davenport Division

- *ABN AMRO Services Co., Inc., et al. v.  Navarrete Industries, Inc.,* Circuit Court of Cook County, County Department, Chancery Division.

- *Morningstar, Inc. v. The Mills Corporation and Block 37 Office LLC,* Circuit Court of Cook County, IL, County Department, Chancery Division.

- *Fort Benning Family Communities, LLC and Fort Belvoir Residential Communities LLC v. American Management Services East LLC, et al.*  Superior Court of Muscogee County, State of Georgia

- *Metropolitan Water Reclamation District of Greater Chicago v. 664 N. Michigan LLC, et al.*  Circuit Court of Cook County, Illinois, County Department, Chancery Division



**UPDATED 4/18/2013**

# Louis G. Dudney – Testimony Experience Last 4 Years

‣ *State of Indiana v. International Business Machines Corporation*, In the Marion Superior Court, County of Marion, State of Indiana

‣ *ABN AMRO N.V., et al. v. Eric Dinallo, the New York State Insurance Department, MBIA Inc., MBIA Insurance Corporation, and National Public Finance Guarantee Corporation,* Supreme Court of the State of New York, County of New York

‣ *Monterey Bay Military Housing LLC, et al. v. Pinnacle Monterey LLC, et al.*, Superior Court of the State of California, For the County of Monterey

‣ *Opry Mills Mall Limited Partnership, et al. v. Arch Insurance Company, et al.,* Chancery Court for Davidson County, Tennessee



UPDATED 4/18/2013

**Restructured Transaction Damages Calculation - Using Highland Marks**
**As of December 3, 2008**

**Exhibit 2**

| **Knox Warehouse - Breach Date Damages Using Highland Marks** | | |
|---|---:|---:|
| **Mark to Market Losses** | | |
| Aggregate Collateral Loss - cash warehouse (1) | $ | 106,157,101 |
| CDS Losses - synthetic warehouse (1) | | 388,284,750 |
| **Total losses** | | **494,441,851** |
| | | |
| **Other Warehouse Amounts** | | |
| Carry (interest on securities) (2) | | ( 36,326,615 ) |
| Financing Cost (3) | | 10,404,127 |
| Financing Savings | | ( 6,203,807 ) |
| **Net Carrying Amount** | | **( 32,126,295 )** |
| | | |
| **Collateral Posted** | | |
| Initial deposit - cash | | ( 20,000,000 ) |
| Margin call (September 2008) - cash | | ( 10,000,000 ) |
| Total of securities collateral value (4) | | ( 17,198,183 ) |
| Estimated interest received on deposit balances and securities (5) | | ( 53,096 ) |
| **Total Collateral** | | **( 47,251,279 )** |
| | | |
| **Total Damages** | **$** | **415,064,277** |
| | | |
| Prejudgment Interest Through March 8, 2013 | | 184,122,874 |
| | | |
| **Total Damages Including Prejudgment Interest** | **$** | **599,187,152** |

**Sources and Notes:**

(1) Knox Warehouse Valuation (H_0088012) adjusted to reduce Lehman security losses for the UBS's Lehman claim recovery percentage.

(2) Income as recorded in the Delta system through December 3, 2008 (UBS-000475722, UBS-000475428, UBS-000475427 and UBS-000474450-UBS-000474475).

(3) Calculated through December 3, 2008 based on UBS Calculation (UBS-000376918).

(4) UBS-000480926

(5) UBS-000164837

**UPDATED 4/18/2013**

**Restructured Transaction Damages Calculation - Using UBS Marks**
**As of December 3, 2008**

**Updated Exhibit 3**

| Knox Warehouse - Breach Date Damages Using UBS Marks | | |
|---|---|---|
| **Mark to Market Losses** | | |
| Aggregate Collateral Loss - cash warehouse (1) | $ | 128,848,101 |
| CDS Losses - synthetic warehouse (1) | | 470,118,984 |
| **Total losses** | | **598,967,085** |
| | | |
| **Other Warehouse Amounts** | | |
| Carry (interest on securities) (2) | | ( 36,326,615 ) |
| Financing Cost (3) | | 10,404,127 |
| Financing Savings | | ( 6,203,807 ) |
| **Net Carrying Amount** | | **( 32,126,295 )** |
| | | |
| **Collateral Posted** | | |
| Initial deposit - cash | | ( 20,000,000 ) |
| Margin call (September 2008) - cash | | ( 10,000,000 ) |
| Total of securities collateral value (4) | | ( 17,198,183 ) |
| Estimated interest received on deposit balances and securities (5) | | ( 53,096 ) |
| **Total Collateral** | | **( 47,251,279 )** |
| | | |
| **Total Damages** | **$** | **519,589,511** |
| | | |
| Prejudgment Interest Through March 8, 2013 | | 230,490,359 |
| | | |
| **Total Damages Including Prejudgment Interest** | **$** | **750,079,870** |

**Sources and Notes:**

(1) UBS Interrogatory Pursuant to Request for Disposition of Warehouse Assets, UBS-000480927 and UBS-000475421 adjusted to reduce Lehman security losses for the UBS's Lehman claim recovery percentage.

(2) Income as recorded in the Delta system through December 3, 2008 (UBS-000475722, UBS-000475428, UBS-000475427 and UBS-000474450-UBS-000474475).

(3) Calculated through December 3, 2008 based on UBS Calculation (UBS-000376918).

(4) UBS-000480926

(5) UBS-000164837

**UPDATED 4/18/2013**

**Summary of SOHC/HFP Adjusted Net Equity**
**August 2008 to December 2008**

Exhibit 4

| | **SOHC/HFP Adjusted Net Equity** | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Date** | **HFP Equity as Reported [A]** | **Remove CDO HoldCo Book Equity** | **Add-Back Adjusted CDO HoldCo Equity (if Positive) [B] (1)** | **Less: HFP's Portion of Unamortized Debt Costs (2)** | **Less: PV of Financing Benefit [C]** | **Treating the HFP Notes as Debt** | **HFP Notes and Accrued Interest** | **Treating the HFP Notes as Equity** |
| August 31, 2008 | $ 162,722,559 | $ (118,901,229) | $ 181,306,718 | $ - | $ (43,818,363) | $ 181,309,685 | $ - | $ 181,309,685 |
| September 30, 2008 | 54,474,992 | (53,605,056) | 152,815,233 | (17,907,783) | (49,869,486) | 85,907,901 | (316,380,543) | 402,288,444 |
| October 31, 2008 | (356,299,035) | 236,602,852 | 53,590,985 | (17,003,695) | (57,438,002) | (140,546,895) | (374,854,297) | 234,307,402 |
| November 30, 2008 | (559,114,459) | 339,855,684 | 40,762,551 | (16,165,952) | (15,631,564) | (210,293,741) | (377,949,786) | 167,656,045 |
| December 31, 2008 | $ (1,251,086,661) | 822,818,119 | - | - | - | $ (428,268,542) | (379,977,598) | $ (48,290,944) |

**Sources:**

[A]  Highland Financial Partners Consolidation dated: August 2008 (H_0082741-H_0082825); September 2008 (H_0082946-H_0082948);
      October 2008 (H_0078824-H_0078826); November 2008 (H_0304999); and December 2008 (H_0304995-H_0304996).

[B]  Highland CDO Holding Company Consolidation dated: August 2008 (H_0082826); September 2008 (H_1755198-H_1755203);
      October 2008 (H_1755180-H1755188); November 2008 (H_1755147-H_1755153); and December 2008 (H_1755160-H_1755168).

[C]  Knox Warehouse valuations dated: August 2008 (H_0805898); September 2008 (H_0841843); October 2008 (H_0835135); and
      November 2008 (H_0088012).

**Notes:**

[1]  Includes the CDO HoldCo standalone equity, adjusted to remove negative subsidiary equity and unamortized debt issuance cost assets (adjusted for minority interest).

[2]  Adjusted for minority interest.

UPDATED 4/18/2013

**Exhibit 5**

**Summary of CDO Fund Adjusted Net Equity**
**September 2008 to December 2008**

| Date | CDO Fund NAV [A] | CDO's Portion of the PV of Knox Financing Benefit [B] | CDO Fund Adjusted Net Equity |
|------|------------------|-------------------------------------------------------|------------------------------|
| September 30, 2008 | 312,633,922 | (51,904,975) | $ 260,728,947 |
| October 31, 2008 | 37,074,943 | (59,782,411) | (22,707,467) |
| November 30, 2008 | (212,838,654) | (16,269,587) | (229,108,241) |
| December 31, 2008 | $ (346,108,266) | - | $ (346,108,266) |

**Sources:**

[A] CDO Fund NAV files dated: September 30, 2008 (H_0107461); October 31, 2008 (H_0108750); November 30, 2008 (H_0109269); and December 31, 2008 (H_0111005).

[B] Knox Warehouse valuations dated: August 2008 (H_0805898); September 2008 (H_0841843); October 2008 (H_0835135); and November 2008 (H_0088012).

**UPDATED 4/18/2013**

Exhibit C - Constructively/Actively Fraudulent Transfers After December 31, 2008

| Number | Trade Date | Settlement Date | Counterparty | Description | Issuer | Asset Name | Principal | Price | Amount |
|---|---|---|---|---|---|---|---|---|---|
| **Constructively Fraudulent Cash Transfers** | | | | | | | | | |
| 1 | 3/20/2009 | 3/20/2009 | Credit Strategies (1) | Cash for Note Termination | N/A | N/A | N/A | N/A | ($3,920,085) |
| 2 | 3/20/2009 | 3/20/2009 | Crusader Fund (1) | Cash for Note Termination | N/A | N/A | N/A | N/A | (3,170,452) |
| 3 | 3/20/2009 | 3/20/2009 | Credit Opportunities Fund (1) | Cash for Note Termination | N/A | N/A | N/A | N/A | (239,321) |
| | | | | | | | | | (7,329,858) |
| **Constructively Fraudulent Asset Transfers** | | | | | | | | | |
| 1 | 1/1/2009 | 3/30/2009 | Credit Opportunities Fund | HFP Asset Funding II | ROCKW 2007-1A | Floating - 08/2024 -B2L - 77426RAA2 | (4,068,729.23) | 31.21 | ($51,269,850) |
| 2 | 1/1/2009 | 3/27/2009 | Credit Strategies Fund | HFP Asset Funding II | Aberdeen Loan Funding Ltd | Preferred Shares Class II | (12,000.00) | 200.00 | (2,400,000) |
| 3 | 1/1/2009 | 3/27/2009 | Credit Strategies Fund | HFP Asset Funding II | REDRI 1A E | Floating - 07/2018 - E - 75686XAA8 | (9,666,716.42) | 24.61 | (2,378,979) |
| 4 | 1/1/2009 | 3/30/2009 | Credit Strategies Fund | HFP Asset Funding II | Greenbriar CLO LTD | Class 2 Preference Shares | (11,000.00) | 131.70 | (1,448,700) |
| 5 | 1/1/2009 | 3/31/2009 | Credit Strategies Fund | HFP Asset Funding II | ROCKW 2007-1A | Floating - 08/2024 -B2L - 77426RAA2 | (4,068,729.23) | 31.21 | (1,269,850) |
| 6 | 1/1/2009 | 4/3/2009 | Credit Strategies Fund | HFP Asset Funding II | Grayson CLO, Ltd. | Class II Preference Shares | (10,000,000.00) | 8.00 | (800,000) |
| 7 | 1/1/2009 | 3/27/2009 | Credit Strategies Fund | HFP Asset Funding II | HEC 2008-4A | Floating - 08/2016 - F2 - 43087TAS1 | (10,000,000.00) | 4.00 | (561,680) |
| 8 | 1/1/2009 | 3/30/2009 | Credit Strategies Fund | HFP Asset Funding II | Armstrong Loan Funding Ltd | Preferred Shares Class II | (10,845.00) | 45.00 | (488,025) |
| 9 | 1/1/2009 | 4/24/2009 | Crusader Fund | HFP Asset Funding II | STRAF 2007-1A | Class 2 Preference Shares | (45,500.00) | 200.00 | (9,100,000) |
| 10 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | Greenbriar CLO LTD | Class 2 Preference Shares | (49,000.00) | 131.70 | (6,453,300) |
| 11 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | Aberdeen Loan Funding Ltd | Preferred Shares Class II | (24,000.00) | 200.00 | (4,800,000) |
| 12 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | CIFC 2006 1A | Floating - 10/2020 - 17178PAD6 | (10,000,000.00) | 27.05 | (2,705,000) |
| 13 | 1/1/2009 | 5/11/2009 | Crusader Fund | HFP Asset Funding II | Grayson CLO, Ltd. | Class II Preference Shares | (10,000,000.00) | 8.00 | (2,600,000) |
| 14 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | STRAF 2007-1A | Floating - 11/2021 - C - 86280AAE7 | (6,100,000.00) | 39.46 | (2,407,060) |
| 15 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | ROCKW 2007-1A A3L | Floating - 08/2024 CS 7742NAD5 | (11,000,000.00) | 21.27 | (2,339,700) |
| 16 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | GCLO 2006-1A | Floating - 11/2021 - D - 389668AA2 | (3,532,638.55) | 28.78 | (1,016,693) |
| 17 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | HEC 2008-4A | Floating - 08/2016 - F2 - 43087TAS1 | (14,140,000.00) | 4.00 | (794,216) |
| 18 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | Armstrong Loan Funding Ltd | Preferred Shares Class II | (14,845.00) | 45.00 | (668,025) |
| 19 | 1/1/2009 | 5/11/2009 | Crusader Fund | HFP Asset Funding II | Eastland CLO Ltd | Preferred Share II | (38,500.00) | 16.70 | (642,950) |
| 20 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | LANDM 2005 - 6A | Floating - 01/2018 - E - N - 51507VAC6 | (2,500,000.00) | 10.00 | (250,000) |
| 21 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | Brentwood CLO Ltd | Class I Preference Shares | (1,200,000.00) | 12.70 | (152,400) |
| 22 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | Eastland CLO Ltd | Preferred Share | (5,000.00) | 16.70 | (83,500) |
| 23 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | MetLife Insurance Company of Connecticut | 7476066 | (10,000,000.00) | 41.07 | (4,106,963) |
| 24 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Prudential Financial, Inc. | V1209710 | (15,000,000.00) | 18.55 | (2,782,908) |
| 25 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | ING-ReliaStar Life Insurance Company | 4002052 | (13,785,000.00) | 19.71 | (2,716,569) |
| 26 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | ReliaStar Life Insurance Company | SC1178782R | (10,000,000.00) | 23.49 | (2,348,990) |
| 27 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Variable Life Insurance Company | ULL203390 | (5,000,000.00) | 38.80 | (1,940,000) |
| 28 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Pruco Life Insurance Company | V1035935 | (6,500,000.00) | 26.21 | (1,703,754) |
| 29 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | AXA Equitable Life Insurance Company | 156202959 | (20,000,000.00) | 6.91 | (1,382,764) |
| 30 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15606787 | (10,000,000.00) | 10.71 | (1,071,430) |
| 31 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15606788 | (10,000,000.00) | 10.55 | (1,055,018) |
| 32 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | American General Life Insurance Company | U10033521L | (5,000,000.00) | 17.24 | (862,008) |
| 33 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Phoenix Home Life Variable Insurance Company | 97517293 | (5,000,000.00) | 13.03 | (651,435) |
| 34 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Life Insurance Company (USA) | 59899534 | (10,000,000.00) | 3.38 | (338,482) |
| 35 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Life Insurance Company (USA) | 59899542 | (10,000,000.00) | 3.38 | (338,482) |
| 36 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Life Insurance Company (USA) | 59899559 | (10,000,000.00) | 3.38 | (338,482) |
| 37 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Life Insurance Company (USA) | 59899567 | (10,000,000.00) | 3.38 | (338,482) |
| 38 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Pruco Life Insurance Company | V2023384 | (10,000,000.00) | 2.62 | (261,780) |
| 39 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | AXA Equitable Life Insurance Company | 155219421 | (55,000,000.00) | 20.14 | (11,076,415) |
| 40 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Pacific Life Insurance Company | VP65118280 | (29,000,000.00) | 37.70 | (10,932,719) |
| 41 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 59827477 | (30,000,000.00) | 22.79 | (6,838,007) |
| 42 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 93625283 | (15,000,000.00) | 19.85 | (2,978,189) |
| 43 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | General American Life Insurance Company/Metlife | 6221114 | (8,250,000.00) | 34.00 | (2,804,915) |
| 44 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 59161588 | (30,000,000.00) | 8.40 | (2,518,922) |
| 45 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 59826206 | (15,000,000.00) | 16.46 | (2,469,734) |
| 46 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Reliastar | NY2043816M | (12,000,000.00) | 19.81 | (2,376,999) |
| 47 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15628198 | (25,000,000.00) | 9.42 | (2,354,694) |
| 48 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203424 | (5,000,000.00) | 46.90 | (2,344,969) |
| 49 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | MetLife Insurance Company of Connecticut | 7459794 | (10,000,000.00) | 22.86 | (2,285,548) |
| 50 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Jefferson Pilot Financial Insurance Company / Lincoln Financial Group | JF5523946 | (5,000,000.00) | 42.23 | (2,111,465) |
| 51 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ReliaStar Life Insurance Company | RL3043896R | (15,000,000.00) | 13.25 | (1,987,383) |
| 52 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Lincoln National Life Insurance Company/Lincoln National Corporation | 7226372 | (10,000,000.00) | 19.08 | (1,907,598) |
| 53 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Reliastar | 3058295D | (15,000,000.00) | 11.93 | (1,789,260) |
| 54 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Phoenix Life Insurance Company | 97513664 | (10,000,000.00) | 17.36 | (1,736,171) |
| 55 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | New York Life Insurance And Annuity Corporation | 56734811 | (5,000,000.00) | 33.86 | (1,692,764) |
| 56 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Occidental Life Insurance Company | 60054962 | (5,000,000.00) | 32.48 | (1,623,764) |
| 57 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | New York Life Insurance And Annuity Corporation | 56734713 | (5,000,000.00) | 31.86 | (1,592,959) |
| 58 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Life Insurance Company | 60126414 | (5,000,000.00) | 28.80 | (1,439,908) |
| 59 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Life Insurance Company | 60126564 | (5,000,000.00) | 28.80 | (1,439,789) |
| 60 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15628201 | (15,000,000.00) | 9.42 | (1,412,520) |
| 61 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15628202 | (15,000,000.00) | 9.42 | (1,412,520) |
| 62 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15628203 | (15,000,000.00) | 9.42 | (1,412,520) |
| 63 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Pacific Life Insurance Company | VF51469890 | (5,000,000.00) | 27.48 | (1,373,984) |
| 64 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Security Life of Denver Insurance Company | 1601989 | (10,000,000.01) | 13.38 | (1,337,811) |
| 65 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Pacific Life Insurance Company | VF51402890 | (5,000,000.00) | 26.67 | (1,333,393) |
| 66 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | MetLife Insurance Company of Connecticut | 7469694 | (10,000,000.00) | 13.32 | (1,332,217) |
| 67 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | ULL203391 | (5,000,000.00) | 25.34 | (1,266,922) |
| 68 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 911627977 | (6,000,000.01) | 20.71 | (1,242,744) |
| 69 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Life Insurance Company | 65022904 | (5,000,000.00) | 24.29 | (1,214,320) |

Economic Constructively/Constructively Fraudulent Transfers After December 31, 2008

| Number | Trade Date | Settlement Date | Counterparty | Description | Issuer | Asset Name | Principal | Price | Amount |
|---|---|---|---|---|---|---|---|---|---|
| 70 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Protective Life Insurance Company | FL0632539 | (5,000,000.00) | 21.96 | (1,097,885) |
| 71 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | United States Life Insurance Company | WMU0000017 | (5,000,000.01) | 21.91 | (1,095,422) |
| 72 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | United States Life Insurance Company | WMU0003030 | (5,000,000.01) | 21.91 | (1,095,422) |
| 73 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Pacific Life Insurance Company | VF51397000 | (5,000,000.01) | 21.79 | (1,089,376) |
| 74 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Security Life of Denver Insurance Company | 1607720 | (5,000,000.00) | 20.88 | (1,043,956) |
| 75 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL 001203221 | (5,000,000.00) | 20.74 | (1,036,955) |
| 76 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL 001203222 | (5,000,000.00) | 20.74 | (1,036,955) |
| 77 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 911627972 | (5,000,000.01) | 20.71 | (1,035,504) |
| 78 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Jefferson Pilot Life Insurance Company / Lincoln Financial Group | JG5458535 | (10,000,000.00) | 10.27 | (1,027,128) |
| 79 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL1200433 | (5,000,000.00) | 20.47 | (1,023,624) |
| 80 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Security Life of Denver Insurance Company | 1602938 | (5,000,000.01) | 19.97 | (998,459) |
| 81 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203308 | (5,000,000.00) | 19.26 | (963,247) |
| 82 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203309 | (5,000,000.00) | 19.26 | (963,247) |
| 83 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203310 | (5,000,000.00) | 19.26 | (963,247) |
| 84 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203311 | (5,000,000.00) | 19.26 | (963,247) |
| 85 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Lincoln Benefit Life | 01N1282082 | (5,000,000.00) | 17.74 | (887,192) |
| 86 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 1202839 | (10,371,931.00) | 8.42 | (873,104) |
| 87 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 1202840 | (10,371,931.00) | 8.42 | (873,104) |
| 88 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Phoenix Life Insurance Company | 97303903 | (5,000,000.01) | 16.94 | (846,842) |
| 89 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL 001202678 | (5,000,000.00) | 15.92 | (795,987) |
| 90 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | American General Life Insurance Company | UM0000793L | (4,000,000.00) | 18.59 | (743,702) |
| 91 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 59816744 | (5,000,000.00) | 14.74 | (736,811) |
| 92 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Occidental Life Insurance Company | 60131031 | (5,000,000.01) | 14.12 | (705,866) |
| 93 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Phoenix Life Insurance Company | 97304106 | (3,250,000.01) | 20.95 | (680,774) |
| 94 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL 001203224 | (3,000,000.00) | 20.73 | (622,001) |
| 95 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 610001668 | (5,000,000.00) | 12.18 | (608,801) |
| 96 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 93739043 | (2,500,000.00) | 22.40 | (559,972) |
| 97 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1202463 | (5,000,000.00) | 11.13 | (556,494) |
| 98 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203128 | (5,000,000.00) | 11.13 | (556,494) |
| 99 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203203 | (5,000,000.00) | 11.13 | (556,494) |
| 100 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203204 | (5,000,000.00) | 11.13 | (556,494) |
| 101 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 911627975 | (2,500,000.01) | 20.69 | (517,321) |
| 102 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 911627976 | (2,500,000.01) | 20.69 | (517,321) |
| 103 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL1421316 | (5,000,000.00) | 9.95 | (497,400) |
| 104 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Lincoln National Life Insurance Company | 7217150 | (3,500,000.01) | 13.89 | (486,322) |
| 105 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Lincoln National Life Insurance Company | 7217252 | (3,500,000.00) | 13.89 | (486,322) |
| 106 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Life Insurance Company | 60148435 | (5,000,000.00) | 4.44 | (222,137) |
| 107 | 1/1/2009 | 3/31/2009 | Credit Opportunities Fund | Highland CDO Holding Co | WITEH 2006-4A | Floating - 01/2020 -96524UAD0 | (2,500,000.00) | 32.49 | (812,250) |
| 108 | 1/1/2009 | 3/31/2009 | Credit Opportunities Fund | Highland CDO Holding Co | STAMC 2007-1A B2L | Class B2L - 85430AAA6 | (3,000,000.00) | 24.15 | (724,500) |
| 109 | 1/1/2009 | 3/31/2009 | Credit Opportunities Fund | Highland CDO Holding Co | SYMP 2007-4A E | Floating - 07/2021 - 871556AF3 | (2,000,000.00) | 24.98 | (499,600) |
| 110 | 1/1/2009 | 3/27/2009 | Credit Strategies Fund | Highland CDO Holding Co | STRAF 2007-1A | Floating - 11/2021 - D - 86280AAF4 | (2,600,000.00) | 35.41 | (920,660) |
| 111 | 1/1/2009 | 3/27/2009 | Crusader Fund | Highland CDO Holding Co | STRAF 2007-1A | Floating - 11/2021 - C - 86280AAE7 | (6,200,000.00) | 39.46 | (2,446,520) |
| 112 | 1/1/2009 | 3/27/2009 | Crusader Fund | Highland CDO Holding Co | MOCLO 2005 - 1A | Floating - 01/2020 - A3L - 619548AG5 | (2,000,000.00) | 34.05 | (681,000) |
| 113 | 1/1/2009 | 3/27/2009 | Crusader Fund | Highland CDO Holding Co | AVCLO 2006-3A A3L | Floating - 07/2018 - 05357TAD6 | (1,470,000.00) | 36.33 | (534,051) |
| 114 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate - TRS | HE Capital KR, LLC | Common | (1,413,487.00) | 0.83 | (527,937) |
| 115 | 1/1/2009 | 3/31/2009 | Credit Strategies Fund | Highland Financial Real Estate Corp | HE 2425 West Loop, LLC | Common | (7,429,500.00) | 0.72 | (2,407,158) |
| 116 | 1/1/2009 | 3/31/2009 | Credit Strategies Fund | Highland Financial Real Estate Corp | HE 1001 West Loop, LLC | Common | (6,337,500.00) | 0.08 | (228,150) |
| 117 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | HE Sugar Land Project, LLC | Common | (14,862,500.00) | 0.63 | (4,213,519) |
| 118 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | NBREC Highland Village, L.P. | Partnership Interest | (1,683,000.00) | 1.51 | (1,143,599) |
| 119 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | HCREA Lockhill Retail, L.P. | Partnership Interest | (1,405,000.00) | 1.09 | (689,153) |
| 120 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | HCREA Nolen Drive, L.P. | Partnership Interest | (2,370,000.00) | 0.59 | (629,235) |
| 121 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | HCREA Trimarchi of North Dallas, L.P. | Partnership Interest | (3,000,000.00) | 0.42 | (567,000) |
| 122 | 1/2/2009 | 4/9/2009 | Crusader Fund | Highland CDO Holding Co | Ginn LA Conduit Lender, Inc. | First Lien Tranche B Term Loan | (14,163,040.07) | 12.33 | (1,746,303) |
| 123 | 1/2/2009 | 4/9/2009 | Crusader Fund | Highland CDO Holding Co | Ginn LA Conduit Lender, Inc. | First Lien Tranche A Credit-Linked Deposit | (6,607,016.14) | 12.33 | (814,645) |
| 124 | 3/18/2009 | 3/18/2009 | HCM | Highland Financial Real Estate - TRS | HE Mezz KR, LLC | Mezzanine | (1,761,173.95) | 29.01 | (229,912) |
| Total Constructively Fraudulent Asset Transfers | | | | | | | | | ($195,644,595) |
| | | | | | | | | | |
| Total Constructively Fraudulent Transfers | | | | | | | | | ($202,974,195) |

Note:
(1) Due to insufficient documentation, I was unable to determine when the cash transfers were actually made, so I used the date of the HFP Notes Termination, Settlement and Release Agreement (PWC-HCM0026158-PWC-HCM00026174).

**UPDATED 4/18/2013**

Exhibit C – Constructively/Actually Fraudulent Transfers After October 31, 2008

| Number | Trade Date | Settlement Date | Counterparty | Description | Issuer | Asset Name | Principal | Price | Amount |
|---|---|---|---|---|---|---|---|---|---|
| **Constructively Fraudulent Cash Transfers** | | | | | | | | | |
| 1 | 11/6/2008 | 11/6/2008 | Compass Bank | HCMLP LOAN REPAYMENT (PARTIAL) | N/A | N/A | N/A | N/A | ($8,000,000) |
| 2 | 12/10/2008 | 12/10/2008 | Highland Capital Management | Contribution to CDO HOLDCO | N/A | N/A | N/A | N/A | (3,700,000) |
| 3 | 12/19/2008 | 12/19/2008 | Various (1) | Note Paydowns | N/A | N/A | N/A | N/A | (1,166,970) |
| 4 | 3/20/2009 | 3/20/2009 | Credit Strategies (2) | Cash for Note Termination | N/A | N/A | N/A | N/A | (3,920,085) |
| 5 | 3/20/2009 | 3/20/2009 | Crusader Fund (2) | Cash for Note Termination | N/A | N/A | N/A | N/A | (3,170,452) |
| 6 | 3/20/2009 | 3/20/2009 | Credit Opportunities Fund (2) | Cash for Note Termination | N/A | N/A | N/A | N/A | (239,321) |
| Total Constructively Fraudulent Cash Transfers | | | | | | | | | (20,196,828) |
| | | | | | | | | | |
| **Constructively Fraudulent Asset Transfers** | | | | | | | | | |
| 1 | 1/1/2009 | 3/30/2009 | Credit Opportunities Fund | HFP Asset Funding II | ROCKW 2007-1A | Floating - 08/2024 -B2L - 77426RAA2 | (4,068,729.23) | 31.21 | (1,269,850) |
| 2 | 1/1/2009 | 3/27/2009 | Credit Strategies Fund | HFP Asset Funding II | Aberdeen Loan Funding Ltd | Preferred Shares Class II | (12,000.00) | 200.00 | (2,400,000) |
| 3 | 1/1/2009 | 3/27/2009 | Credit Strategies Fund | HFP Asset Funding II | REDRI 1A E | Floating - 07/2018 - E - 75686XAA8 | (9,666,716.42) | 24.61 | (2,378,979) |
| 4 | 1/1/2009 | 3/31/2009 | Credit Strategies Fund | HFP Asset Funding II | Greenbriar CLO LTD | Class 2 Preference Shares | (11,000.00) | 131.70 | (1,448,700) |
| 5 | 1/1/2009 | 3/31/2009 | Credit Strategies Fund | HFP Asset Funding II | ROCKW 2007-1A | Floating - 08/2024 -B2L - 77426RAA2 | (4,068,729.23) | 31.21 | (1,269,850) |
| 6 | 1/1/2009 | 4/3/2009 | Credit Strategies Fund | HFP Asset Funding II | Grayson CLO, Ltd. | Class II Preference Shares | (10,000,000.00) | 8.00 | (800,000) |
| 7 | 1/1/2009 | 3/27/2009 | Credit Strategies Fund | HFP Asset Funding II | HEC 2008-4A | Floating - 08/2016 - F2 - 43087TAS1 | (10,000,000.00) | 4.00 | (561,680) |
| 8 | 1/1/2009 | 3/30/2009 | Credit Strategies Fund | HFP Asset Funding II | Armstrong Loan Funding Ltd | Preferred Shares Class II | (10,845.00) | 45.00 | (488,025) |
| 9 | 1/1/2009 | 4/24/2009 | Crusader Fund | HFP Asset Funding II | STRAF 2007-1A | Class 2 Preference Shares | (45,500.00) | 200.00 | (9,100,000) |
| 10 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | Greenbriar CLO LTD | Class 2 Preference Shares | (49,000.00) | 131.70 | (6,453,300) |
| 11 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | Aberdeen Loan Funding Ltd | Preferred Shares Class II | (24,000.00) | 200.00 | (4,800,000) |
| 12 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | CIFC 2006 1A | Floating - 10/2020 - 17178PAD6 | (10,000,000.00) | 27.05 | (2,705,000) |
| 13 | 1/1/2009 | 5/11/2009 | Crusader Fund | HFP Asset Funding II | Grayson CLO, Ltd. | Class II Preference Shares | (32,500,000.00) | 8.00 | (2,600,000) |
| 14 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | STRAF 2007-1A | Floating - 11/2021 - C - 86280AAE7 | (6,100,000.00) | 39.46 | (2,407,060) |
| 15 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | ROCKW 2007-1A A3L | Floating - 08/2024 CS 7742NAD5 | (11,000,000.00) | 21.27 | (2,339,700) |
| 16 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | GCLO 2006-1A | Floating - 11/2021 - D - 38966SAA2 | (3,532,638.55) | 28.78 | (1,016,693) |
| 17 | 1/1/2009 | 3/27/2009 | Crusader Fund | HFP Asset Funding II | HEC 2008-4A | Floating - 08/2016 - F2 - 43087TAS1 | (14,140,000.00) | 4.00 | (794,216) |
| 18 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | Armstrong Loan Funding Ltd | Preferred Shares Class II | (14,845.00) | 45.00 | (668,025) |
| 19 | 1/1/2009 | 5/11/2009 | Crusader Fund | HFP Asset Funding II | Eastland CLO Ltd | Preferred Share II | (38,500.00) | 16.70 | (642,950) |
| 20 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | LANDM 2005 - 6A | Floating - 01/2018 - IN - 51507VAC6 | (2,500,000.00) | 10.00 | (250,000) |
| 21 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | Brentwood CLO Ltd | Class I Preference Shares | (1,200,000.00) | 12.70 | (152,400) |
| 22 | 1/1/2009 | 3/30/2009 | Crusader Fund | HFP Asset Funding II | Eastland CLO Ltd | Preferred Share | (5,000.00) | 16.70 | (83,500) |
| 23 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | MetLife Insurance Company of Connecticut | 7476066 | (10,000,000.00) | 41.07 | (4,106,963) |
| 24 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Prudential Financial, Inc. | V1209710 | (15,000,000.00) | 18.55 | (2,782,908) |
| 25 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | ING-ReliaStar Life Insurance Company | 4002052 | (13,785,000.00) | 19.71 | (2,716,569) |
| 26 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | ReliaStar Life Insurance Company | SC1178782R | (10,000,000.00) | 23.49 | (2,348,990) |
| 27 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL1203390 | (5,000,000.00) | 38.80 | (1,940,000) |
| 28 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Pruco Life Insurance Company | V1035935 | (6,500,000.00) | 26.21 | (1,703,754) |
| 29 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | AXA Equitable Life Insurance Company | 156202959 | (20,000,000.00) | 6.91 | (1,382,764) |
| 30 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15606787 | (10,000,000.00) | 10.71 | (1,071,430) |
| 31 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15606788 | (10,000,000.00) | 10.55 | (1,055,018) |
| 32 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | American General Life Insurance Company | U10033521L | (5,000,000.00) | 17.24 | (862,008) |
| 33 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Phoenix Home Life Variable Insurance Company | 97517293 | (5,000,000.00) | 13.03 | (651,435) |
| 34 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Life Insurance Company (USA) | 59899534 | (10,000,000.00) | 3.38 | (338,482) |
| 35 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Life Insurance Company (USA) | 59899542 | (10,000,000.00) | 3.38 | (338,482) |
| 36 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Life Insurance Company (USA) | 59899559 | (10,000,000.00) | 3.38 | (338,482) |
| 37 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | John Hancock Life Insurance Company (USA) | 59899567 | (10,000,000.00) | 3.38 | (338,482) |
| 38 | 1/1/2009 | 6/2/2009 | Highland Credit Opportunities Holding Corp | HFP Asset Funding III | Pruco Life Insurance Company | V2023384 | (10,000,000.00) | 2.62 | (261,700) |
| 39 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | AXA Equitable Life Insurance Company | 155219421 | (55,000,000.00) | 20.14 | (11,076,415) |
| 40 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Pacific Life Insurance Company | VP65118280 | (29,000,000.00) | 37.70 | (10,932,719) |
| 41 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 59827477 | (30,000,000.00) | 22.79 | (6,838,007) |
| 42 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 93625283 | (15,000,000.00) | 19.85 | (2,978,189) |
| 43 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | General American Life Insurance Company/Metlife | 6221114 | (8,250,000.00) | 34.00 | (2,804,915) |
| 44 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 59161588 | (30,000,000.00) | 8.40 | (2,518,922) |
| 45 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 59826206 | (15,000,000.00) | 16.46 | (2,469,734) |
| 46 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Reliastar | NY2043816M | (12,000,000.00) | 19.81 | (2,376,999) |
| 47 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15628198 | (25,000,000.00) | 9.42 | (2,354,694) |
| 48 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203424 | (5,000,000.00) | 46.90 | (2,344,969) |
| 49 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | MetLife Insurance Company of Connecticut | 7459794 | (10,000,000.00) | 22.86 | (2,285,548) |
| 50 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Jefferson Pilot Financial Insurance Company / Lincoln Financial Group | JF5523946 | (5,000,000.00) | 42.23 | (2,111,465) |
| 51 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Reliance Insurance Company | RL3043896R | (15,000,000.00) | 13.25 | (1,987,383) |
| 52 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Lincoln National Life Insurance Company/Lincoln National Corporation | 7226372 | (10,000,000.00) | 19.08 | (1,907,598) |
| 53 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Reliastar | 305829SD | (15,000,000.00) | 11.93 | (1,789,260) |
| 54 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Phoenix Life Insurance Company | 97513664 | (10,000,000.00) | 17.36 | (1,736,171) |
| 55 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | New York Life Insurance And Annuity Corporation | 56734811 | (5,000,000.00) | 33.86 | (1,692,764) |
| 56 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Occidental Life Insurance Company | 60054962 | (5,000,000.00) | 32.48 | (1,623,764) |
| 57 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | New York Life Insurance And Annuity Corporation | 56734713 | (5,000,000.00) | 31.86 | (1,592,959) |
| 58 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Life Insurance Company | 60126414 | (5,000,000.00) | 28.80 | (1,439,908) |
| 59 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Life Insurance Company | 60126564 | (5,000,000.00) | 28.80 | (1,439,789) |
| 60 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15628201 | (15,000,000.00) | 9.42 | (1,412,520) |

**UPDATED 4/18/2013**

| Number | Trade Date | Settlement Date | Counterparty | Description | Issuer | Asset Name | Principal | Price | Amount |
|---|---|---|---|---|---|---|---|---|---|
| 61 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15628202 | (15,000,000.00) | 9.42 | (1,412,520) |
| 62 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Massachusetts Mutual Life Insurance Company | 15628203 | (15,000,000.00) | 9.42 | (1,412,520) |
| 63 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Pacific Life Insurance Company | VF51469890 | (5,000,000.00) | 27.48 | (1,373,984) |
| 64 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Security Life Of Denver Insurance Company | 1601989 | (10,000,000.01) | 13.38 | (1,337,811) |
| 65 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Pacific Life Insurance Company | VF51402890 | (5,000,000.00) | 26.67 | (1,333,393) |
| 66 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | MetLife Insurance Company of Connecticut | 7469694 | (10,000,000.00) | 13.32 | (1,332,217) |
| 67 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL1203391 | (5,000,000.00) | 25.34 | (1,266,922) |
| 68 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 911627977 | (6,000,000.01) | 20.71 | (1,242,744) |
| 69 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Life Insurance Company | 65022904 | (5,000,000.00) | 24.29 | (1,214,620) |
| 70 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Protective Life Insurance Company | FL0032539 | (5,000,000.00) | 21.96 | (1,097,885) |
| 71 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | United States Life Insurance Company | WMU0000017 | (5,000,000.01) | 21.91 | (1,095,422) |
| 72 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | United States Life Insurance Company | WMU0003030 | (5,000,000.01) | 21.91 | (1,095,422) |
| 73 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Pacific Life Insurance Company | VF51397000 | (5,000,000.01) | 21.79 | (1,089,376) |
| 74 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Security Life of Denver Insurance Company | 1607720 | (5,000,000.01) | 20.88 | (1,043,956) |
| 75 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL 001203221 | (5,000,000.00) | 20.74 | (1,036,955) |
| 76 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL 001203222 | (5,000,000.00) | 20.74 | (1,036,955) |
| 77 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 911627972 | (5,000,000.01) | 20.71 | (1,035,504) |
| 78 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Jefferson Pilot Life Insurance Company / Lincoln Financial Group | JG5458535 | (10,000,000.00) | 10.27 | (1,027,128) |
| 79 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL1200433 | (5,000,000.00) | 20.47 | (1,023,624) |
| 80 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | ING Security Life of Denver Insurance Company | 1602938 | (5,000,000.01) | 19.97 | (998,459) |
| 81 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203308 | (5,000,000.00) | 19.26 | (963,247) |
| 82 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203309 | (5,000,000.00) | 19.26 | (963,247) |
| 83 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203310 | (5,000,000.00) | 19.26 | (963,247) |
| 84 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203311 | (5,000,000.00) | 19.26 | (963,247) |
| 85 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Lincoln Benefit Life | 01N1282082 | (5,000,000.00) | 17.74 | (887,192) |
| 86 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 1202839 | (10,371,931.00) | 8.42 | (873,104) |
| 87 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 1202840 | (10,371,931.00) | 8.42 | (873,104) |
| 88 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Phoenix Life Insurance Company | 97303903 | (5,000,000.01) | 16.94 | (846,842) |
| 89 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL 001202678 | (5,000,000.00) | 15.92 | (795,987) |
| 90 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | American General Life Insurance Company | UM0000793L | (4,000,000.00) | 18.59 | (743,702) |
| 91 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 59816744 | (5,000,000.00) | 14.74 | (736,811) |
| 92 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Occidental Life Insurance Company | 60131031 | (5,000,000.01) | 14.12 | (705,866) |
| 93 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Phoenix Life Insurance Company | 97304106 | (3,250,000.01) | 20.95 | (680,774) |
| 94 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL 001203224 | (3,000,000.00) | 20.73 | (622,001) |
| 95 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 610001668 | (5,000,000.00) | 12.18 | (608,801) |
| 96 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Life Insurance Company | 93739043 | (2,500,000.00) | 22.40 | (559,972) |
| 97 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1202463 | (5,000,000.00) | 11.13 | (556,494) |
| 98 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203128 | (5,000,000.00) | 11.13 | (556,494) |
| 99 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203203 | (5,000,000.00) | 11.13 | (556,494) |
| 100 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | 1203204 | (5,000,000.00) | 11.13 | (556,494) |
| 101 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 911627975 | (2,500,000.01) | 20.69 | (517,321) |
| 102 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Security Life Of Denver Insurance Company | 911627976 | (2,500,000.01) | 20.69 | (517,321) |
| 103 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | John Hancock Variable Life Insurance Company | UL1421316 | (5,000,000.00) | 9.95 | (497,400) |
| 104 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Lincoln National Life Insurance Company | 7217150 | (3,500,000.01) | 13.89 | (486,322) |
| 105 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Lincoln National Life Insurance Company | 7217252 | (3,500,000.01) | 13.89 | (486,322) |
| 106 | 1/1/2009 | 6/2/2009 | Highland Crusader Holding Corporation | HFP Asset Funding III | Transamerica Life Insurance Company | 60148435 | (5,000,000.00) | 4.44 | (222,137) |
| 107 | 1/1/2009 | 3/31/2009 | Credit Opportunities Fund | Highland CDO Holding Co | WITEH 2006-4A | Floating - 01/2020 -96524UAD0 | (2,500,000.00) | 32.49 | (812,250) |
| 108 | 1/1/2009 | 3/31/2009 | Credit Opportunities Fund | Highland CDO Holding Co | STAMC 2007-1A B2L | Class B2L - 85430AAA6 | (3,000,000.00) | 24.15 | (724,500) |
| 109 | 1/1/2009 | 3/31/2009 | Credit Opportunities Fund | Highland CDO Holding Co | SYMP 2007-4A E | Floating - 07/2021 - 871556AF3 | (2,000,000.00) | 24.98 | (499,600) |
| 110 | 1/1/2009 | 3/27/2009 | Credit Strategies Fund | Highland CDO Holding Co | STRAF 2007-1A | Floating - 11/2021 - D - 86280AAF4 | (2,600,000.00) | 35.43 | (920,660) |
| 111 | 1/1/2009 | 3/27/2009 | Crusader Fund | Highland CDO Holding Co | STRAF 2007-1A | Floating - 11/2021 - C - 86280AAE7 | (6,200,000.00) | 39.46 | (2,446,520) |
| 112 | 1/1/2009 | 3/27/2009 | Crusader Fund | Highland CDO Holding Co | MOCLO 2005 - 1A | Floating - 01/2020 - A3L - 619548AG5 | (2,000,000.00) | 34.05 | (681,000) |
| 113 | 1/1/2009 | 3/27/2009 | Crusader Fund | Highland CDO Holding Co | AVCLO 2006-3A A3L | Floating - 07/2018 - 05357TAD6 | (1,470,000.00) | 36.33 | (534,051) |
| 114 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate - TRS | HE Capital KR, LLC | Common | (1,413,487.00) | 0.83 | (527,937) |
| 115 | 1/1/2009 | 3/31/2009 | Credit Strategies Fund | Highland Financial Real Estate Corp | HE 2425 West Loop, LLC | Common | (7,429,500.00) | 0.72 | (2,407,158) |
| 116 | 1/1/2009 | 3/31/2009 | Credit Strategies Fund | Highland Financial Real Estate Corp | HE 1001 West Loop, LLC | Common | (6,337,500.00) | 0.08 | (228,150) |
| 117 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | HE Sugar Land Project, LLC | Common | (14,862,500.00) | 0.63 | (4,213,519) |
| 118 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | NBREC Highland Village, L.P. | Partnership Interest | (1,683,000.00) | 1.51 | (1,143,599) |
| 119 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | HCREA Lockhill Retail, L.P. | Partnership Interest | (1,405,000.00) | 1.09 | (689,153) |
| 120 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | HCREA Nolen Drive, L.P. | Partnership Interest | (2,370,000.00) | 0.59 | (629,235) |
| 121 | 1/1/2009 | 3/31/2009 | HCM | Highland Financial Real Estate Corp | HCREA Trimarch of North Dallas, L.P. | Partnership Interest | (3,000,000.00) | 0.42 | (567,000) |
| 122 | 1/2/2009 | 4/9/2009 | Crusader Fund | Highland CDO Holding Co | Ginn LA Conduit Lender, L.L.C. | First Lien Tranche B Term Loan | (14,163,040.17) | 12.33 | (1,746,303) |
| 123 | 1/2/2009 | 4/9/2009 | Crusader Fund | Highland CDO Holding Co | Ginn LA Conduit Lender, Inc. | First Lien Tranche A Credit-Linked Deposit | (6,607,016.14) | 12.33 | (814,645) |
| 124 | 3/18/2009 | 3/18/2009 | HCM | Highland Financial Real Estate - TRS | HE Mezz KR, LLC | Mezzanine | (1,761,173.95) | 29.01 | (229,912) |
| Total Constructively Fraudulent Asset Transfers | | | | | | | | | ($195,644,337) |
| | | | | | | | | | |
| Total Constructively Fraudulent Transfers | | | | | | | | | ($215,841,165) |

Notes:
(1) $70,174 was transferred to HCM, $67,222 was transferred to CDO Fund, $107,148 was transferred to Credit Strategies, $373,170 was transferred to Crusader Fund, $113,753 was transferred to Highland Credit Opportunities CDO and $435,503 was transferred to Highland Crusader Holding Corporation.
(2) Due to insufficient documentation, I was unable to determine when the cash transfers were actually made, so I used the date of the HFP Notes Termination, Settlement and Release Agreement (PWC-HCM0026158-PWC-HCM00026174).

CDO Fund Potential Constructively Fraudulent Transfers

Exhibit 3

| Number | Trade Date | Settlement Date | Counterparty | Description | Issuer | Asset Name | Principal | Price | Amount |
|---|---|---|---|---|---|---|---|---|---|
| **Potential Constructively Fraudulent Cash Transfers** | | | | | | | | | |
| 1 | 11/4/2008 | 11/4/2008 | HCM - HFP Asset Funding II | CDO Fund - CLO Trade True Up | N/A | N/A | N/A | N/A | ($309,698) |
| 2 | 12/15/2008 | 12/15/2008 | HCM - CLO Value Master Fund | Return of Overpayment on Pre-Funded Trades | N/A | N/A | N/A | N/A | (2,243,282) |
| Total Potential Constructively Fraudulent Cash Transfers | | | | | | | | | (2,552,980) |
| | | | | | | | | | |
| **Potential Constructively Fraudulent Asset Transfers** | | | | | | | | | |
| 1 | 12/22/2008 | 1/1/2009 | HCM | Highland CDO Fund - Repo JPM | PAMCO 1998-1A | 7.470% - 05/2015 - B1 - 69763NAB7 | (11,876,672.44) | 25.26 | ($3,147,865) |
| 2 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | ROCKW 2006-1A | Floating - 08/2021 - A2L - 774262AC3 | (17,000,000.00) | 20.00 | (3,470,766) |
| 3 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | SHINN 2006-1A | Floating - 07/2018 - C - 824612AF2 | (10,000,000.00) | 25.00 | (2,591,068) |
| 4 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | GULFS 2007-1A | Floating - 6/2021-C-40256VAE8 | (7,000,000.00) | 30.00 | (2,161,308) |
| 5 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | CITC 2007-1A | Floating - 06/2021 - C - 125561AE0 | (10,000,000.00) | 20.00 | (2,094,584) |
| 6 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | WCHC 2007-1A | Floating - 08/2022 - C - 95736XAE8 | (6,500,000.00) | 25.00 | (1,653,466) |
| 7 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | WESTB 2006-1A | Floating - 12/2020 - D - 957160AE4 | (5,000,000.00) | 20.00 | (1,055,167) |
| 8 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | BABSN 2007 - 2A | Floating - 04/2021 - C - 056169AG0 | (5,000,000.00) | 20.00 | (1,045,131) |
| 9 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | INGIM 2007-4A | Floating - 06/2022 - C - 44983TAD7 | (5,000,000.00) | 20.00 | (1,041,901) |
| 10 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Unlevered BONY | BRENT 2006 - 1I | Floating - 02/2022 - D - 107265AK6 | (2,000,000.00) | 15.00 | (315,042) |
| 11 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Unlevered BONY | CIFC 2007-1A | Floating - 05/2021 - B2L - 125472AA8 | (2,000,000.00) | 15.00 | (311,178) |
| 12 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Unlevered BONY | INGIM 2007-4A | Floating - 06/2022 - D - 44983TAE5 | (2,500,000.00) | 15.00 | (403,069) |
| 13 | 12/12/2008 | 12/12/2008 | Highland Cross | Highland CDO Fund - Repo JPM | NAVIG 2007-2A | Floating - 04/2021 - C - 63937HAC2 | (3,000,000.00) | 30.00 | (924,733) |
| Total Potential Constructively Fraudulent Asset Transfers | | | | | | | | | ($20,215,278) |
| | | | | | | | | | |
| Total Potential Constructively Fraudulent Transfers | | | | | | | | | ($22,768,258) |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**                                                      **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|

*Legal Pleadings:*

    Second Amended Complaint dated May 11, 2011

    UBS Interrogatory Pursuant to Request for Disposition of Warehouse Assets

    Interrogatory Response                                       H_1796227

*Deposition Testimony and Exhibits*

    Michael Sherman Colvin

    Sanjeev Karkhanis

    Paul Roos

    Sharif Anbar-Colas

    Todd Travers

    Kevin Dillon

    Scott Kavanaugh

    Murray Grenville

    Gene McQuown

    Mark Okada

    Keith Gimaldi

    William Ludington

    James Dondero

    Brett Howell

    Gabriel Melamed

    Peter Chudy

    Stever Marotta

    Clint Gilchrist

    Frank Waterhouse

    Kevin Latimer

    Gabe Kwentus

    Philip Braner

    Clifford Stoops

    David Bawden

    Harold Huang

    Chris Halpin

    Christopher Ryan

    Patrick Daugherty

    Ryan Grateke

    Jeffrey Mayer

    Paul Kauffman

    Kevin Dillon

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**                                                    **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
| --- | --- | --- |
| Kevin Dowd | | |
| Vaib Kumar | | |
| Kurtis Plumer | | |
| Gibran Mahmud | | |
| Charles McQueary | | |
| Michael Zarrilli | | |
| Patrick Boyce | | |
| Jason Perez | | |
| Richard Metcalf | | |
| Andrew Threadgold | | |
| Tiimothy Leroux | | |

*Expert Reports:*
   Report of Ezra Zask

*Interviews:*
   Vaibhav Kumar
   Harold Huang
   Florian Bita
   Jigar Shah

*Production Documents:*

| Document | Beginning Bates | Ending Bates |
| --- | --- | --- |
| HFP Letter to Investors | CITI 00001 | CITI 00031 |
| Agreements | CITI 00032 | CITI 00056 |
| Agreements | CITI 00057 | CITI 00064 |
| Agreements | CITI 00065 | CITI 00072 |
| HFP Note Documents | CITI 00073 | CITI 00077 |
| HFP Note Documents | CITI 00078 | CITI 00088 |
| Citi Legal Documents | CITI 00089 | CITI 000896 |
| HFP Note Documents | CITI 00097 | CITI 00142 |
| HFP Note Documents | CITI 00143 | CITI 00148 |
| Citi Legal Documents | CITI 00149 | CITI 00149 |
| Citi Legal Documents | CITI 00150 | CITI 00166 |
| Citi Legal Documents | CITI 00167 | CITI 00169 |
| Email Correspondence | CITI 00170 | CITI 00893 |
| August 5 2008 BOD Minutes | D-00557 | |
| Highland Financial Partners, L.P., PricewaterhouseCoopers LLP Report to the Audit Committee of the Board of Directors dated August 5, 2008 | D-00567 | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**                                                         **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| HFP Board of Directors Package dated August 5, 2008 | D-00595 | |
| HFP Condensed Consolidated Financial Statements (Unaudited) dated June 30, 2008 | D-00735 | |
| Amended and Restated Management Agreement dated April 17, 2007 | H 000119 | |
| | H_001304 | H_001316 |
| Highland Credit Opportunities CDO, L.P. Third Amended and Restated Limited Partnership Agreement as of December 31, 2007 | H_0055278 | H_0055325 |
| Note Purchase Agreement dated September 26, 2008 | H_0056026 | H_0056083 |
| CDO Fund Bank of New York Statements | H_0056085 | H_0056223 |
| SOHC Bank of New York Statements | H_0056340 | H_1759103 |
| SOHC Bank Statement | H_0056349 | |
| | H_0056394 | |
| SOHC Bank Statement | H_0056435 | |
| Barclay's Bank Statements | H_0056483 | H_1675977 |
| Credit Suisse Bank Statements | H_0071209 | H_0916001 |
| Written Resolutions of the Sole Director as of HFP Asset Funding III | H_0071535 | H_0071540 |
| Guarantee | H_0071543 | |
| Guarantee | H_0071556 | |
| Geneva - Highland Crusader Master NAV October 31, 2008.xls | H_0072507 | |
| NAV File | H_0072507.xls | |
| Geneva - Highland Crusader Master NAV November 14, 2008.xls | H_0073909 | |
| NAV File | H_0073909.xls | |
| Geneva - Highland Crusader Master NAV November 30, 2008.xls | H_0073930 | |
| NAV File | H_0073930.xls | |
| Geneva - Highland Crusader Master NAV December31, 2008 FINAL.xls | H_0074098 | |
| NAV File | H_0074098.xls | |
| Geneva - Highland Crusader Master FINAL NAV August 31 2008.xlsx | H_0074599 | |
| NAV File | H_0074599.xlsx | |
| Geneva - Highland Crusader Master FINAL NAV September 30 2008.xlsx | H_0075997 | |
| NAV File | H_0075997.xlsx | |
| Geneva - Highland Crusader Master NAV January 31, 2009.xls | H_0076583 | |
| NAV File | H_0076583.xls | |
| Geneva - Highland Crusader Master NAV February 28, 2009.xls | H_0077104 | |
| NAV File | H_0077104.xls | |
| Geneva - Highland Crusader Master NAV March 31, 2009.xls | H_0077593 | |
| NAV File | H_0077593.xls | |
| Geneva - Highland Crusader Master NAV April 30, 2009.xls | H_0078125 | |
| NAV File | H_0078125.xls | |
| Cash Forecast | H_0078438.xls | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**                                         **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
| --- | --- | --- |
| Cash Forecast | H_0078440.xls | |
| Cash Forecast | H_0078462.xls | |
| Cash Forecast | H_0078484.xls | |
| Cash Forecast | H_0078506.xls | |
| Cash Forecast | H_0078514.xls | |
| Cash Forecast | H_0078530.xls | |
| Cash Transaction File | H_0078537 | |
| HFP Cash Forecast | H_0078717 | |
| Cash Forecast | H_0078718.xls | |
| HFP Cash Forecast | H_0078721 | |
| Cash Forecast | H_0078722.xls | |
| Cash Forecast | H_0078725.xls | |
| Cash Forecast | H_0078728.xls | |
| Cash Forecast | H_0078731.xls | |
| Cash Forecast | H_0078735.xlsx | |
| HFP Bank of New York Statements | H_0078746 | H_0078751 |
| Financial Statements | H_0078752.xlsx | |
| Financial Statements | H_0078824.xlsx | |
| Financial Statements | H_0078827.xlsx | |
| Financial Statements | H_0078829 | |
| Financial Statements | H_0078831 | |
| Cash Transaction File | H_0078849 | |
| NAV File | H_0078857.xlsx | |
| Cash Transaction File | H_0078863 | |
| HFP Cash Forecast | H_0078914 | |
| Cash Forecast | H_0078915.xlsx | |
| HFP Cash Forecast | H_0078918 | |
| Cash Forecast | H_0078918.xlsx | |
| Cash Forecast | H_0078924.xlsx | |
| Cash Forecast | H_0078925.xlsx | |
| Cash Forecast | H_0078929.xlsx | |
| Financial Statements | H_0078937.xlsx | |
| Cash Transaction File | H_0078941 | |
| NAV File | H_0078942.xlsx | |
| HFP Book Value File | H_0078962 | |
| NAV File | H_0078962.xlsx | |
| NexBank Statements | H_0078969 | H_0078969 |
| Cash Forecast | H_0079022.xlsx | |

UPDATED 4/18/2013

**Documents Considered and/or Relied Upon**                                                                                         **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Cash Forecast | H_0079025.xlsx | |
| Cash Forecast | H_0079029.xlsx | |
| Cash Forecast | H_0079033.xlsx | |
| HFP Bank of New York Statements | H_0079051 | H_0079053 |
| NexBank Statements | H_0079054 | H_0079054 |
| Cash Transaction File | H_0079055 | |
| Financial Statements | H_0079059.xlsx | |
| Transaction File | H_0081787.xlsx | |
| Cash Forecast | H_0081793.xls | |
| Cash Forecast | H_0081796.xls | |
| Cash Forecast | H_0081799.xls | |
| Cash Forecast | H_0081802.xls | |
| Cash Forecast | H_0081805.xls | |
| Cash Forecast | H_0081806.xls | |
| Cash Forecast | H_0081807.xls | |
| Cash Forecast | H_0081808.xls | |
| Cash Forecast | H_0081810.xls | |
| Cash Forecast | H_0081815.xls | |
| Financial Statements | H_0081820.xls | |
| Cash Forecast | H_0081829.xls | |
| Cash Forecast | H_0081831.xls | |
| Cash Forecast | H_0081834.xls | |
| Cash Forecast | H_0081835.xls | |
| Cash Forecast | H_0081839.xls | |
| Cash Forecast | H_0081841.xls | |
| Cash Forecast | H_0081844.xls | |
| Cash Forecast | H_0081848.xls | |
| Financial Statements | H_0081856.xls | |
| Financial Statements | H_0081938.xls | |
| Financial Statements | H_0081949.xls | |
| Financial Statements | H_0081955.xls | |
| Cash Transaction File | H_0081960 | |
| Cash Forecast | H_0082158.xls | |
| Cash Forecast | H_0082161.xls | |
| Cash Forecast | H_0082164.xls | |
| Cash Forecast | H_0082165.xls | |
| Cash Forecast | H_0082169.xls | |
| Cash Forecast | H_0082174.xls | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**                                                          **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Cash Forecast | H_0082177.xls | |
| Cash Forecast | H_0082181.xls | |
| Cash Transaction File | H_0082194 | |
| Cash Forecast | H_0082377.xls | |
| Cash Forecast | H_0082381.xls | |
| Cash Forecast | H_0082385.xls | |
| HFP Bank of New York Statements | H_0082387 | H_0082391 |
| Financial Statements | H_0082459.xls | |
| Cash Forecast | H_0082471.xls | |
| Cash Forecast | H_0082474.xls | |
| Cash Forecast | H_0082478.xls | |
| Cash Forecast | H_0082484.xls | |
| HFP Bank of New York Statements | H_0082487 | H_0082491 |
| Financial Statements | H_0082496.xls | |
| Financial Statements | H_0082498.xls | |
| Financial Statements | H_0082519.XLS | |
| Financial Statements | H_0082554.XLS | |
| Financial Statements | H_0082624.XLS | |
| Financial Statements | H_0082625.XLS | |
| Financial Statements | H_0082631 | H_0082634 |
| Cash Forecast | H_0082636.xls | |
| Cash Forecast | H_0082640.xls | |
| Cash Forecast | H_0082645.xls | |
| Cash Forecast | H_0082649.xls | |
| Cash Forecast | H_0082653.xls | |
| HFP Bank of New York Statements | H_0082656 | H_0082662 |
| Cash Transaction File | H_0082663 | |
| Financial Statements | H_0082711.XLS | |
| Financial Statements | H_0082712.XLS | |
| Financial Statements | H_0082713.XLS | |
| Financial Statements | H_0082714.XLS | |
| Cash Transaction File | H_0082715 | |
| Cash Transaction File | H_0082716 | |
| HFP Bank of New York Statements | H_0082737 | H_0082740 |
| Financial Statements | H_0082741.XLS | |
| Financial Statements | H_0082826.XLS | |
| NAV File | H_0082832.xls | |
| HFP Book Value File | H_0082836 | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| NAV File | H_0082836.xls | |
| Financial Statements | H_0082842.XLS | |
| Cash Forecast | H_0082845.xls | |
| HFP Cash Forecasts | H_0082848 | |
| Cash Forecast | H_0082848.xls | |
| Cash Forecast | H_0082852.xls | |
| Cash Forecast | H_0082856.xls | |
| Cash Forecast | H_0082860.xls | |
| Cash Forecast | H_0082863.xls | |
| HFP Cash Forecasts | H_0082866 | |
| Cash Forecast | H_0082866.xls | |
| HFP Cash Forecasts | H_0082870 | |
| Cash Forecast | H_0082870.xls | |
| HFP Cash Forecasts | H_0082873 | |
| Cash Forecast | H_0082873.xls | |
| HFP Cash Forecast | H_0082876 | |
| Cash Forecast | H_0082876.xls | |
| Cash Forecast | H_0082879.xls | |
| HFP Cash Forecasts | H_0082883 | |
| Cash Forecast | H_0082884.xls | |
| Cash Forecast | H_0082887.xls | |
| Cash Forecast | H_0082890.xls | |
| Cash Forecast | H_0082893.xls | |
| Cash Forecast | H_0082897.xls | |
| Cash Forecast | H_0082901.xls | |
| Cash Forecast | H_0082904.xls | |
| Cash Forecast | H_0082907.xls | |
| Financial Statements | H_0082910.xlsx | |
| Financial Statements | H_0082915.xlsx | |
| Financial Statements | H_0082946.xlsx | |
| Financial Statements | H_0082949.xlsx | |
| Cash Transaction File | H_0082969 | |
| HFP Book Value File | H_0082970 | |
| NAV File | H_0082970.xlsx | |
| Financial Statements | H_0082974.xlsx | |
| NAV File | H_0082976.xlsx | |
| Cash Forecast | H_0082985.xlsx | |
| Cash Forecast | H_0082988.xlsx | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Cash Forecast | H_0082992.xlsx | |
| Cash Forecast | H_0082996.xlsx | |
| Cash Forecast | H_0083000.xlsx | |
| Cash Forecast | H_0083003.xlsx | |
| Cash Forecast | H_0083006.xlsx | |
| Cash Forecast | H_0083010.xlsx | |
| Financial Statements | H_0083018.xls | |
| Cash Forecast | H_0083021.xls | |
| Cash Forecast | H_0083031.xls | |
| Cash Forecast | H_0083041.xls | |
| Cash Forecast | H_0083051.xls | |
| Cash Forecast | H_0083060.xls | |
| Cash Forecast | H_0083070.xls | |
| Cash Forecast | H_0083080.xls | |
| September 25, 2008 HFP Board of Directors meeting minutes | H_008444 | H_008445 |
| October 7, 2008 HFP Board of Directors meeting minutes | H_008446 | H_008448 |
| October 14, 2008 HFP Board of Directors meeting minutes | H_008449 | H_008450 |
| December 11, 2008 HFP Board of Directors meeting minutes | H_008458 | |
| HFP Board of Directors meeting minutes dated January 16, 2009 | H_008464 | |
| March 16, 2009 HFP Board of Directors meeting minutes | H_008491 | |
| Cash Forecast | H_0085350.xls | |
| Cash Forecast | H_0085360.xls | |
| Cash Forecast | H_0085370.xls | |
| Cash Forecast | H_0085380.xls | |
| Cash Forecast | H_0085389.xls | |
| Financial Statements | H_0085393.xls | |
| Cash Forecast | H_0085407.xls | |
| Financial Statements | H_0085473.xls | |
| Financial Statements | H_0085484.xls | |
| Financial Statements | H_0085514.xls | |
| Financial Statements | H_0085554.xls | |
| Cash Forecast | H_0085558.xls | |
| Cash Forecast | H_0085576.xls | |
| Cash Forecast | H_0085593.xls | |
| Financial Statements | H_0085673.xls | |
| Cash Forecast | H_0085676.xls | |
| Cash Forecast | H_0085691.xls | |
| Cash Forecast | H_0085706.xls | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Cash Forecast | H_0085723.xls | |
| Cash Forecast | H_0085740.xls | |
| Cash Forecast | H_0085757.xls | |
| Financial Statements | H_0085856.xls | |
| Cash Forecast | H_0085859.xls | |
| Cash Forecast | H_0085869.xls | |
| Cash Forecast | H_0085879.xls | |
| Cash Forecast | H_0085889.xls | |
| | H_0086327 | |
| Financial Statements | H_0086330 | |
| Financial Statements | H_0086332.xls | |
| Financial Statements | H_0086335.xls | |
| Financial Statements | H_0086338.xls | |
| Deutsche Bank Statements | H_008724 | H_011886 |
| Wachovia Statements | H_008726 | H_011824 |
| Credit Suisse Bank Statements | H_008736 | H_016352 |
| JPMorgan Statements | H_008738 | H_011902 |
| NexBank Statements | H_008740 | |
| Morgan Stanley Statements | H_008762 | H_008764 |
| CIBC Bank Statements | H_008765 | H_011892 |
| Cash Transaction File | H_0087714 | |
| Financial Statements | H_0087906.xlsx | |
| Financial Statements | H_0087952.xlsx | |
| NexBank Statements | H_0087980 | H_0087980 |
| Financial Statements | H_0087981 | H_0087984 |
| Cash Transaction File | H_0087985 | |
| SOHC Cash Transaction file | H_0087985 | |
| Bank of New York Statements | H_008800 | H_011909 |
| Knox Warehouse Valuation | H_0088012 | H_0088018 |
| Financial Statements | H_0088021.xlsx | |
| Goldman Sachs Statements | H_008805 | H_011730 |
| GE Bank Statements | H_008824 | H_008824 |
| Knox Warehouse Valuation | H_0088365 | H_0088371 |
| Financial Statements | H_0088408.xlsx | |
| 12/31/2008 Knox Warehouse Liability | H_0088449 | |
| Financial Statements | H_0088455 | H_0088458 |
| Financial Statements | H_0088466.xlsx | |
| Financial Statements | H_0088486.xlsx | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Financial Statements | H_0088529.xlsx | |
| Financial Statements | H_0088555.xlsx | |
| Financial Statements | H_0088566.xlsx | |
| Financial Statements | H_0088594.xlsx | |
| Transaction File | H_0088609.xlsx | |
| Presentation | H_0088610 | H_0088621 |
| Morgan Stanley Statements | H_008927 | H_008929 |
| Citi Statements | H_008949 | H_011913 |
| Lehman Statements | H_008962 | H_011904 |
| GE Bank Statements | H_009058 | H_009058 |
| BNP Paribas Bank Statements | H_009059 | H_011898 |
| Financial Statements | H_0091104.xlsx | |
| Financial Statements | H_0091129.xlsx | |
| Transaction File | H_0091151.xlsx | |
| Cash Transaction File | H_0091177 | |
| SOHC monthly balance sheets | H_0092015 | |
| Financial Statements | H_0092015.xlsx | |
| Financial Statements | H_0092030.xlsx | |
| Transaction File | H_0092047.xlsx | |
| Financial Statements | H_0092048 | |
| Trial Balance | H_0092048.xlsx | |
| Financial Statements | H_0092059.xlsx | |
| Transaction File | H_0092079.xlsx | |
| Cash Transaction File | H_0092094 | |
| Financial Statements | H_0092252.xlsx | |
| Financial Statements | H_0092260.xlsx | |
| Transaction File | H_0092277.xlsx | |
| NexBank Statements | H_0092278 | H_0092278 |
| Financial Statements | H_0092279 | H_0092282 |
| Morgan Stanley Statements | H_0092285 | H_0092286 |
| Financial Statements | H_0092299.xls | |
| Merrill Lynch Statements | H_009259 | |
| Cash Transaction File | H_0092787 | |
| Financial Statements | H_0092959 | |
| Trial Balance | H_0092959.xls | |
| Financial Statements | H_0092974.xls | |
| Financial Statements | H_0092978.xls | |
| Financial Statements | H_0093005.xls | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon** **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Financial Statements | H_0093009.xls | |
| Financial Statements | H_0093011.xls | |
| Financial Statements | H_0093013.xls | |
| Financial Statements | H_0093025.xls | |
| NexBank Statements | H_009314 | H_009315 |
| Financial Statements | H_0093221.xls | |
| Financial Statements | H_0093398.xls | |
| Financial Statements | H_0093418.xls | |
| Financial Statements | H_0093578.xls | |
| Financial Statements | H_0093591.xls | |
| Financial Statements | H_0093761.xls | |
| 1.31.07 CDO NAV.xls | H_0093797 | |
| NAV File | H_0093797.xls | |
| 2.28.07 CDO NAV.xls | H_0093965 | |
| NAV File | H_0093965.xls | |
| 7.31.07 CDO NAV.xls | H_0094874 | |
| NAV File | H_0094874.xls | |
| CDO Fund | H_0095154.xls | |
| Morgan Stanley Statements | H_009535 | H_009537 |
| 8.31.07 CDO NAV.xls | H_0095772 | |
| NAV File | H_0095772.xls | |
| CDO Fund | H_0095882.xls | |
| 9.30.07 CDO NAV.xls | H_0096791 | |
| NAV File | H_0096791.xls | |
| CDO Fund | H_0096957.xls | |
| Merrill Lynch Statements | H_009699 | |
| 10.31.07 CDO NAV.xls | H_0097956 | |
| NAV File | H_0097956.xls | |
| CDO Fund | H_0098116.xls | |
| NexBank Statements | H_009859 | |
| 11.30.07 CDO NAV.xls | H_0099142 | |
| NAV File | H_0099142.xls | |
| CDO Fund | H_0099307.xls | |
| Highland CDO Master NAV 11.07 - JPM.xls | H_0099506 | |
| NAV File | H_0099507.xls | |
| 12.31.07 CDO NAV.xls | H_0100086 | |
| NAV File | H_0100086.xls | |
| CDO Fund | H_0100244.xls | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| CDO Fund | H_0100245.xls | |
| 3.31.07 CDO NAV.xls | H_0100531 | |
| NAV File | H_0100531.xls | |
| 4.30.07 CDO NAV.xls | H_0100690 | |
| NAV File | H_0100690.xls | |
| 5.31.07 CDO NAV.xls | H_0100887 | |
| NAV File | H_0100887.xls | |
| 6.30.07 CDO NAV.xls | H_0101113 | |
| NAV File | H_0101113.xls | |
| Highland CDO Master NAV 01.07 - FINAL.xls | H_0102301 | |
| NAV File | H_0102301.xls | |
| Highland CDO Master NAV 02.07 - FINAL.xls | H_0102343 | |
| NAV File | H_0102343.xls | |
| Highland CDO Master NAV 03.07 - FINAL.xls | H_0102388 | |
| NAV File | H_0102388.xls | |
| Highland CDO Master NAV 04.07 - FINAL.xls | H_0102442 | |
| NAV File | H_0102442.xls | |
| Highland CDO Master NAV 05.07 - FINAL.xls | H_0102499 | |
| NAV File | H_0102499.xls | |
| Highland CDO Master NAV 06.07 - FINAL.xls | H_0102556 | |
| NAV File | H_0102556.xls | |
| NexBank Statements | H_010261 | H_011718 |
| Highland CDO Master NAV 07.07 - FINAL.xls | H_0102619 | |
| NAV File | H_0102619.xls | |
| Highland CDO Master NAV 08.07 - FINAL.xls | H_0102699 | |
| NAV File | H_0102699.xls | |
| Highland CDO Master NAV 09.07 - FINAL.xls | H_0102791 | |
| NAV File | H_0102791.xls | |
| Highland CDO Master NAV 10.07 - FINAL.xls | H_0102885 | |
| NAV File | H_0102885.xls | |
| Highland CDO Master NAV 11.07 - FINAL.xls | H_0102994 | |
| NAV File | H_0102994.xls | |
| Highland CDO Master NAV 12.07 - FINAL.xls | H_0103112 | |
| NAV File | H_0103112.xls | |
| 1.31.08 CDO NAV.xls | H_0103404 | |
| NAV File | H_0103404.xls | |
| CDO Fund | H_0103491.xls | |
| 2.29.08 CDO NAV.xls | H_0103634 | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| NAV File | H_0103634.xls | |
| CDO Fund | H_0103673.xls | |
| 3.31.08 CDO NAV (MARCH RECALC).xls | H_0103776 | |
| NAV File | H_0103776.xls | |
| 3.31.08 CDO NAV.xls | H_0103814 | |
| NAV File | H_0103814.xls | |
| CDO Fund | H_0103851.xls | |
| 4.30.08 CDO NAV (Old).xls | H_0104154 | |
| NAV File | H_0104154.xls | |
| 4.30.08 CDO NAV.xls | H_0104164 | |
| NAV File | H_0104164.xls | |
| CDO Fund | H_0104170.xls | |
| NAV | H_0104496 | |
| 5.31.08 CDO NAV.xls | H_0104496 | |
| NAV File | H_0104496.xls | |
| CDO Fund | H_0104516.xls | |
| Bank of Nova Scotia Statements | H_010461 | |
| 6.30.08 CDO NAV.xls | H_0105080 | |
| NAV File | H_0105080.xls | |
| CDO Fund | H_0105238.xls | |
| NAV | H_0105649 | |
| 7.31.08 CDO NAV.xls | H_0105649 | |
| NAV File | H_0105649.xls | |
| CDO Fund | H_0105743.xls | |
| 8.31.08 CDO NAV.xls | H_0106666 | |
| NAV File | H_0106666.xls | |
| CDO Fund | H_0106756.xls | |
| NAV File | H_0107461 | H_0107611 |
| 9.30.08 CDO NAV.xls | H_0107461 | |
| NAV File | H_0107461.xls | |
| CDO Fund | H_0107612.xls | |
| Merrill Lynch Statements | H_010816 | H_010817 |
| 10.31.08 CDO NAV - AP - 11-14-08.xls | H_0108514 | |
| NAV File | H_0108514.xls | |
| 10.31.08 CDO NAV - AP.xls | H_0108636 | |
| NAV File | H_0108636.xls | |
| 10.31.08 CDO NAV | H_0108750 | H_0108863 |
| 10.31.08 CDO NAV.xls | H_0108750 | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| NAV File | H_0108750.xls | |
| CDO Fund | H_0108864.xls | |
| NAV File | H_0109269 | H_0109294 |
| 11.30.08 CDO NAV.xls | H_0109269 | |
| NAV File | H_0109269.xls | |
| 11.30.08 CDO NAV.xlsx | H_0109295 | |
| NAV File | H_0109295.xlsx | |
| CDO Fund | H_0109321.xls | |
| 12.31.08 CDO NAV.xls | H_0109624 | |
| NAV File | H_0109624.xls | |
| Merrill Lynch Statements | H_011010 | |
| NAV File | H_0111005 | H_0111061 |
| 12.31.08 CDO NAV.xlsx | H_0111005 | |
| NAV File | H_0111005.xlsx | |
| CDO Fund | H_0111062.xlsx | |
| Highland CDO Master NAV 01.08 - FINAL.xls | H_0111321 | |
| NAV File | H_0111321.xls | |
| Highland CDO Master NAV 02.08 - FINAL.xls | H_0111404 | |
| NAV File | H_0111404.xls | |
| Highland CDO Master NAV 03.08 - FINAL.xls | H_0111495 | |
| NAV File | H_0111495.xls | |
| Morgan Stanley Statements | H_011152 | H_011154 |
| Highland CDO Master NAV 04.08 - FINAL.xls | H_0111594 | |
| NAV File | H_0111594.xls | |
| Highland CDO Master NAV 05.08 - FINAL.xls | H_0111687 | |
| NAV File | H_0111687.xls | |
| Highland CDO Master NAV 06.08 - FINAL.xls | H_0111788 | |
| NAV File | H_0111788.xls | |
| Highland CDO Master NAV 07.08 - FINAL.xls | H_0111890 | |
| NAV File | H_0111890.xls | |
| Highland CDO Master NAV 08.08 - FINAL.xls | H_0112021 | |
| NAV File | H_0112021.xls | |
| Highland CDO Master NAV 09.08 - FINAL.xls | H_0112038 | |
| NAV File | H_0112038.xls | |
| Highland CDO Master NAV 10.08 - FINAL.xls | H_0112052 | |
| NAV File | H_0112052.xls | |
| Highland CDO Master NAV 11.08 - FINAL.xls | H_0112066 | |
| NAV File | H_0112066.xls | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Highland CDO Master NAV 12.08 - FINAL.xlsx | H_0112080 | |
| NAV File | H_0112080.xlsx | |
| 1.31.09 CDO NAV.xlsx | H_0112094 | |
| NAV File | H_0112094.xlsx | |
| CDO Fund | H_0112172.xlsx | |
| Financial Statements | H_0113220 | H_0113240 |
| Highland CDO Master NAV November 2007.xls | H_0113241 | |
| NAV File | H_0113241.xls | |
| NAV HCOFLP 01.31.09 New.xls | H_0113654 | |
| NAV File | H_0113654.xls | |
| NAV HCOFLP 02 28 09 New.xlsx | H_0120299 | |
| NAV File | H_0120299.xlsx | |
| NAV HCOFLP 03 31 09 New.xls | H_0126986 | |
| NAV File | H_0126986.xls | |
| NAV HCOFLP 04.30.09 New.xls | H_0133490 | |
| NAV File | H_0133490.xls | |
| Presentation | H_0147554.Msg | |
| Presentation | H_0147607.Msg | |
| Knox Warehouse Valuation | H_0149971.Xls | |
| Knox Warehouse Valuation | H_0150342.Xls | |
| Email to UBS with PPR | H_0150889 | |
| Knox Warehouse Valuation | H_0151016.Xls | |
| Correspondence | H_0151665.Msg | |
| Knox Warehouse Valuation | H_0154394.Xls | |
| Knox Warehouse Valuation | H_0154407.Xls | |
| Knox Warehouse Valuation | H_0154420.Xls | |
| Knox Warehouse Valuation | H_0154434.Xls | |
| Knox Warehouse Valuation | H_0154445.Xls | |
| Correspondence | H_0155727.Msg | |
| Cash Transaction File | H_0155953 | |
| Highland CDO Opportunity Master Fund NAV File dated November 30, 2008 | H_0163287 | |
| Cash Forecast | H_0163413.Xls | |
| "HFP Note Settlement.xls" | H_0164048 | |
| Financial Statements | H_0217013.Msg | |
| Financial Statements | H_0217014.Msg | |
| Financial Statements | H_0217015.xls | |
| Financial Statements | H_0217017.Xls | |
| Correspondence | H_0222106.Msg | |

UPDATED 4/18/2013

Documents Considered and/or Relied Upon

Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Barclays Investment Management Agreement | H_0222384 | |
| Financial Statements | H_0224582.Xls | |
| Financial Statements | H_0227969.Xls | |
| Highland Crusader Offshore Partners, L.P. Notes to Consolidated Financial Statements dated December 31, 2008 | H_0229524 | |
| | | |
| Email Correspondence | H_0236649 | |
| Financial Statements | H_0236668.Xls | |
| Financial Statements | H_0242145.Txt | |
| Financial Statements | H_0245305.Xls | |
| Financial Statements | H_0247358.Txt | |
| Cash Forecast | H_0255109.Xls | |
| Credit Suisse Bank Statements | H_0261162 | |
| Financial Statements | H_0261189.Msg | |
| Financial Statements | H_0261214.Xls | |
| Financial Statements | H_0261243.Xls | |
| Cash Transaction File | H_0267158 | |
| Financial Statements | H_0270722.Xls | |
| Financial Statements | H_0282721.Txt | |
| Cash Transaction File | H_0283862 | |
| Cash Transaction File | H_0285810 | |
| Cash Transaction File | H_0289149 | |
| Cash Transaction File | H_0291097 | |
| Transaction File | H_0295046.xlsx | |
| Financial Statements | H_0296135.Txt | |
| Financial Statements | H_0296149.Txt | |
| Financial Statements | H_0296164.Txt | |
| Financial Statements | H_0296179.Txt | |
| Financial Statements | H_0296194.Txt | |
| Trade Blotter | H_0296209 | |
| CDO Fund Bank of America Statements | H_0301576 | H_0301609 |
| BNP Paribas Bank Statements | H_0301617 | |
| BNP Paribas Bank Statements | H_0301683 | |
| Citi Statements | H_0301779 | |
| Morgan Stanley Statements | H_0301786 | H_0301787 |
| HFP Accounting Memorandum dated February 18, 2009 | H_0301888 | |
| Cash Transaction File | H_0302136 | |
| HFP Book Value File | H_0304955 | |
| NAV File | H_0304955.Xlsx | |

UPDATED 4/18/2013

Documents Considered and/or Relied Upon

Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Financial Statements | H_0304995.Xlsx | |
| Financial Statements | H_0304999.Pdf | |
| Financial Statements | H_0305001.Pdf | |
| Financial Statements | H_0305057.Pdf | |
| Financial Statements | H_0305098.Pdf | |
| Financial Statements | H_0305144.Pdf | |
| Financial Statements | H_0305146.Pdf | |
| Financial Statements | H_0305148.Pdf | |
| Financial Statements | H_0305150.Pdf | |
| Financial Statements | H_0305152.Pdf | |
| Financial Statements | H_0305154.Pdf | |
| Financial Statements | H_0305156.Pdf | |
| Financial Statements | H_0305158.Pdf | |
| Financial Statements | H_0305160.Pdf | |
| Financial Statements | H_0305162.Pdf | |
| Financial Statements | H_0305164.Pdf | |
| Financial Statements | H_0305166.Pdf | |
| Financial Statements | H_0305168.Pdf | |
| Financial Statements | H_0305170.Pdf | |
| Financial Statements | H_0305172.Pdf | |
| Financial Statements | H_0305174.Pdf | |
| Financial Statements | H_0305176.Pdf | |
| Financial Statements | H_0305178.Pdf | |
| Financial Statements | H_0305180.Pdf | |
| Financial Statements | H_0305182.Pdf | |
| Financial Statements | H_0305184.Pdf | |
| Financial Statements | H_0305186.Pdf | |
| Financial Statements | H_0305188.Pdf | |
| Financial Statements | H_0305190.Pdf | |
| Financial Statements | H_0305192.Pdf | |
| Financial Statements | H_0305194.Pdf | |
| Financial Statements | H_0305196.Pdf | |
| Financial Statements | H_0305198.Pdf | |
| Financial Statements | H_0305200.Pdf | |
| Financial Statements | H_0305202.Pdf | |
| Financial Statements | H_0305317.Pdf | |
| Trade Blotter | H_0305356 | |
| Trade Blotter | H_0307225 | |

UPDATED 4/18/2013

Documents Considered and/or Relied Upon

Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Trade Blotter | H_0310500 | |
| HFP Board of Directors Liquidity Analysis & Options dated May 2008 | H_0312654 | |
| Credit Suisse Bank Statements | H_0327303 | |
| Knox Warehouse Valuation | H_0329545.TIF | |
| Correspondence | H_0329546.TIF | |
| Correspondence | H_0329879.TIF | |
| Knox Warehouse Valuation | H_0331015.Xls | |
| Correspondence | H_0334616.TIF | |
| Knox Warehouse Valuation | H_0334617.Xlsx | |
| Knox Warehouse Valuation | H_0337887.Xlsx | |
| Crusader Email | H_0344791 | |
| November 2008 Email | H_0344802 | |
| Correspondence | H_0348026.TIF | |
| Correspondence | H_0348031.TIF | |
| Knox Warehouse Valuation | H_0348035.Xls | |
| Presentation | H_0349524.Xls | |
| Knox Warehouse Valuation | H_0354398.Xls | |
| 8.31.08 CDO NAV.xls | H_0358274 | H_0358337 |
| Knox Warehouse Valuation | H_0361594.Xls | |
| Correspondence | H_0363743.TIF | |
| Knox Warehouse Valuation | H_0363746.TIF | |
| Knox Warehouse Valuation | H_0363754 | |
| November 2007 letter | H_0364428 | |
| Correspondence | H_0365279.TIF | |
| Amended and Restated Certificate of Limited Partnership dated December 19, 2006 | H_0365613 | |
| Correspondence | H_0369125.TIF | |
| Correspondence | H_0369127.TIF | |
| Correspondence | H_0375767.TIF | |
| Knox Warehouse Valuation | H_0399909.Xls | |
| Knox Warehouse Valuation | H_0409475.Xls | |
| Knox Warehouse Valuation | H_0409595.Xls | |
| Knox Warehouse Valuation | H_0409715.Xls | |
| Knox Warehouse Valuation | H_0409835.Xls | |
| Presentation | H_0418907.TIF | |
| Presentation | H_0418966.TIF | |
| Presentation | H_0419025.TIF | |
| Presentation | H_0419276.TIF | |
| Presentation | H_0419336.TIF | |

UPDATED 4/18/2013

Documents Considered and/or Relied Upon

Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Presentation | H_0419408.TIF | |
| Knox Warehouse Valuation | H_0420599.Xls | |
| Knox Warehouse Valuation | H_0423260.Xls | |
| Knox Warehouse Valuation | H_0425134.TIF | |
| Knox Warehouse Valuation | H_0425135.Xls | |
| Knox Warehouse Valuation | H_0425962.Xls | |
| Credit Suisse Bank Statements | H_0435240 | H_0435246 |
| January 2009 Investor Communication | H_0444376 | |
| Email | H_0446640 | |
| Financial Statements | H_0446702.Xls | |
| Financial Statements | H_0456315.Xls | |
| Financial Statements | H_0457718.Xls | |
| Financial Statements | H_0458142.xls | |
| Financial Statements | H_0475729.Xls | |
| Financial Statements | H_0478760.Xls | |
| Knox Warehouse Valuation | H_0484343.Xls | |
| Knox Warehouse Valuation | H_0484356.Xls | |
| Knox Warehouse Valuation | H_0488825.Xls | |
| Barclays Armstrong Warehouse Agreement | H_0488974 | |
| Knox Warehouse Valuation | H_0494236.Xls | |
| Knox Warehouse Valuation | H_0494381.Xls | |
| Knox Warehouse Valuation | H_0506884.TIF | |
| Knox Warehouse Valuation | H_0506896.Xls | |
| Knox Warehouse Valuation | H_0506906.Xls | |
| Knox Warehouse Valuation | H_0507561.Xls | |
| Knox Warehouse Valuation | H_0510706.Xls | |
| Knox Warehouse Valuation | H_0511255.Xls | |
| Correspondence | H_0513751 | |
| Correspondence | H_0513752 | |
| Correspondence | H_0521609.TIF | |
| TRS | H_0531857 | |
| Guarantees as of 12-31-06 | H_0532757 | |
| Financial Statements | H_0556081.xls | |
| Knox Warehouse Valuation | H_0597654.Xlsx | |
| Knox Warehouse Valuation | H_0601279.Xlsx | |
| Credit Suisse Bank Statements | H_0601292 | H_0686554 |
| Portfolio Profile Report | H_0601869 | H_1782124 |
| Knox Warehouse Valuation | H_0623054 | |

UPDATED 4/18/2013

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Knox Warehouse Valuation | H_0626043.Xls | |
| Knox Warehouse Valuation | H_0626052.Xls | |
| Knox Warehouse Valuation | H_0631127.Xls | |
| Amendment NO. 1 To Note Purchase Agreement | H_0644653 | H_0644663 |
| June 5 2007 Master Agreement | H_0648651 | |
| April 5 2006 Master Agreement | H_0648714 | |
| Knox Warehouse Valuation | H_0660169.Xlsx | |
| Knox Warehouse Valuation | H_0660719.Xlsx | |
| Knox Warehouse Valuation | H_0660732.Xlsx | |
| General Ledger | H_0689417.xlsx | |
| General Ledger | H_0698617.xlsx | |
| General Ledger | H_0704162.xlsx | |
| General Ledger | H_0709177.xlsx | |
| General Ledger | H_0713352.xlsx | |
| General Ledger | H_0726977.xlsx | |
| General Ledger | H_0735492.xlsx | |
| SOHC General Ledger | H_0740240 | |
| Trade Blotter | H_0740383 | |
| Trade Blotter | H_0740497 | |
| Trade Blotter | H_0740505 | |
| Trade Blotter | H_0740522 | |
| Trade Blotter | H_0740637 | |
| Cash Transaction File | H_0743030 | |
| Knox Warehouse monthly valuation as of February 29, 2008 | H_0770331 | |
| Knox Warehouse Valuation | H_0770331.Xls | |
| Knox Warehouse Agreement – Accounting Memorandum as of March 31, 2008 | H_0772393 | |
| Knox Warehouse Valuation | H_0773584 | |
| Email from Philip Braner to Todd Travers and James Dondero dated December 29, 2008 | H_0781548 | |
| December 29, 2008 email from Phil Braner to James Dondero and Todd Travers | H_0781548 | |
| Netting Arrangement | H_0788901 | |
| Loan agreement as of June 5 2007 and amended as of March 20 2008 | H_0804329 | |
| TRS dated June 5 2007 amended March 20 2008 | H_0804383 | |
| Security Agreement dated March 20 2008 | H_0804431 | |
| Security Agreement dated March 20 2008 | H_0804444 | |
| HFP Short Term Loan Proposal | H_0804830 | |
| Short Term Loan Proposal | H_0804833 | |
| Knox Warehouse Valuation | H_0805898 | |
| Knox Warehouse Valuation | H_0805903 | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Knox Warehouse Valuation | H_0808354 | |
| Knox Warehouse Valuation | H_0813635 | |
| Credit Suisse Bank Statements | H_0821060 | H_0821062 |
| Settlement Agreement | H_0822834 | |
| HFP Cash Forecasts | H_082900 | |
| Knox Warehouse Valuation | H_0835109.Xlsx | |
| Knox Warehouse Valuation | H_0835117.Xlsx | |
| Knox Warehouse Valuation | H_0835123.Xlsx | |
| Knox Warehouse Valuation | H_0835135.Xlsx | |
| Knox Warehouse Valuation | H_0835557.Xlsx | |
| Knox Warehouse Valuation | H_0837998.Xlsx | |
| Knox Warehouse Valuation | H_0840386.Xlsx | |
| Knox Warehouse Valuation | H_0841840.Xlsx | |
| Knox Warehouse Valuation | H_0841843.Xlsx | |
| Knox Warehouse Valuation | H_0841846.Xlsx | |
| Credit Suisse Bank Statements | H_0854743 | H_0916001 |
| Knox Warehouse Valuation | H_0860542 | |
| Knox Warehouse Valuation | H_0862612 | |
| Knox Warehouse Valuation | H_0864688 | |
| Knox Warehouse Valuation | H_0864700 | |
| | H_0882864 | |
| Accounting Memorandum | H_0884468 | |
| Knox Warehouse Valuation | H_0884775.Xlsx | |
| Accounting Memorandum | H_0888557 | |
| September 18, 2008 E-mail Exchange Confirming Deposit | H_0888758 | |
| Email among Braner, Bridges, & State St. | H_0896509 | |
| Amended and Restated Note Purchase Agreement as of December 22, 2008 | H_0928489 | H_0928539 |
| Organization / Ownership Summary | H_0928637 | |
| Organization / Ownership Summary | H_0928638 | |
| Credit Suisse Bank Statements | H_1473924 | H_1498786 |
| CDO Fund Offering Memorandum | H_1474677 | |
| Deutsche Bank Statements | H_1483928 | |
| Credit Suisse Bank Statements | H_1511914 | |
| JPMorgan Statements | H_1528407 | H_1528413 |
| Credit Suisse Bank Statements | H_1653901 | H_1669233 |
| CDO Holding Company Bank of New York Statement | H_1754437 | |
| Financial Statements | H_1754470.XLS | |
| Highland Financial Corp. Bank of New York Statement | H_1754964 | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**　　　　　　　　　　　　　　　　　　　　**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| CDO Construction Corp Bank of New York Statement | H_1754993 | |
| CDO Construction Corp Bank of New York Statement | H_1755001 | |
| CDO Holding Company Bank of New York Statement | H_1755100 | |
| CDO Holding Company Bank of New York Statement | H_1755107 | |
| Highland Financial Corp. Bank of New York Statement | H_1755115 | |
| CDO HoldCo Consolidating Balance Sheet | H_1755147 | |
| CDO HoldCo Consolidating Balance Sheet | H_1755160 | |
| CDO HoldCo Consolidating Balance Sheet | H_1755180 | |
| CDO HoldCo Consolidating Balance Sheet | H_1755198 | |
| HFP Bank of New York Statements | H_1759002 | H_1759053 |
| HFP Bank Statement | H_1759037 | |
| Highland Organizational Documents | H_1759160 | H_1759189 |
| Highland Organizational Documents | H_1759190 | H_1759329 |
| Resolution | H_1759292 | |
| Written Resolutions of the Sole Director of CDO HoldCo | H_1759298 | H_1759299 |
| Organization / Ownership Summary | H_1760206 | |
| Organization / Ownership Summary | H_1760207 | |
| Organization / Ownership Summary | H_1760226 | |
| Organization / Ownership Summary | H_1760259 | |
| Organization / Ownership Summary | H_1760264 | |
| Organization / Ownership Summary | H_1760328 | |
| Written Resolutions of the Sole Director of SOHC | H_1760424 | H_1760425 |
| Organization / Ownership Summary | H_1760426 | |
| Organization / Ownership Summary | H_1760490 | |
| Excerpt of Defendants' Response to Interrogatories | H_1796231 | |
| Agreements | JPM000012 | |
| Agreements | JPM000044 | |
| Valuation Documentation | JPM000474.TIF | |
| Valuation Documentation | JPM000478.Pdf | |
| Valuation Documentation | JPM000481.Pdf | |
| Valuation Documentation | JPM000488.Pdf | |
| Valuation Documentation | JPM000493.Pdf | |
| Valuation Documentation | JPM000503.Pdf | |
| Valuation Documentation | JPM000506.Pdf | |
| Valuation Documentation | JPM000509.Pdf | |
| Valuation Documentation | JPM000516.Pdf | |
| Valuation Documentation | JPM000520.Pdf | |
| Valuation Documentation | JPM000530.Pdf | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Valuation Documentation | JPM000533.Pdf | |
| Valuation Documentation | JPM000536.Pdf | |
| Valuation Documentation | JPM000543.Pdf | |
| Valuation Documentation | JPM000546.Pdf | |
| Valuation Documentation | JPM000549.Pdf | |
| Valuation Documentation | JPM000556.Pdf | |
| Valuation Documentation | JPM000559.Pdf | |
| Valuation Documentation | JPM000562.Pdf | |
| Valuation Documentation | JPM000569.Pdf | |
| Valuation Documentation | JPM000572.Pdf | |
| Valuation Documentation | JPM000575.Pdf | |
| Valuation Documentation | JPM000582.Pdf | |
| Valuation Documentation | JPM000585.Pdf | |
| Valuation Documentation | JPM000588.Pdf | |
| Valuation Documentation | JPM000595.Pdf | |
| Valuation Documentation | JPM000599.Pdf | |
| Valuation Documentation | JPM000605.Pdf | |
| Valuation Documentation | JPM000609.Pdf | |
| Valuation Documentation | JPM000616.Pdf | |
| Valuation Documentation | JPM000619.Pdf | |
| Valuation Documentation | JPM000625.Pdf | |
| Valuation Documentation | JPM000629.Pdf | |
| Valuation Documentation | JPM000638.Pdf | |
| Valuation Documentation | JPM000644.Pdf | |
| Valuation Documentation | JPM000647.Pdf | |
| Valuation Documentation | JPM000655.Pdf | |
| Valuation Documentation | JPM000658.Pdf | |
| Valuation Documentation | JPM000661.Pdf | |
| Valuation Documentation | JPM000664.Pdf | |
| Valuation Documentation | JPM000672.Pdf | |
| Valuation Documentation | JPM000676.Pdf | |
| Valuation Documentation | JPM000681.Pdf | |
| Valuation Documentation | JPM000692.Pdf | |
| Valuation Documentation | JPM000697.Pdf | |
| Holding File | JPM000706 | |
| Transaction File | JPM000707.Xlsx | |
| Transaction File | JPM000708.Xlsx | |
| Transaction File | JPM000709.Xlsx | |

UPDATED 4/18/2013

Documents Considered and/or Relied Upon
Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Transaction File | JPM000710.Xlsx | |
| Transaction File | JPM000711.Xlsx | |
| Holding File | JPM000712 | |
| Transaction File | JPM000713.Xlsx | |
| Transaction File | JPM000714.Xlsx | |
| Transaction File | JPM000715.Xlsx | |
| Transaction File | JPM000716.Xlsx | |
| Transaction File | JPM000717.Xlsx | |
| Transaction File | JPM000718.Xlsx | |
| Transaction File | JPM000719.Xlsx | |
| Transaction File | JPM000720.Xlsx | |
| Transaction File | JPM000721.Xlsx | |
| Transaction File | JPM000722.Xlsx | |
| Transaction File | JPM000723.Xlsx | |
| Transaction File | JPM000724.Xlsx | |
| Transaction File | JPM000725.Xlsx | |
| Transaction File | JPM000726.Xlsx | |
| Transaction File | JPM000727.Xlsx | |
| Transaction File | JPM000728.Xlsx | |
| Transaction File | JPM000729.Xlsx | |
| Transaction File | JPM000730.Xlsx | |
| Transaction File | JPM000731.Xlsx | |
| Transaction File | JPM000732.Xlsx | |
| NAV File | JPM000733 | |
| Transaction File | JPM000734.Xlsx | |
| Transaction File | JPM000735.Xlsx | |
| Transaction File | JPM000736.Xlsx | |
| Transaction File | JPM000737.Xlsx | |
| Transaction File | JPM000738.Xlsx | |
| Transaction File | JPM000739.Xlsx | |
| Transaction File | JPM000740.Xlsx | |
| Transaction File | JPM000741.Xlsx | |
| Transaction File | JPM000742.Xlsx | |
| Transaction File | JPM000743.Xlsx | |
| Transaction File | JPM000744.Xlsx | |
| Transaction File | JPM000745.Xlsx | |
| Transaction File | JPM000746.Xlsx | |
| Transaction File | JPM000747.Xlsx | |

UPDATED 4/18/2013

Documents Considered and/or Relied Upon

Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Transaction File | JPM000748.Xlsx | |
| Transaction File | JPM000749.Xlsx | |
| Transaction File | JPM000750.Xlsx | |
| Transaction File | JPM000751.Xlsx | |
| Transaction File | JPM000752.Xlsx | |
| Transaction File | JPM000753.Xlsx | |
| Transaction File | JPM000754.Xlsx | |
| Transaction File | JPM000755.Xlsx | |
| Transaction File | JPM000756.Xlsx | |
| Transaction File | JPM000757.Xlsx | |
| Transaction File | JPM000758.Xlsx | |
| Transaction File | JPM000759.Xlsx | |
| Transaction File | JPM000760.Xlsx | |
| Transaction File | JPM000761.Xlsx | |
| Transaction File | JPM000762.Xlsx | |
| Valuation Documentation | JPM000763.Pdf | |
| Valuation Documentation | JPM000766.Pdf | |
| Valuation Documentation | JPM000772.Pdf | |
| Valuation Documentation | JPM000776.Pdf | |
| Valuation Documentation | JPM000781.Pdf | |
| Valuation Documentation | JPM000793.Pdf | |
| Valuation Documentation | JPM000799.Pdf | |
| Valuation Documentation | JPM000804.Pdf | |
| Holding File | JPM000811 | |
| Cash Transaction File | JPM000812.xlsx | |
| Cash Transaction File | JPM000813.xlsx | |
| Cash Transaction File | JPM000814.xlsx | |
| Cash Transaction File | JPM000815.xlsx | |
| Cash Transaction File | JPM000816.xlsx | |
| Cash Transaction File | JPM000817.xlsx | |
| Cash Transaction File | JPM000818.xlsx | |
| Cash Transaction File | JPM000819.xlsx | |
| Cash Transaction File | JPM000820.xlsx | |
| Cash Transaction File | JPM000821.xlsx | |
| Cash Transaction File | JPM000822.xlsx | |
| Cash Transaction File | JPM000823.xlsx | |
| Transaction File | JPM000824.xlsx | |
| Transaction File | JPM000825.xlsx | |

UPDATED 4/18/2013

**Documents Considered and/or Relied Upon**

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Transaction File | JPM000826.xlsx | |
| Transaction File | JPM000827.xlsx | |
| Transaction File | JPM000828.xlsx | |
| Transaction File | JPM000829.xlsx | |
| Transaction File | JPM000830.xlsx | |
| Transaction File | JPM000831.xlsx | |
| Transaction File | JPM000832.xlsx | |
| Transaction File | JPM000833.xlsx | |
| Transaction File | JPM000834.xlsx | |
| Transaction File | JPM000835.xlsx | |
| Cash Transaction File | JPM000836.xlsx | |
| Cash Transaction File | JPM000837.xlsx | |
| Cash Transaction File | JPM000838.xlsx | |
| Cash Transaction File | JPM000839.xlsx | |
| Cash Transaction File | JPM000840.xlsx | |
| Cash Transaction File | JPM000841.xlsx | |
| Cash Transaction File | JPM000842.xlsx | |
| Cash Transaction File | JPM000843.xlsx | |
| Cash Transaction File | JPM000844.xlsx | |
| Cash Transaction File | JPM000845.xlsx | |
| Cash Transaction File | JPM000846.xlsx | |
| Cash Transaction File | JPM000847.xlsx | |
| Cash Transaction File | JPM000848.xlsx | |
| Cash Transaction File | JPM000849.xlsx | |
| Cash Transaction File | JPM000850.xlsx | |
| Cash Transaction File | JPM000851.xlsx | |
| Cash Transaction File | JPM000852.xlsx | |
| Cash Transaction File | JPM000853.xlsx | |
| Cash Transaction File | JPM000854.xlsx | |
| Cash Transaction File | JPM000855.xlsx | |
| Cash Transaction File | JPM000856.xlsx | |
| Cash Transaction File | JPM000857.xlsx | |
| Cash Transaction File | JPM000858.xlsx | |
| Cash Transaction File | JPM000859.xlsx | |
| Cash Transaction File | JPM000860.xlsx | |
| Cash Transaction File | JPM000861.xlsx | |
| Transaction File | JPM000862.xlsx | |
| Transaction File | JPM000863.xlsx | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
| --- | --- | --- |
| Transaction File | JPM000864.xlsx | |
| Transaction File | JPM000865.xlsx | |
| Transaction File | JPM000866.xlsx | |
| Transaction File | JPM000867.xlsx | |
| Transaction File | JPM000868.xlsx | |
| Transaction File | JPM000869.xlsx | |
| Transaction File | JPM000870.xlsx | |
| Transaction File | JPM000871.xlsx | |
| Transaction File | JPM000872.xlsx | |
| Transaction File | JPM000873.xlsx | |
| Transaction File | JPM000874.xlsx | |
| Transaction File | JPM000875.xlsx | |
| Transaction File | JPM000876.xlsx | |
| Transaction File | JPM000877.xlsx | |
| Transaction File | JPM000878.xlsx | |
| Transaction File | JPM000879.xlsx | |
| Transaction File | JPM000880.xlsx | |
| Transaction File | JPM000881.xlsx | |
| Transaction File | JPM000882.xlsx | |
| Transaction File | JPM000883.xlsx | |
| Transaction File | JPM000884.xlsx | |
| Transaction File | JPM000885.xlsx | |
| Transaction File | JPM000886.xlsx | |
| Transaction File | JPM000887.xlsx | |
| Cash Transaction File | JPM000888.xlsx | |
| Cash Transaction File | JPM000889.xlsx | |
| Cash Transaction File | JPM000890.xlsx | |
| Cash Transaction File | JPM000891.xlsx | |
| Cash Transaction File | JPM000892.xlsx | |
| Cash Transaction File | JPM000893.xlsx | |
| Cash Transaction File | JPM000894.xlsx | |
| Cash Transaction File | JPM000895.xlsx | |
| Cash Transaction File | JPM000896.xlsx | |
| Cash Transaction File | JPM000897.xlsx | |
| Cash Transaction File | JPM000898.xlsx | |
| Cash Transaction File | JPM000899.xlsx | |
| Cash Transaction File | JPM000900.xlsx | |
| Cash Transaction File | JPM000901.xlsx | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

Exhibit 9

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Cash Transaction File | JPM000902.xlsx | |
| Cash Transaction File | JPM000903.xlsx | |
| Cash Transaction File | JPM000904.xlsx | |
| Cash Transaction File | JPM000905.xlsx | |
| Cash Transaction File | JPM000906.xlsx | |
| Cash Transaction File | JPM000907.xlsx | |
| Cash Transaction File | JPM000908.xlsx | |
| Cash Transaction File | JPM000909.xlsx | |
| Cash Transaction File | JPM000910.xlsx | |
| Cash Transaction File | JPM000911.xlsx | |
| Cash Transaction File | JPM000912.xlsx | |
| Cash Transaction File | JPM000913.xlsx | |
| Cash Transaction File | JPM000914.xlsx | |
| Cash Transaction File | JPM000915.xlsx | |
| Cash Transaction File | JPM000916.xlsx | |
| Cash Transaction File | JPM000917.xlsx | |
| Cash Transaction File | JPM000918.xlsx | |
| Cash Transaction File | JPM000919.xlsx | |
| Cash Transaction File | JPM000920.xlsx | |
| Cash Transaction File | JPM000921.xlsx | |
| Cash Transaction File | JPM000922.xlsx | |
| Cash Transaction File | JPM000923.xlsx | |
| Cash Transaction File | JPM000924.xlsx | |
| Cash Transaction File | JPM000925.xlsx | |
| Cash Transaction File | JPM000926.xlsx | |
| Cash Transaction File | JPM000927.xlsx | |
| Cash Transaction File | JPM000928.xlsx | |
| Cash Transaction File | JPM000929.xlsx | |
| Cash Transaction File | JPM000930.xlsx | |
| Cash Transaction File | JPM000931.xlsx | |
| Cash Transaction File | JPM000932.xlsx | |
| Cash Transaction File | JPM000933.xlsx | |
| Cash Transaction File | JPM000934.xlsx | |
| Cash Transaction File | JPM000935.xlsx | |
| Cash Transaction File | JPM000936.xlsx | |
| Cash Transaction File | JPM000937.xlsx | |
| Cash Transaction File | JPM000938.xlsx | |
| Cash Transaction File | JPM000939.xlsx | |

UPDATED 4/18/2013

**Documents Considered and/or Relied Upon**                                **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Cash Transaction File | JPM000940.xlsx | |
| Cash Transaction File | JPM000941.xlsx | |
| NAV File | JPM000942 | |
| General Ledger | JPM000944 | |
| General Ledger | JPM000945 | |
| General Ledger | JPM000946 | |
| General Ledger | JPM000947 | |
| General Ledger | JPM000948 | |
| General Ledger | JPM000949 | |
| General Ledger | JPM000950 | |
| Email dated Friday October 17, 2008 | LTP-0305 | LTP-0306 |
| HFP Accounting Memorandum dated January 23, 2009 | NEXBANK CONFIDENTIAL – 000071 | |
| Resolution | OHS 003055 | |
| Draft Agreement | OHS 004508 | OHS 004527 |
| Draft Agreement | OHS 009727 | OHS 009742 |
| PWC Memo on the Barclays CDO Facility | PWC-HC00036997 | |
| PWC Memo on the Barclays CDO Facility | PWC-HC00038550 | |
| PWC Workpapers | PWC-HCM00005197.pdf | |
| Warehouse Agreement dated May 22, 2007 | PWC-HCM00005385 | |
| Synthetic Warehouse Agreement dated April 12, 2007 | PWC-HCM00005425 | |
| PWC Workpapers | PWC-HCM00005484.pdf | |
| PWC Workpapers | PWC-HCM00005491.pdf | |
| PWC Workpapers | PWC-HCM00006809.pdf | |
| PWC Workpapers | PWC-HCM00006812.pdf | |
| PWC Workpapers | PWC-HCM00006813.pdf | |
| PWC Workpapers | PWC-HCM00006816.pdf | |
| PWC Workpapers | PWC-HCM00006819.pdf | |
| PWC Workpapers | PWC-HCM00006822.pdf | |
| PWC Workpapers | PWC-HCM00006826.pdf | |
| PWC Workpapers | PWC-HCM00011538.pdf | |
| PWC Workpapers | PWC-HCM00011543.pdf | |
| PWC Workpapers | PWC-HCM00011545.pdf | |
| PWC Workpapers | PWC-HCM00011615.pdf | |
| PWC Workpapers | PWC-HCM00011621.pdf | |
| PWC Workpapers | PWC-HCM00015452.pdf | |
| PWC Workpapers | PWC-HCM00015458.pdf | |
| PWC Workpapers | PWC-HCM00017072.pdf | |
| HFP Q2 2007 Workstep - Inquiry with SOHC Investment Gatekeeper | PWC-HCM00017088 | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**                                              **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| PWC Workpapers | PWC-HCM00017522.pdf | |
| PWC Workpapers | PWC-HCM00019137.pdf | |
| PWC Workpapers | PWC-HCM00019142.pdf | |
| PWC Workpapers | PWC-HCM00019156.pdf | |
| PWC Workpapers | PWC-HCM00022339.pdf | |
| PWC Workpapers | PWC-HCM00024296.pdf | |
| PricewaterhouseCoopers work papers dated November 21, 2008 | PWC-HCM00024300 | |
| PWC Workpapers | PWC-HCM00025769.pdf | |
| PWC Workpapers | PWC-HCM00025785.pdf | |
| PWC Workpapers | PWC-HCM00025791.pdf | |
| | PWC-HCM00026163 | |
| Accounting Memorandum | PWC-HCM00026198 | |
| Accounting Memorandum | PWC-HCM00026536 | |
| Accounting Memorandum | PWC-HCM00027933 | |
| Accounting Memorandum | PWC-HCM00028644 | |
| Q2 2007 SOHC Analytics | PWC-HCM00038318 | PWC-HCM00038321 |
| PWC Workpapers | PWC-HCM00040057 | |
| PWC Workpapers | PWC-HCM00040061 | |
| Accounting Memorandum | PWC-HCM00040155 | |
| PWC Workpapers | PWC-HCM00041879.pdf | |
| PWC Workpapers | PWC-HCM00041883.pdf | |
| PWC Workpapers | PWC-HCM00041893.pdf | |
| PWC Workpapers | PWC-HCM00041914.pdf | |
| PWC Workpapers | PWC-HCM00041923.pdf | |
| PricewaterhouseCoopers LLP Report to the Audit Committee of the Board of Directors, Results of Fiscal Year 2007 Audit dated May 30, 2008 | PWC-HCM00046642 | |
| Termination, Settlement and Release Agreement dated March 20, 2009 | PWC-HCM0026158 | PWC-HCM00026174 |
| Sterling Correspondence | ST0000455.msg | |
| Sterling Correspondence | ST0000463.msg | |
| Sterling Correspondence | ST0000467.msg | |
| Sterling Correspondence | ST0000473.msg | |
| Sterling Correspondence | ST0000509.msg | |
| Sterling Correspondence | ST0000516.msg | |
| Sterling Correspondence | ST0000526.msg | |
| Sterling Correspondence | ST0000528.msg | |
| Sterling Correspondence | ST0001713.msg | |
| Sterling Correspondence | ST0001722.msg | |
| Sterling Correspondence | ST0001725.msg | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon                                                                          **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
| --- | --- | --- |
| Sterling Correspondence | ST0001728.msg | |
| Sterling Correspondence | ST0001731.msg | |
| Sterling Correspondence | ST0001733.msg | |
| Sterling Correspondence | ST0001734.msg | |
| Sterling Correspondence | ST0001736.msg | |
| Sterling Correspondence | ST0001739.msg | |
| Sterling Correspondence | ST0001755.msg | |
| Sterling Correspondence | ST0001761.msg | |
| Sterling Correspondence | ST0001767.msg | |
| Sterling Correspondence | ST0001769.msg | |
| Sterling Correspondence | ST0001773.msg | |
| Sterling Correspondence | ST0001776.msg | |
| Sterling Correspondence | ST0001777.msg | |
| Sterling Correspondence | ST0001779.msg | |
| Sterling Correspondence | ST0001783.msg | |
| Sterling Correspondence | ST0001787.msg | |
| Sterling Correspondence | ST0001792.msg | |
| Sterling Correspondence | ST0001799.msg | |
| Sterling Correspondence | ST0001800.msg | |
| Sterling Correspondence | ST0001801.msg | |
| Sterling Correspondence | ST0001802.msg | |
| Sterling Correspondence | ST0001803.msg | |
| Sterling Correspondence | ST0001804.msg | |
| Sterling Correspondence | ST0002202.msg | |
| Sterling Correspondence | ST0002383.msg | |
| Sterling Correspondence | ST0002386.msg | |
| Sterling Correspondence | ST0002388.msg | |
| Sterling Correspondence | ST0002389.msg | |
| Sterling Correspondence | ST0002392.msg | |
| Sterling Correspondence | ST0002461.msg | |
| HFP Limited Partnership Agreement | ST-0003781 | |
| | UBS_000164902 | |
| Letter to Highland Capital Management, L.P. dated December 3, 2008 | UBS-00000021 | |
| Letter to Highland Capital Management, L.P. dated December 19, 2008 | UBS-00000026 | |
| Letter to Highland Capital Management, L.P. dated December 19, 2008 | UBS-00000029 | |
| Restructured Engagement Letter | UBS-000000572 | |
| Synthetic Warehouse Agreement dated March 14, 2008 | UBS-00000588 | |
| Knox Valuation | UBS-000164835 | |

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**                                         **Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| December 16, 2008 Auction Pricing | UBS-000164838 | |
| Knox Presentation | UBS-000294987 | |
| CDO Pricing Presentation | UBS-000309635 | |
| Email dated January 15, 2008 | UBS-000318500 | |
| Formal Notice of Collateral Call dated September 17, 2008 | UBS-000331474 | |
| | UBS-000331475 | UBS-000331476 |
| Letter to Mr. Travers dated November 7, 2008 | UBS-000336406 | |
| Collateral Call dated October 21, 2008 | UBS-000338945 | |
| Knox Warehouse Valuation | UBS-000376918 | |
| Email chain dated August 2007, "RE: TRAMS2148186610[1] Highland Warehousing agreement" | UBS-000426215 | |
| November 2008 Price Testing | UBS-000451661 | |
| October 2008 Price Testing | UBS-000452977 | |
| October 2008 IPV Email | UBS-000454520 | |
| August 2008 Price Testing | UBS-000459055 | |
| IPV $129 MM calc | UBS-000459428 | |
| IPV email Oct Nov | UBS-000461487 | |
| IPV email Oct Nov | UBS-000461879 | |
| IPV Email | UBS-000463368 | |
| Knox Warehouse Positions | UBS-000470556 | UBS-000470735 |
| Collateral Assets | UBS000470704 | |
| Valuation Procedures | UBS-000471012 | |
| Knox Warehouse Positions | UBS-000471503 | UBS-000472502 |
| Knox Warehouse Positions | UBS-000472503 | UBS-000473502 |
| Knox Warehouse Positions | UBS-000473503 | UBS-000474502 |
| Knox Carry | UBS-000474450 | UBS-000474475 |
| Knox Carry | UBS-000474478 | UBS-000474503 |
| Knox Warehouse Positions | UBS-000474503 | |
| Knox Warehouse Position Detail | UBS-000474604.TIF | |
| Knox Warehouse Position Detail | UBS-000474657.TIF | |
| Knox Warehouse Position Detail | UBS-000474675.TIF | |
| Knox Warehouse Position Detail | UBS-000474676.TIF | |
| Knox Warehouse Position Detail | UBS-000474693 | UBS-000474721 |
| Knox Warehouse Position Detail | UBS-000474742 | |
| Knox Warehouse Position Detail | UBS-000474743 | |
| Trade Tickets | UBS-000475418 | |
| Knox Warehouse Positions | UBS-000475420 | |
| Lehman claim amount spreadsheet | UBS-000475421 | |
| Knox Warehouse Positions | UBS-000475426 | |

**UPDATED 4/18/2013**

Documents Considered and/or Relied Upon

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Knox Carry | UBS-000475427 | |
| Knox Carry | UBS-000475428 | |
| Trade Tickets | UBS-000475497 | |
| Trade Tickets | UBS-000475548 | |
| Trade Tickets | UBS-000475601 | |
| Knox Carry | UBS-000475722 | |
| December 16, 2008 auction emails | UBS-000476340 | UBS-000476420 |
| Email dated December 3, 2008 | UBS-000480926 | |
| Knox Warehouse Pricing | UBS-000480927 | |
| "Trade Blotter – HFP Subs (2008 – Q12009).xls" | Un-stamped (Produced by Defendant) | |
| CDO Holding Company General Leger ("2012-01-25.xlsx"). | Un-stamped (Produced by Defendant) | |
| HFP Subsidiaries General Ledger ("2012-01-25.xlsx"). | Un-stamped (Produced by Defendant) | |
| Crusader Sub Holdo 1.1.08 to 5.31.09 | Un-stamped (Produced by Defendant) | |
| Trade Blotter (Book 1) | Un-stamped (Produced by Defendant) | |
| HFP entities 1.1.08 to 5.31.09 | Un-stamped (Produced by Defendant) | |
| Trade Blotter - HFP Subs (2008 - Q12009) | Un-stamped (Produced by Defendant) | |
| CDO Fund | Un-Stamped Holdings Files (Produced by Defendant) | |
| Credit Opportunity Fund | Un-Stamped Holdings Files (Produced by Defendant) | |
| Credit Strategies Fund | Un-Stamped Holdings Files (Produced by Defendant) | |
| Crusader Fund | Un-Stamped Holdings Files (Produced by Defendant) | |
| Highland Financial Partners | Un-Stamped Holdings Files (Produced by Defendant) | |
| Special Opportunities Holding Company | Un-Stamped Holdings Files (Produced by Defendant) | |
| Highland Financial Partners, LP (2) | Un-Stamped QuickBooks File (Produced by Defendant) | |
| Highland Financial Partners, LP | Un-Stamped QuickBooks File (Produced by Defendant) | |
| General_Ledger_-__132_Char_ | Un-Stamped QuickBooks File (Produced by Defendant) | |
| HFP CDO Construction Corp | Un-Stamped QuickBooks File (Produced by Defendant) | |
| Highland CDO Holding Co | Un-Stamped QuickBooks File (Produced by Defendant) | |
| Highland Financial Corp. | Un-Stamped QuickBooks File (Produced by Defendant) | |
| Highland Financial Real Estate Corp | Un-Stamped QuickBooks File (Produced by Defendant) | |
| Highland Financial Real Estate, TRS, Inc | Un-Stamped QuickBooks File (Produced by Defendant) | |
| Highland Financial Trust | Un-Stamped QuickBooks File (Produced by Defendant) | |
| Highland Special Opportunities Holding Co | Un-Stamped QuickBooks File (Produced by Defendant) | |

*Publicly Available Information:*

    CapitalIQ

    Bloomberg LP

    http://www.hcmlp.com

    "Collateralized Loan Obligations (CLO's) – A Primer" by Andrea Jobst, London School of Economics and Political Science, Financial Markets Group

**UPDATED 4/18/2013**

**Documents Considered and/or Relied Upon**

**Exhibit 9**

| Document | Beginning Bates | Ending Bates |
|---|---|---|
| Federal Reserve Bank of Atlanta, "Credit Derivatives: An Overview" by David Mengle, 2007. | | |
| Wm. Passalacqua Bldrs., Inc. v Resnick Devs. S., Inc. | | |
| Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.), 269 F.3d 726, 747–48 (6th Cir.2001) (citing In re Cold Harbor Assocs., 204 B.R. 904, 915 (Bankr.E.D.Va.1997)) | | |
| | | |
| Original Transfer of Claim Agreement between UBS and Lagan Partners, LLC dated September 25, 2009 | | |
| Original Transfer of Claim Agreement between UBS and SPCP Group, LLC dated September 29, 2009 | | |
| Original Transfer of Claim Agreement between UBS and King Street Capital Master Fund, LTD. dated October 2, 2009 | | |
| Original Transfer of Claim Agreement between UBS and King Street Capital Master Fund, LTD. dated October 2, 2009. | | |
| New York Debtor & Credit law, Article 10 | | |
| Bankruptcy and Insolvency Accounting, Forms and Exhibits by Grant W. Newton. | | |
| HFP Form S-1 dated May 1, 2007 | | |
| Northstar Development Corp. v. Gerald A. Buchheit, Jr. (In Re Northstar Development Corp.) 08-10689B; AP08-1074B bankr. (WDNY 2012) citing In Farm Stores, Inc. v. School Feeding Corp., 64 N.Y. 2d 1065, 1066-67 (1985) | | |
| CPLR § 5002; CPLR § 5004 | | |

**UPDATED 4/18/2013**