UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UBS SECURITIES LLC and UBS AG LONDON
BRANCH,

                            Petitioners,

                    -v.-

JAMES DONDERO; SCOTT ELLINGTON;
HIGHLAND CDO HOLDING COMPANY;
HIGHLAND CDO OPPORTUNITY MASTER FUND,
L.P.; HIGHLAND FINANCIAL PARTNERS, L.P.;
HIGHLAND SPECIAL OPPORTUNITIES HOLDING
COMPANY; CLO HOLDCO, LTD.; MAINSPRING,
LTD.; and MONTAGE HOLDINGS, LTD.,

                            Respondents.

23 Civ. 1965 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Petitioners UBS Securities LLC and UBS AG London Branch (collectively,

"UBS" or "Petitioners") move, pursuant to 28 U.S.C. § 1447(c), to sever and

remand certain claims pending in the instant proceeding back to the New York

State Supreme Court, New York County ("New York Supreme Court"). In broad

summary, this matter stems from the removal of a Special Turnover Petition

(the "Special Petition") that was originally filed in New York Supreme Court; the

Special Petition, in turn, was brought by Petitioners to challenge efforts by

Respondents James Dondero and Scott Ellington, and certain corporate

affiliates,[1] to frustrate two judgments awarded by the New York Supreme Court

---

[1]     These entities, also Respondents in the instant action, include Highland CDO Holding
        Company, Highland CDO Opportunity Master Fund, L.P., Highland Financial Partners,
        L.P., Highland Special Opportunities Holding Company, CLO Holdco, LTD., Mainspring,
        Ltd, and Montage Holdings, Ltd. (collectively, the "Entity Respondents," and together
        with Dondero and Ellington, "Respondents").

in an underlying action.  *See UBS Secs. LLC* v. *Dondero*, Index

No. 650744/2023 (Sup. Ct. N.Y. Cnty.) (Crane, J.) (the "Turnover Proceeding");

*UBS Secs. LLC* v. *Highland Cap. Mgmt., L.P.*, Index No. 650097/2009 (Sup. Ct.

N.Y. Cnty.) (Crane, J.) (the "Underlying Action").

    As relevant here, the Special Petition pleads claims in a hybrid format,

first alleging two turnover claims that are predicated on fraudulent conveyance

and alter ego theories under New York law (the "Turnover Claims"), and then

alleging two plenary claims under the federal Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (the "RICO Claims").  In

the instant motion, Petitioners argue that the Court must sever and remand

the Turnover Claims, pursuant to 28 U.S.C. § 1441(c), because they are not

claims within the Court's original or supplemental jurisdiction.  In the

alternative, Petitioners request that the Court decline to exercise supplemental

jurisdiction over the Turnover Claims, in light of the history and complexity of

the proceedings to date, and the interrelationship between the Turnover

Proceeding and the Underlying Action.

    Respondents dispute Petitioners' interpretation of the removal statute,

arguing that the Turnover Claims are well within the supplemental jurisdiction

of this Court, pursuant to 28 U.S.C. § 1367, such that the mandatory

severance and remand provision of 28 U.S.C. § 1441(c) is not implicated.

Separately, Respondents request that the Court maintain supplemental

jurisdiction over the Turnover Claims, and deny Petitioners' motion to remand.

As detailed in the remainder of this Opinion, the Court finds that the Turnover Claims are within the supplemental jurisdiction of the Court, such that severance and remand are not mandatory.  That said, the Court declines to exercise supplemental jurisdiction over these claims, finding that the state Turnover Claims substantially predominate over the federal RICO Claims, and that the values of judicial economy, convenience, fairness, and comity are best served by having the state law claims resolved by the New York Supreme Court.

### BACKGROUND[2]

**A.    Factual Background**

**1.    The Parties**

Petitioner UBS is a global Swiss banking corporation, with headquarters and principal places of business in New York and London.  (Pet. ¶¶ 4-5).  Respondents are, generally speaking, affiliates of non-party Highland Capital

---

[2]    The Court draws these facts primarily from the Special Turnover Petition (Dkt. #34-02), which facts the Court treats as true for the purposes of this motion.  *See Fed. Ins. Co.* v. *Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("[On] a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes factual ambiguities in favor of the plaintiff." (citations omitted)).  Where relevant, the Court also refers to the New York Supreme Court's judgments in the Underlying Action, which judgments are appended to and incorporated in the Special Petition.  (*See* Dkt. #34-18 (the "Phase I Judgment"), 35-11 (the "Phase II Judgment")).  *See Arseneault* v. *Congoleum Corp.*, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *6 (S.D.N.Y. Mar. 26, 2002) (finding that courts may consider "material outside of the pleadings" on a motion to remand (citing *United Food & Com. Workers Union, Loc. 919, AFL-CIO* v. *CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994))).

For ease of reference, the Court refers to the Notice of Removal as "Rem. Notice" (Dkt. #6); to UBS's Special Turnover Petition as "Pet." (Dkt. #34-2); to UBS's memorandum of law in support of its motion to remand as "Pet. Br." (Dkt. #80); to Dondero's and Ellington's memorandum of law in opposition to the motion to remand as "Resp. Opp." (Dkt. #90); to CLO HoldCo's memorandum of law in opposition to the motion to remand as "CLO Opp." (Dkt. #92); and to UBS's reply memorandum of law in support of its motion to remand as "Pet. Reply" (Dkt. #93).

Management ("HCM"), an alternative investment management firm founded in 1993. (Pet. ¶¶ 26-27). Dondero, a financier and the co-founder of HCM, served as its majority owner, President, and Chief Executive Officer until his removal in 2020. (*Id.* ¶¶ 6, 27). Ellington was HCM's Chief Legal Officer and General Counsel until his removal in 2021. (*Id.* ¶ 7).

Highland Special Opportunities Holding Company ("SOHC") is a Cayman Islands corporation, and the subject of a judgment issued by the New York Supreme Court in the Underlying Action on which UBS seeks to collect. (Pet. ¶ 8). Highland Financial Partners ("HFP") is a Delaware limited partnership that has been adjudged by the New York Supreme Court to be an alter ego of SOHC, and therefore liable for UBS's judgment. (*Id.* ¶ 9). CDO Holding Company ("CDO HoldCo") is a Cayman Islands company that is a wholly owned subsidiary of HFP. (*Id.* ¶ 11).

CDO Opportunity Master Fund (the "CDO Fund") is a separate Bermuda limited partnership, controlled by Dondero and Ellington during the events detailed in the Special Petition. (Pet. ¶ 10). Like SOHC, the CDO Fund is the subject of a judgment held by UBS and issued by the New York Supreme Court. (*Id.*). CLO Holdco, Ltd. ("CLO HoldCo") and Mainspring, Ltd. ("Mainspring"), are both Cayman Islands companies affiliated with Dondero. (*Id.* ¶¶ 12-13). Finally, Montage Holdings, Ltd. ("Montage"), is a Cayman Islands company for which Ellington is the ultimate beneficial owner. (*Id.* ¶ 14).

4

2.    **The Underlying Action:**

The events precipitating this case stem from a complex securitization transaction involving UBS and HCM, as well as a series of collateralized debt and loan obligations with HCM, the CDO Fund, and the SOHC (together, the "Funds"). (Pet. ¶¶ 41-43). In exchange for significant potential upside in the form of fees earned in connection with the transaction, the Funds agreed to bear any potential downside, namely, 100% of the risk of loss associated with the transaction. (*Id.* ¶ 42). That downside materialized in late 2008 amidst the global economic recession, when the collateralized assets suffered steep losses. (*Id.* ¶ 43). In response, the Funds breached their contractual obligation to bear 100% of those losses, prompting UBS to terminate the agreements in early December 2008, and to file a breach of contract action in New York Supreme Court in February 2009. (*Id.* ¶ 44 (citing *UBS Secs. LLC* v. *Highland Cap. Mgmt., L.P.*, Index No. 650097/2009 (Sup. Ct. N.Y. Cnty.))). After a protracted period of amended pleadings, motion practice, and appeals, the case entered the trial stage in mid-2018. (Phase II Judgment 3). Given the number of claims and entities, the Supreme Court bifurcated the trial into two parts: Phase I, a bench trial of the breach of contract claims, and Phase II, a jury trial to be held thereafter on the fraudulent inducement, fraudulent conveyance, and alter ego claims. (*Id.*).

The New York Supreme Court held a 13-day Phase I bench trial from July 9, 2018, through July 27, 2018, and issued its decision in favor of UBS on November 14, 2019. (*See* Phase I Judgment 7-9, 12). The court then entered

judgment against the Funds on February 10, 2020 (the "Phase I Judgment"), which judgment awarded UBS $1,042,391,031.79 against SOHC and the CDO Fund collectively.  (Pet. ¶ 2; *see also* Phase I Judgment 7-9).  Before the court could hold the Phase II jury trial on UBS's remaining claims, HCM filed for bankruptcy in October 2019, prompting a stay of the matter.  (Pet. ¶ 45; *see also* Phase II Judgment 4)

After the bankruptcy stay was lifted, the court moved forward with Phase II proceedings — or at least it tried to, as the relevant Highland-affiliated defendants failed to appear for (i) an April 6, 2021 oral argument on a motion by their counsel to withdraw from the matter, and (ii) two pre-trial conferences set for June 17, 2021, and June 24, 2021.  (Phase II Judgment 4).  Ultimately, the New York Supreme Court entered a default judgment in favor of UBS (the "Phase II Judgment," and together with the Phase I Judgment, the "Judgment") on November 21, 2022.  (Pet. ¶ 2).  In the Phase II Judgment, the court adjudged HFP to be the alter ego of SOHC and thereby liable for SOHC's portion of the Judgment.  (*Id.*).  The Phase II Judgment also awarded UBS $67,222.00 against the CDO Fund, and $16,283,331.00 in attorneys' fees. (*Id.*).

### 3.    The Turnover Proceeding

UBS alleges that while the Phase I and II legal proceedings against the Highland entities were ongoing, Dondero and Ellington were busy with proceedings of their own.  In particular, UBS accuses both individuals of "conspir[ing] for over a decade to frustrate UBS's ultimate recovery by

systematically draining the [] assets" of SOHC, the CDO Fund, and HFP

(together, the "Judgment Debtors") through various fraudulent conveyances.

(Pet. ¶ 3).  This alleged misconduct was discovered by UBS when it went to

collect on the Judgment, prompting UBS to seek relief against Dondero,

Ellington, and other potentially liable entities.  (*Id.*).

UBS did so on February 8, 2023, when it initiated the Turnover

Proceeding pursuant to New York Civil Practice Law and Rules ("CPLR")

§ 5225(b) against Respondents in New York Supreme Court.  *See UBS Secs.*

*LLC* v. *Dondero*, Index No. 650744/2023 (Sup. Ct. N.Y. Cnty).  In connection

with that proceeding, UBS filed a ninety-page Special Turnover Petition, which

became the operative pleading in this matter, laying out UBS's allegations

against Dondero, Ellington, and the other Respondents.  (*See generally* Pet.).

At a high level, the Special Petition alleges that Dondero and Ellington directed

three sets of fraudulent conveyances, and three sets of voidable transfers, to

drain HCM's assets and thereby avoid the Judgment.  (*See generally id.* ¶¶ 49-

128).  As bases for relief, the Special Petition asserts two turnover claims

against Respondents pursuant to CPLR § 5255(b):  Claim I, for turnover

predicated on fraudulent and voidable conveyances against CLO HoldCo,

Ellington, Mainspring, and Montage (*id.* ¶¶ 129-161); and Claim II, for turnover

predicated on alter ego liability against Dondero, Ellington, and CDO Holding

(*id.* ¶¶ 162-205).  In the alternative, the Special Petition asserts two plenary

claims under the federal RICO statute:  Claim III, for substantive RICO

violations by Dondero and Ellington (*id.* ¶¶ 206-271); and Claim IV, for conspiracy to violate RICO by Ellington (*id.* ¶¶ 272-280).

**B.     Procedural Background**

On March 8, 2023, Dondero filed a Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441, and 1446.  (*See generally* Dkt. #6 (Notice of Removal)).  Respondents asserted that removal was timely under 28 U.S.C. § 1446(a), and that venue was proper because the Special Petition had been filed in a state court located within the Southern District of New York.  (*Id.* ¶¶ 11-12).  Respondents further claimed that 28 U.S.C. § 1441(a) authorized removal of the action, reasoning that this Court could exercise original jurisdiction over the RICO Claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the Turnover Claims under 28 U.S.C. § 1367(a).  (*Id.* ¶¶ 5-10).

On April 6, 2023, UBS filed a motion to sever the Turnover Claims and remand them to state court and a memorandum of law in support thereof. (Dkt. #79, 80 (Pet. Br.)).  On May 5, 2023, Dondero and Ellington filed a joint memorandum of law in opposition to UBS's motion to remand.  (Dkt. #90 (Resp. Opp.)).  That same day, CLO HoldCo also filed a one-page memorandum of law opposing remand.  (Dkt. #92 (CLO Opp.)).[3]  Finally, on May 19, 2023, UBS filed its reply memorandum of law in further support of its motion to remand.  (Dkt. #93 (Pet. Reply)).

---

[3]     As CLO HoldCo notes, its short, high-level argument in opposition to Petitioners' motion to remand closely tracks Dondero's and Ellington's more detailed opposition brief.  (CLO Opp. 2).  Accordingly, the Court does not separately refer to CLO HoldCo's motion papers when addressing the motion to remand.

## DISCUSSION

**A.   Applicable Law**

**1.   Removal of Proceedings Pursuant to 28 U.S.C. § 1441**

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Thus, a "state-court defendant may remove a civil action to federal court if the action could have been filed in federal court in the first place."  *Solomon* v. *St. Joseph Hosp.*, 62 F.4th 54, 60 (2d Cir. 2023); *see also Gibbons* v. *Bristol-Myers Squibb Co.*, 919 F.3d 699, 704 (2d Cir. 2019) ("Section 1441 permits removal on the basis of either federal question jurisdiction or diversity of citizenship.").

In actions where there is a joinder of federal law claims and state law claims, 28 U.S.C. § 1441(c) directs courts to parse the claims pursuant to a two-step process.  *See generally* 28 U.S.C. § 1441(c).  First, 28 U.S.C. § 1441(c)(1) specifies that "the entire action may be removed," after which removal the court evaluates whether the state law claims are "within [its] original or supplemental jurisdiction," or if they have been "made nonremovable by statute."  Should the court identify a subset of claims outside of either its original or supplemental jurisdiction, 28 U.S.C. § 1441(c)(2) then provides that the court must sever and remand those claims, while retaining jurisdiction over the remainder of the action.

"Where, as here, jurisdiction is asserted by a [respondent] in a removal petition, it follows that the [respondent] has the burden of establishing that

9

removal is proper." *United Food & Com. Workers Union, Loc. 919, AFL-CIO* v. *CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also Tantaros* v. *Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021) ("The removing defendant has the burden of establishing federal jurisdiction."). The removal statutes are construed restrictively, and doubts regarding the viability of removal are resolved in favor of remanding the case to state court. *See Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100, 108-09 (1941).

### 2.    Supplemental Jurisdiction Under 28 U.S.C. § 1367

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); *see generally Montefiore Med. Ctr.* v. *Teamsters Local,* 642 F.3d 321, 332 (2d Cir. 2011).  To be related, the "federal claim and state claim must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Med. Ctr.*, 642 F.3d at 332 (quoting *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 725 (1966)).

That said, supplemental jurisdiction is not mandatory, and courts should, under certain circumstances, "decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c).  These circumstances include instances where "the claim raises a novel or complex issue of State law," *id.*

§ 1367(c)(1); "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," *id.* § 1367(c)(2); "the district court has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3); or "exceptional circumstances" exist such that "there are other compelling reasons for declining jurisdiction," *id.* § 1367(c)(4).  Should a court find that any of these categories is implicated, it must "balance the values of judicial economy, convenience, fairness, and comity" in determining whether to exercise jurisdiction.  *Klein & Co. Futures, Inc.* v. *Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)).  Ultimately, the decision whether to exercise supplemental jurisdiction is entirely within the court's "discretion[] and [is] not a litigant's right."  *Id.* at 263.

## B.   28 U.S.C. § 1441(c) Does Not Require Severance and Remand of the Turnover Claims

The Court begins with Petitioners' argument that 28 U.S.C. § 1441(c) requires severance of the Turnover Claims from the RICO Claims in the Special Petition.  As an initial matter, neither side disputes that the RICO Claims fall within the original jurisdiction of this Court, such that removal pursuant to 28 U.S.C. § 1441(c)(1) was proper.  (Pet. Br. 2; Resp. Opp. 3).  *See also Wis. Dep't of Corr.* v. *Schacht*, 524 U.S. 381, 386 (1998) ("[T]he presence of even one claim 'arising under' federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal.").  Conversely, neither side suggests that the Turnover Claims are within the Court's original jurisdiction, pursuant to 28 U.S.C. § 1332.

Instead, the parties take opposing positions on whether the Turnover Claims fall outside of this Court's supplemental jurisdiction, such that severance and remand would be required pursuant to 28 U.S.C. § 1441(c)(1)(B) and (c)(2).  Petitioners maintain that the special nature of turnover proceedings places the Turnover Claims outside of the Court's supplemental jurisdiction. (Pet. Br. 5-8).  Respondents counter that the transactional relationship between the RICO Claims and the Turnover Claims places the latter squarely within this Court's supplemental jurisdiction.  (Resp. Opp. 4-11).  The Court agrees with Respondents, and finds that the Turnover Claims are within the Court's supplemental jurisdiction, such that 28 U.S.C. § 1441(c)(2) does not apply.

As laid out above, district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Claims are considered "part of the same case or controversy if they derive from a common nucleus of operative fact."  *Shahriar* v. *Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (internal quotation marks and citation omitted).  Respondents argue, and Petitioners do not dispute, that the fraudulent conveyance and alter ego theories asserted in the Turnover Claims arise out of the same common nucleus of operative facts as the federal RICO Claims.  (Resp. Opp. 7-8).  Indeed, the RICO Claims extensively incorporate by reference the facts underlying the Turnover Claims. (*Id.* at 9).  *See Dunlop* v. *City of New York*, No. 06 Civ. 433 (KMK) (JCF), 2006

WL 2853972, at *4 (S.D.N.Y. Oct. 4, 2006) ("Plaintiff's state and federal claims arise out of a common nucleus of operative facts[.]  This is evidenced by the fact that the federal law causes of action incorporate by reference the same paragraphs upon which the state causes of action are based.").[4]  Here, because the federal RICO claims vest the Court with original jurisdiction, the factually-related Turnover Claims fall within the Court's supplemental jurisdiction.

Undaunted, Petitioners maintain their argument for severance and remand, suggesting that "remand under 28 U.S.C. § 1441(c) is required because the turnover claims are not 'claims' subject to supplemental jurisdiction" in the first place.  (Pet. Reply 2; *see also* Pet. Br. 5-8).  In particular, Petitioners suggest that "[b]ecause the fraudulent conveyance and alter ego theories UBS has asserted within the context of § 5225(b) are not new, independent claims, it is irrelevant that they share a common nucleus of operative fact with the alternatively pled RICO Claims."  (Pet. Reply 4).  Put slightly differently, Petitioners characterize a turnover action as a mere "state procedural mechanism that allows for the enforcement of a state court judgment," such that the Turnover Claims contained therein cannot be heard by this Court.  (*Id.* at 2).  This line of argument is unavailing, however, as the "[Second] Circuit [has] made plain that technicalities of local procedure, such

---

[4]     Additionally, and as Petitioners acknowledge, the RICO Claims were pleaded in the alternative to the Turnover Claims, to avoid potential foreclosure of the RICO Claims due to *res judicata*.  (Pet. Br. 4).  Implicit in that approach is a recognition that the two sets of claims are transactionally related.  *Cf. RCX I, LLC* v. *Pitter-Nelson*, No. 11 Civ. 3513 (CM), 2014 WL 5809514, at *9 (S.D.N.Y. Nov. 6, 2014) (observing that state law claims pleaded in the alternative fall within a district court's supplemental jurisdiction).

as what an action or pleading is called, do not affect ... removability." *Casale* v. *Metro. Transp. Auth.*, No. 05 Civ. 4232 (MBM), 2005 WL 3466405, at *6 (S.D.N.Y. Dec. 19, 2005) (citing *Freeman* v. *Burlington Broadcasters, Inc.*, 204 F.3d 311, 317 (2d Cir. 2000)).  Consequently, claims cannot be rendered unremovable simply because they are cloaked in a turnover petition.[5]

Nor are Petitioners correct that this Court's prior decision in *Multibank* dictates such a conclusion.  *See generally Multibank, Inc.* v. *Access Glob. Cap. LLC*, No. 17 Civ. 3467 (KPF), 2017 WL 6028535 (S.D.N.Y. Dec. 4, 2017).  In that case, the defendant removed a turnover petition asserting only fraudulent conveyance claims under New York law, on the theory that this Court possessed original jurisdiction over the action pursuant to 28 U.S.C. § 1332, such that removal under 28 U.S.C. § 1441(a) was appropriate.  *Multibank*, 2017 WL 6028535, at *3 ("[Petitioner] claimed that, under 28 U.S.C §§ 1332(a) and 1441(a), the Court could exercise diversity jurisdiction [over the petition].").  In remanding the action, the Court found that it could not maintain original jurisdiction over the matter, as the turnover proceeding was not separate and independent from the underlying state court action.  *See id.* at *8-9.

---

[5]     Relatedly, Petitioners reference a number of cases in which federal courts in New York have recognized that turnover proceedings do not map neatly onto the Federal Rules of Civil Procedure.  (Pet. Br. 6-7).  These references are misplaced, however, as they provide "reasons why a court might decline to exercise supplemental jurisdiction.  They do not mean that the court lack[s] such jurisdiction."  *Anand* v. *Indep. Blue Cross*, No. 21-2679, 2022 WL 2339476, at *3 (3d Cir. June 29, 2022) (summary order).  As such, the Court will consider these cases only to the extent that they are relevant to its decision to exercise supplemental jurisdiction, as discussed below.

As Respondents correctly note, *Multibank* differs from the instant case in one key respect:  This case concerns a hybrid turnover petition, containing both state turnover claims *and* plenary federal RICO claims.  As such, the removal of the Special Petition implicates not only 28 U.S.C. § 1441(a), but also § 1441(c).  The distinction between the sections is important, as § 1441(c) recognizes the broader power of a federal court, through its supplemental jurisdiction, "to entertain non-removable claims once federal question jurisdiction is conferred."  *Shipkovitz* v. *Barr*, No. 18 Civ. 1264 (RBW), 2019 WL 1082161, at *3 (D.D.C. Mar. 7, 2019); *see also City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 167 (1997) ("The whole point of supplemental jurisdiction is to allow the district courts to exercise pendent jurisdiction over claims as to which original jurisdiction is lacking.").

The question not reached in *Multibank* that is now before the Court, therefore, is whether the otherwise non-removable Turnover Claims could fall within the Court's supplemental jurisdiction, in light of the federal RICO Claims that indisputably vest the Court with original jurisdiction.  And as discussed above, the transactional relationship between the claims contained in the Special Petition provides that the Turnover Claims fall within the Court's supplemental jurisdiction, such that mandatory severance and remand, pursuant to § 1441(c), is not implicated.

This distinction between original and supplemental jurisdiction for the purposes of removal has been recognized by courts in this Circuit when confronted with similar hybrid petitions implicating different provisions of New

15

York law.  Most recently, a court in the Eastern District considered a hybrid Article 78 petition by a plaintiff seeking administrative review of a New York City Police Department ("NYPD") decision denying his gun license application, and in the alternative alleging that the denial of his application violated 42 U.S.C. § 1983.  *See generally Garofalo* v. *City of New York*, No. 22 Civ. 7620 (NRM) (VMS), 2023 WL 3792514 (E.D.N.Y. June 2, 2023).  There, as here, the plaintiff argued that the character of the Article 78 proceeding divested the court of the "authority to exercise jurisdiction over Article 78 claims," such that severance and remand were mandatory pursuant to 28 U.S.C. § 1441(c).  *Id.* at *2, 4.

The *Garofalo* court rejected the plaintiff's argument, and instead found that mandatory severance and remand were not dictated by the statute.  In doing so, the court observed that the plaintiff's inclusion of § 1983 claims in the hybrid Article 78 petition brought the Article 78 claims within the supplemental jurisdiction of the court.  *Garofalo*, 2023 WL 3792514, at *4 (observing that "Plaintiff's Article 78 claims arise out of the same common nucleus of operative fact as his § 1983 claims").  In doing so, the court expressly "reject[ed] Plaintiff's argument that, because [CPLR] § 7804 mandates that stand-alone petitions be filed in state court, federal courts cannot have supplemental jurisdiction over them when (as here) a plaintiff's cause of action also includes federal claims."  *Id.* at *4.

*Garofalo*, in turn, relied on the decision of a sister court in this District, *Casale* v. *Metropolitan Transportation Authority*, where the court also found a

hybrid Article 78 petition alleging state and federal claims to be removable.  *See*
No. 05 Civ. 4232 (MBM), 2005 WL 3466405, at *1 (S.D.N.Y. Dec. 19, 2005).
Importantly, that case acknowledged the distinction between straightforward
Article 78 petitions with "no federal element[s] whatsoever," which petitions
courts have recognized present an insufficient basis for original jurisdiction,
and those hybrid petitions containing both federal and claims, over which
petitions a court could exercise original and supplemental jurisdiction.  *Id.* at
*5 (discussing *Kelly* v. *City of Mount Vernon*, 344 F. Supp. 2d 395, 406
(S.D.N.Y. 2004) (recognizing that, while "th[e] court has no original jurisdiction
over an Article 78 claim[,] [it] could consider the claim if it were pendent to a
viable federal claim")).

Accordingly, *Garofalo* and *Casale* validate this Court's finding that, when
presented with a hybrid petition under CPLR § 5255(b), supplemental
jurisdiction can be established over transactionally-related state claims, such
that severance and remand are not mandatory under 28 U.S.C. § 1441(c).  This
finding, however, does not end the remand analysis, as supplemental
jurisdiction "is permissive rather than mandatory."  *Valencia ex rel. Franco* v.
*Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (citation omitted).  And for the reasons
set forth in the following section, the Court declines to exercise supplemental
jurisdiction over the Turnover Claims.

## C.   The Court Declines to Exercise Supplemental Jurisdiction over the Turnover Claims

To review, 28 U.S.C. § 1367(c) sets out several enumerated categories of
circumstances under which "district courts may decline to exercise

supplemental jurisdiction" over transactionally-related state claims.  These circumstances arise if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* §§ 1367(c)(1)-(4).  Should one or more of these enumerated circumstances apply, district courts are to weigh several factors in determining whether to exercise supplemental jurisdiction regardless, including "the familiar factors of judicial economy, convenience, fairness and comity."  *Catzin* v. *Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018) (citing *Cohill*, 484 U.S. at 350). In weighing these values, courts look to "the circumstances of [each] particular case."  *Int'l Coll. of Surgeons*, 522 U.S. at 173.

Petitioners maintain that the Turnover Claims "substantially predominate" over the RICO Claims, such that an exercise of supplemental jurisdiction would be inappropriate.  (Pet. Br. 8 (quoting 28 U.S.C. § 1367(c)(2))).  Respondents object, suggesting that the transactional relationship of the state and federal claims dictates that the former do not predominate over the latter.  (Resp. Opp. 12-14).

When determining substantial predominance, a court considers the character of the state claims and the extent to which they are interrelated with the federal claims over which the court has original jurisdiction.  *See Shahriar*, 659 F.3d at 246 ("Predomination under section 1367 generally goes to the type

of claim, not the number of parties involved." (citing *De Asencio* v. *Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003))). To the extent that "the state law claims are more complex or require more judicial resources to adjudicate[,] or are more salient in the case as a whole than the federal law claims," it can be fairly said that the state law claims predominate. *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 613 F. Supp. 2d 437, 442-43 (S.D.N.Y. 2009) (quoting *Diven* v. *Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 602 (D.C. Cir. 1994) (internal quotation marks omitted)).[6]

Petitioners argue, and the Court agrees, that the order of operations — under which the Turnover Claims must be resolved before the RICO Claims can be ripe for resolution — dictates that the state claims are more salient in this case than the federal claims. (Pet. Br. 9; Pet. Reply 6). *See Stochastic Decisions, Inc.* v. *DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993) ("[S]hould [Plaintiff] ultimately fail to collect the judgment in the [related case], it may then have a RICO claim as the basis for a separate action."). Indeed, attempting to resolve the Turnover Claims in parallel with the RICO Claims would conflict with the Second Circuit's "consistent[] rul[ings] in the RICO

---

[6]     Respondents suggest a different formulation of this inquiry, arguing that because "[Petitioners'] state-law and federal claims arise out of the same set of facts[,] [it] is thus not possible for [Petitioners'] state-law claims to predominate, let alone *substantially* predominate over [Petitioners'] RICO claims." (Resp. Opp. 13). Respondents' proposed test, however, runs afoul of well-established principles of statutory interpretation, as it would collapse the substantial predominance analysis into the original test for determining whether claims fall within the Court's supplemental jurisdiction in the first place, thereby rendering 28 U.S.C. § 1367(c)(2) a nullity. *Cf. City of Chicago* v. *Int'l College of Surgeons*, 522 U.S. 156, 167 (1997) (rejecting interpretation of 28 U.S.C. § 1367 that "would effectively read the supplemental jurisdiction statute out of the books").

19

context that claims for 'lost debt' injuries — that is, for damages in the form of an owed, but as-yet-uncollected, amount — are unripe when parallel proceedings to collect the amount owed are ongoing in another forum." *D'Addario* v. *D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018). Accordingly, the Court finds the Turnover Claims substantial predominate over the RICO Claims in this matter.[7]

Having found that 28 U.S.C. § 1367(c)(2) applies to the facts at hand, the Court considers "the familiar factors of judicial economy, convenience, fairness and comity." *Catzin*, 899 F.3d at 81. In doing so, the Court finds the factors weigh decidedly against the Court exercising supplemental jurisdiction, and in favor of the resolution of the Special Petition by the New York Supreme Court.

Beginning with judicial economy, the Court "consider[s] [its] familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation." *Chenensky* v. *N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (citing *Allard* v. *Arthur Andersen & Co.*, 957 F. Supp. 409, 425 (S.D.N.Y. 1997)). As discussed above, this case involves a substantial number of parties, and its complex theories of liability are predicated on fact-intensive questions regarding the interrelationship of those parties with the other entities implicated in the Underlying Action. When compared with the New York

---

[7]    As the Court finds that the state claims substantially predominate over the federal claims, it need not address Petitioners' alternative argument, that removal of the Special Petition constituted an "exceptional circumstance," and the prejudice associated with maintaining the proceeding in federal court provides a "compelling reason[] for declining jurisdiction." (Pet. Br. 8 (quoting 28 U.S.C. § 1367(c)(4))).

Supreme Court, the justices of which have presided over the Underlying Action for over fifteen years, this Court is a new entrant into the case, and possesses no prior familiarity with the underlying facts, parties, or claims.  Respondents are of course correct that Justice Crane, the New York Supreme Court justice who presided over and entered judgment in Phase II of the Underlying Action, did not preside over the litigation for its entire fifteen-year pendency.  Still, this Court does not accept Respondents' corollary argument that Justice Crane "is not meaningfully better equipped to adjudicate this case than this Court." (Resp. Opp. 19).  As Petitioners recount, "Justice Crane has presided over the Underlying Action for well over two years and has amply demonstrated her familiarity with the record and procedural history of the case."  (Pet. Reply 7-8). Indeed, a similar conclusion was reached by the New York Supreme Court in specifically assigning the Turnover Proceeding to Justice Crane, recognizing that her familiarity with the complexities of the Underlying Action would ensure a more efficient resolution of the matter.  *See UBS Sec. LLC* v. *Dondero*, Index No. 650744/2023, Administrative Order at 2 (Sup. Ct. N.Y. Cnty. Feb. 24, 2023).  It follows that considerations of judicial economy weigh strongly in favor of remand.

Relatedly, the Turnover Claims are not "easily resolvable," such that it would be more convenient for this Court to "resolve the case than decline to exercise jurisdiction."  *Chenensky*, 942 F. Supp. 2d at 392.  As even Respondents acknowledge, the "[Special Petition] [is] an 87-page behemoth with more than 130 exhibits comprising almost 2,200 pages," implicating a

$1 billion judgment, and raising "complex issues of choice of domestic and foreign law." (Resp. Opp. 1). Given the high stakes and complexity of the issue, it follows that resolution of the Turnover Claims should be entrusted to the court that oversaw the Underlying Action and awarded the Judgment in the first instance.

Fairness, the next factor, "involves questions of equity: Will declining jurisdiction prejudice the parties, and are the parties responsible for any such prejudice?" *Chenensky*, 942 F. Supp. 2d at 392 (citing *Pitchell* v. *Callan*, 13 F.3d 545, 549 (2d Cir. 1994)). After considering the arguments of the parties, the Court finds this factor to be of neutral significance. Petitioners maintain that exercising supplemental jurisdiction over the Turnover Claims would be prejudicial, as it would deprive them of their chosen forum, one that is familiar with both the nature of turnover proceedings and the history of the Underlying Action. (Pet. Br. 12; Pet. Reply 9-10). Respondents rejoin, however, that remand of the Turnover Claims would be prejudicial, as "[Respondents] will be forced to litigate this case twice: once in state court and again before this Court with regard to Petitioners' RICO claims." (Resp. Opp. 20).[8] To a certain

---

[8]     Respondents also suggest that "remand might deprive [them] of discovery tools they need to adequately defend against Petitioners' claims." (Resp. Opp. 20). Still, notwithstanding case-specific complaints about lack of access to certain materials provided by HCM to UBS pursuant to a settlement agreement, Respondents' argument boils down to a broad assertion that their "ability to conduct such discovery is not as clear in state court as in federal court." (*Id.* at 22). Such hypothetical considerations do not carry significant weight in this jurisdictional analysis, especially as Respondents themselves observe that the facts alleged in the Turnover Petition would likely entitle them to similar discovery in New York state court. (*Id.* (citing *Alexander M.* v. *Cleary*, 137 N.Y.S.3d 182, 185 (3d Dep't 2020))). Ultimately, the Court is confident that Justice Crane, familiar with the facts of the Underlying Action and the Turnover Proceeding, is

degree, however, any prejudice will be mitigated by the doctrine of collateral
estoppel, which "has the dual purpose of protecting litigants from the burden of
relitigating an identical issue with the same party or his privy and of promoting
judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc.*
v. *Shore*, 439 U.S. 332, 326 (1979).  For example, to the extent that Petitioners
fail to prevail on certain issues in the state proceeding, they will be precluded
from relitigating them before this Court.

Finally, comity "takes into account such factors as the nature of the state
law claims, the character of the governing state law, and the relationship
between the state and federal claims."  *Chenensky*, 942 F. Supp. 2d at 392
(alteration adopted) (quoting *Int'l Coll. of Surgeons*, 522 U.S. at 173).  At a more
fundamental level, comity "reflects a proper respect for state functions, a
recognition of the fact that the entire country is made up of a Union of separate
state governments, and a continuance of the belief that the National
Government will fare best if the States and their institutions are left free to
perform their separate functions in separate ways."  *Levin* v. *Com. Energy Inc.*,
560 U.S. 413, 421 (2010) (internal quotation marks and citation omitted).  The
Court finds this factor also weighs in favor of remand.  As recognized
throughout this Opinion, the New York Supreme Court has expended
significant effort and resources to resolve the Underlying Action.  It follows that

---

well-equipped to make a decision regarding discovery that is equitable and consistent
with the expedited nature of the proceedings under CPLR § 5225(b).

that court has a considerable interest in seeing its Judgment effectuated pursuant to the special turnover proceedings established under New York law.

Ultimately, and as noted above, "insofar as a § 1367(c) category is applicable, supplemental jurisdiction is a 'doctrine of discretion, not of plaintiffs' right.'"  *Catzin*, 899 F.3d at 85 (quoting *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).  For the reasons just detailed, an exercise of such discretion is appropriate here, as the Court recognizes the salience of Petitioners' state Turnover Claims to the collection of the underlying state Judgment and finds that, in the aggregate, the familiar factors of judicial economy, convenience, fairness, and comity weigh strongly in favor of remand.

### D.  The Court Stays Petitioners' Civil RICO Claims During the Pendency of the Turnover Proceeding

Finally, the Court addresses the RICO Claims remaining in the matter. As noted above, Petitioners maintain that while their RICO Claims are not yet ripe, the Second Circuit has held "that lack of RICO standing does not divest the district court of jurisdiction over the action."  (Pet. Br. 4 n.3 (citing *Lerner* v. *Fleet Bank, N.A.*, 318 F.3d 113, 116 (2d Cir. 2003), *as amended* (Apr. 16, 2003), *abrogated on other grounds by Am. Psych. Ass'n* v. *Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016))).  *See also Denney* v. *Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (reporting that the Second Circuit "held in *Lerner*, that RICO standing is not jurisdictional, and therefore that a court has original jurisdiction over a RICO claim even if plaintiffs lack standing under the RICO statute").  Justifiably concerned with the disposition of the Turnover Claims, Respondents have not addressed the issue of ripeness, beyond their concession

that the Court has original jurisdiction over the RICO Claims, one facet of which is a recognition that Petitioners have standing under Article III.  (*See, e.g.*, Resp. Opp. 1 ("This Court has original, federal-question jurisdiction over Plaintiffs' RICO claims.")).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (internal quotation marks and citation omitted).  A court may decide, *sua sponte* and in its discretion, "to stay civil proceedings when the interests of justice seem to require such action."  *Plaintiffs #1-21* v. *Cnty. of Suffolk*, 138 F. Supp. 3d 264, 279 (E.D.N.Y. 2015) (citing *Kashi* v. *Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986)).  Because the RICO Claims will not ripen until the Turnover Claims are resolved, the Court will stay consideration of the RICO Claims pending the resolution of the Turnover Claims by the New York Supreme Court.  *See City of New Rochelle* v. *Town of Mamaroneck*, 111 F. Supp. 2d 353, 372-73 (S.D.N.Y. 2000) (remanding plaintiff's state claims, and staying plaintiff's federal claims pending resolution of the state claims).

## CONCLUSION

For the foregoing reasons, Petitioners' motion to remand the Turnover Claims is GRANTED.  The Clerk of Court is directed to terminate the motion pending at docket entry 79, and to remand Claims I and II of the Special Petition to the New York Supreme Court for further proceedings.  The

remaining claims, Claims III and IV, are STAYED pending further order of this

Court.  The parties are to provide the Court with a joint update on the status of

the Turnover Proceeding on the earlier of two weeks after any significant event

in the state court or six months after the date of this Opinion.

SO ORDERED.

Dated:      December 7, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge